UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO
PETE V. DOMENICI UNITED STATES COURTHOUSE
333 LOMAS BLVD., N.W., SUITE 660
ALBUQUERQUE, NEW MEXICO 87102
TELEPHONE - (505) 348-2280
FACSIMILE - (505) 348-2285



JAMES O. BROWNING
District Judge

November 17, 2010

**CM/ECF**

Bryan J. Davis
William G. Gilchrist
Davis & Gilchrist, P.C.
124 Wellesley, S.E.
Albuquerque, New Mexico 87110

Michael V. Shore
Alfonso Chan
Patrick J. Conroy
Christopher L. Evans
Rajkumar Vinnakota
Shore Chan Bragalone DePumpo, LLP
901 Main Street, Suite 3300
Dallas, Texas 75202

Cynthia J. Franecki
Kevin J. Malaney
Matthew B. Lowrie
Foley & Lardner, LLP
777 East Wisconsin Avenue
Milwaukee, Wisconsin 53202-5306

Emil Kiehne
John R. Cooney
Modrall, Sperling, Roehl, Harris
& Sisk, P.A.
500 Fourth Street, N.W., Suite 1000
Albuquerque, New Mexico 87102

Re: <u>Front Row Technologies, LLC, v. Major League Baseball Properties, Inc., et al.,</u>
No. CIV 10-0433 JB/RLP

Dear Counsel:

I want to bring one matter to your attention. I have, with my law clerks, reviewed the Judicial Code of Conduct and do not believe this matter requires me to recuse myself. I want, however, everyone to be fully informed about, and fully comfortable with, my participation in the case.

In 1992 -- before I became judge – my wife and I formed Browning Investment Company ("BIC") to hold some of our investments. Browning Investment Company changed its name to Vermejo Property Investment Company on May 15, 2006, but continues to do business under the name Browning Investment Company. BIC bought working interests in oil wells and was an owner

Counsel of Record
Re: <u>Front Row Technologies, LLC, v. Major League Baseball Properties, Inc., et al.</u>,
    No. CIV 10-0433 JB/RLP
November 17, 2010
Page 2

of an interest in a limited liability company ("Dinero Production Company, L.L.C."), which sold all its assets and distributed the proceeds from the sale of oil wells. BIC receives royalties and distributions from oil and gas interests, as well as from other real estate investments.

Since becoming a judge in 2003, I have been easing out of any official position or ownership in BIC. My wife, Jan Browning, is currently the President, Treasurer, and Director of BIC, although I was President, Treasurer, and Director until December 9, 2005. I no longer have a position in BIC. My son, Eli, is now the Secretary of BIC. Mrs. Browning also currently owns all the stock in BIC. I transferred my interest in BIC to her on December 9, 2005. Her interest remains, however, community property. I also continue to help my wife with BIC.

Mr. Duane Brown, a partner at the Modrall Law Firm, has interests in wells that Strata Production Company operates, and in oil and gas interests in which BIC was also a participant. I have not contacted Mr. Brown, Strata, or any other entity – other than Mr. Sealy Cavin of Cavin & Ingram, P.A., a lawyer and friend who had introduced me to Strata Production Company and to oil investments generally – to determine in which wells or oil and gas investments both Mr. Brown and BIC may have been involved. If more detailed information is needed regarding this issue, please let me know. I have had no direct dealings with Mr. Brown about these matters and, to my knowledge, nor has my wife. All communications about these investments have usually been with the operator or with Mr. Cavin.

While it may be that BIC has a business relationship with Mr. Brown, he is not an attorney or party in this case. I assume that the Modrall firm does not share in royalties or have a financial interest in any of Mr. Brown's investments. <u>Cf</u>. Canon 3.4-1(a-i)(Co-Authors)("[A] judge need not recuse from cases handled by [a] co-author's law firm when the law firm does not share in royalties or have a financial interest in the book."). Canon 3, specifically 3.4-5(a)-(b) of the Judicial Code of Conduct, does not appear to require recusal where the law firm in which the business partner is involved is before a judge, and indeed, Canon 3 suggests otherwise. <u>Cf</u>. Canon 3.4-6 (Parties to a Contract)("A judge who owns a fractional minority royalty interest does not have a 'financial interest' in the purchaser of these minerals, and need not recuse when the purchaser is a party, as long as the case could not 'substantially affect' the value of the judge's interest."). Mr. Brown is not a litigator. While a judge should disqualify himself in a proceeding in which the judge's impartiality might reasonably be questioned, I do not think, based on any business relationship that BIC and Mr. Brown may have, that my partiality can reasonably be questioned in cases that Modrall appears.

According to Mr. Cavin, he -- not the Modrall law firm -- represents Strata Production Company and has done so since about 1989 or 1990, when he left Modrall. My old law firm, Browning & Peifer, P.A. and I represented Strata on one matter in 1996 that involved an investment in which BIC had an interest. <u>See</u> <u>Strata Prod. Co. v. Mercury Exploration Co.</u>, 121 N.M. 622, 916 P.2d 822 (1996). Mr. Cavin informed the Court that Modrall may have represented Strata on one

Counsel of Record
Re: <u>Front Row Technologies, LLC, v. Major League Baseball Properties, Inc., et al.</u>,
    No. CIV 10-0433 JB/RLP
November 17, 2010
Page 3

workers' compensation matter within the last two years, but that work did not relate to any investment project in which Mr. Brown and/or BIC is involved. Hence, I do not see how BIC would or could financially gain by Strata having the Modrall law firm in the past, although recent past, represent Strata on one workers' compensation matter unrelated to the investments in which BIC and Mr. Brown are involved.

Mr. Brown and BIC were members or principals in Dinero. Strata was the managing member of Dinero. In approximately 2000, when Dinero was set up and before I was a judge, Strata asked two lawyers at Modrall – Bonnie J. Paisley and Kyle H. Moberly – to set up Dinero and do the disclosures, corporate work, and consider the tax issues. Neither Ms. Paisley nor Mr. Moberly are still at Modrall. They are now at separate firms. Ms. Paisley is at Brownstein Hyatt & Farber, and has done work for Dinero since leaving Modrall. While that work perhaps ultimately benefitted and benefits BIC as a member of Dinero, it is my understanding that Modrall's work on Dinero ended no later than early 2001 and that Modrall no longer represents Dinero or Strata on that matter.

In <u>Clark v. City of Draper</u>, No. 96-4006, 1997 U.S. App. LEXIS 6421 at *5 (10th Cir. August 5, 1997), the United States Court of Appeals for the Tenth Circuit held that "the average person might reasonably question the impartiality of a judge who is being represented on a personal matter by a lawyer associated with the same law firm as that representing one of the parties in a case before the judge," and thus recusal was appropriate. <u>See</u> <u>Texaco, Inc. v. Chandler</u>, 354 F.2d 655, 656-57 (10th Cir. 1965)(holding that the judge should recuse himself where he was simultaneously being represented by an attorney on a claim brought against the judge and the same attorney also represented a party in the instant action before the judge). Thus, it appears that I should recuse myself from any cases I had pending before me while Modrall was representing me in unrelated matters even if I was not aware of the representation at the time. <u>See</u> <u>Libjeberg v. Health Servs. Acquisition Corp.</u>, 486 U.S. 847, 859 (1988); Canon 3: Impartial and Diligent Performance of Judicial Duties; Recusal and Disqualification, §3.6 Recusal: Reasonable Basis for Questions of Impartiality, §3.6-2(a) Where Judge (or Judge's Spouse) Is or Has Been a Client of Lawyer or Law Firm Appearing in the Case ("Where an attorney-client relationship exists between the judge and a lawyer where law firm appears in the case, the judge should recuse absent remittal. Same where an attorney represents the court in personnel matters."); <u>id.</u> §3.602(b)("A judge should recuse absent remittal if a lawyer appearing in the case represents, in other matters, a class of which the judge is a member. <u>But</u> <u>see</u> Compendium §3.1-6[4](f)."). Section 3.6-2(h-l) states:

> Canon 3C(1)'s general provision (judge's impartiality might reasonably be questioned) applies where judge's spouse is represented (in unrelated matters) by law firm appearing before judge, but is subject to the remittal procedures. The standard is fact specific and may not give rise to a reasonable question of partiality where the representation does not relate to significant matters, is of short duration, or is otherwise minimal and casual.

Counsel of Record
Re:  Front Row Technologies, LLC, v. Major League Baseball Properties, Inc., et al.,
       No. CIV 10-0433 JB/RLP
November 17, 2010
Page 4

Section 3-6-2(k) states:

> Judge should recuse (subject to remittal) when attorney appearing before judge
> represents judge's spouse's business in any matter. Judge should also recuse (subject
> to remittal) when attorney who represents judge's spouse's business in matter that
> could substantially affect spouse's interests, but recusal is not indicated where
> partner represents spouse's business in routine matters unlikely to affect business
> substantially.

Here, however, Modrall has not represented me or BIC.  BIC was a member of Dinero, but
Dinero had no membership or voting interest in Strata.  Therefore, Clark v. City of Draper is not
applicable because Modrall did not represent me.

Although Modrall represented Dinero for a limited time, I do not believe such representation
could be considered representation of BIC or of me.  While the Court has not found cases discussing
a limited liability company, it has found one involving a general partnership.  In Richter v. Van
Amberg, 97 F.Supp. 2d 1255 (D.N.M. 2000), Circuit Judge Paul Kelly, sitting by designation in the
District Court, dealt with claims that arose out of Mr. Ronald Van Amberg's representation of a two-
person partnership consisting of the plaintiff, Richter, and Gibbens.  See id. at 1258-59.  For his suit
against the defendants – lawyers and their law firm – Richter relied upon employment of Mr. Van
Amberg by Gibbens on behalf of the partnership.  See id. at 1262.  The evidence indicated that Mr.
Gibbens, in his personal capacity, approached Mr. Van Amberg for representation.  See id.  Judge
Kelly found that Mr. Van Amberg represented the partnership via the managing partner.  See id.
Based upon the partnership documents, signed by Richter, Mr. Van Amberg represented the
disgruntled managing partner.  See id.  Judge Kelly stated:

> The rights and duties of partners in relationship to a partnership may be determined
> by an agreement between them.  Although New Mexico law provides that all
> partners have equal rights in the management and conduct of the partnership
> business, the partnership agreement may give a managing partner specific powers
> and duties to act on behalf of the partnership.

Judge Kelly held that Mr. Van Amberg did not represent Richter: "As the partnership lawyer, Mr.
Van Amberg's responsibility was to the entity, specifically the managing partner.  See R. Prof.
Conduct 16-113(A)('A lawyer employed or retained by an organization represents the organization
through its duly authorized constituents.')."  97 F.Supp. 2d at 1263.  Judge Kelly cited and quoted
Rice v. Strunk, 670 N.E. 2d 1280 (Ind. 1996), which discussed the parameters of the attorney-client
relationship in the context of a general partnership:

> In summary, we conclude that an attorney for a general partnership subject to the
> provisions of the UPA as a matter of partnership law has an attorney-client

Counsel of Record
Re: <u>Front Row Technologies, LLC, v. Major League Baseball Properties, Inc., et al.</u>,
     No. CIV 10-0433 JB/RLP
November 17, 2010
Page 5

> relationship with each individual partner.  However, to the extent that the partners
> agree that the partnership will be managed in a form other than by all the partners
> acting in the aggregate, the attorney-client relationship will run to the partnership as
> an entity acting through its duly authorized management.

<u>Id.</u> at 1288-89.  Judge Kelly found that, in this case, the partners had agreed that Gibbens would manage the partnership and, thus, the attorney-client relationship ran only to the partnership acting through its duly authorized management, Gibbens, the managing partner.  <u>See</u> 97 F.Supp. 2d at 1263.

Judge Kelly pointed out that, "[i]n analogous circumstances, New Mexico law has supported treating the organizations as a separate entity, distinct from its constituents." <u>Id.</u>  Judge Kelly noted that, in <u>Marchman v. NCNB Texas National Bank</u>, 120 N.M. 74, 898 P.2d 709 (1995), the court stated:  "A corporation and a shareholder – even a sole shareholder – are separate entities, and a shareholder of a corporation does not have an individual right of action against a third person for damages that result because of an injury to the corporation." <u>Id.</u> at 81, 898 P.2d at 716.  In <u>Delta Automatic Systems, Inc. v. Bingham</u>, 1999-NMCA-029, 974 P.2d 1174 (Ct. App. 1998), the Court of Appeals of New Mexico stated:

> In representing Delta, the Defendants did not owe the Quintanas, as shareholders,
> any special duty above and beyond their duties to the corporation.  This is so even
> though the Quintanas were the sole shareholders of Delta and Defendants knew that
> the Quintanas' livelihood depended on Delta's success.  Our Supreme Court rejected
> similar claims in <u>Marchman</u>.

<u>Id.</u> at ¶ 16, 974 P.2d at 1178.  The Court of Appeals of New Mexico in <u>Delta Automatic Systems, Inc. v. Bingham</u> also rejected the idea that the sole shareholders were intended beneficiaries of the corporate representation.  <u>See id.</u> at ¶¶ 17-18, 974 P.2d at 1179.  In <u>Richter v. Van Amberg</u>, Judge Kelly also identified some factors which might support, or undercut, implication of an attorney-client relationship with an individual partner in any particular case:  "The kind and extent of contacts, if any, between the attorney and the individual partner might be important factors."  97 F.Supp. 2d at 1264 (quoting <u>Responsible Citizens v. Superior Ct.</u>, 16 Cal. App. 4th 1717, 1732, 20 Cal. Reptr. 2d 756 (1993)).

If Judge Kelly did not find a law firm representing the partnership represented an individual partner without management responsibilities, it would appear that a law firm representing the limited liability company does not represent a principal or member that does not have management responsibilities.  Here, Modrall, even though it represented Dinero, did not thereby represent BIC.  <u>Cf.</u>  Canon 3: A Judge Should Perform the Duties of the Office Impartially and Diligently §3.1 Recusal: Financial Interest §3.1-1 Stock Ownership and Other Ownership Interests (–1)("To avoid any appearance of partiality, a judge recuses from cases in which the judge's financial investment

Counsel of Record
Re: <u>Front Row Technologies, LLC, v. Major League Baseball Properties, Inc., et al.</u>,
     No. CIV 10-0433 JB/RLP
November 17, 2010
Page 6

company is a party; the judge need not recuse from cases involving the company's affiliates."); <u>id.</u>
§3.1-2 "Blind Trust" Unavailability to Obviate Recusal; Other Trust Issues, Advisory Opinion No.
96 (g)("Where friends establish a trust in memory of a judge's deceased spouse, for the benefit of
the judge's children, the judge should make reasonable efforts to keep informed of the trust's
financial interests and recuse where necessary (no remittal). The judge should also recuse where
necessary (no remittal). The judge should also recuse where the trustee's law firm serves as counsel
(absent remittal)."); <u>id.</u> §3.1.6(a) Financial Interest in Subject matter or Party to the Proceeding:
Defining "Subject Matter", "Party" and "Proceeding" ("Stock ownership is an automatic ground for
recusal only if the company is a party to proceedings over which the judge presides; if a company
was a party in an earlier proceeding but is no longer, the judge must recuse only if the outcome of
the case could substantially affect the judge's interest."); <u>id.</u> §3.1-6(b)("A financial interest in an
insurance carrier that must indemnify a party is not a 'financial interest in the subject matter,' nor
is the insurance company a party necessitating recusal, but recusal is required if the judge knows his
or her interest in the company could be substantially affected. <u>See</u> Compendium §3.1-9(b).").

Here, Modrall's representation of Dinero ended several years before this case was filed. The
facts before the Tenth Circuit, in <u>Clark v. City of Draper</u>, 1997 U.S. App. LEXIS 6421, and <u>Texaco,</u>
<u>Inc. v. Chandler</u>, 354 F.2d at 656-57, did not entail the situation where the attorney's representation
of the judge occurred before the case was filed. Other courts, however, have found that, in that
situation, recusal is not required. <u>See Duke v. Pfizer, Inc. v. United Div. of Pfizer Hospital Product</u>,
668 F. Supp. 1031, 1036 (E.D. Mich. 1987)(finding that any need to recuse based on dual
representation was vitiated by a two-year period of repose); <u>Morgan Stanley & Co. v. Sundlum</u>,
Civil Action No. 94-3294, 1998 U.S. Dist. LEXIS 13335, at **7-11 (S.D.N.Y. November 30,
1988)(holding that a judge should recuse himself while being represented by the same attorney, but
noting that "[o]nce my family wills and trusts are fully executed . . . I conclude that no reasonable
person, knowing and understanding all the relevant facts, would regard these circumstances as a
ground for my disqualification"). Thus, for purposes of the recusal issue and even assuming
without deciding that Modrall's representation of Dinero constituted representation of BIC or me,
under <u>Clark v. City of Draper</u>, 1997 U.S. App. LEXIS 6421, the period of repose vitiates the earlier
representation.

Finally, I do not see how BIC would or could financially gain by Mr. Brown having the
Modrall law firm as his counsel. I have spoken to Mr. Cavin, and he does not see how BIC would
or could financially gain by Mr. Brown having the Modrall law firm as counsel. I have attached,
as Exhibit A, letters that I have received from Modrall in past cases in response to this question. In
most of the oil and gas investments in which both Mr. Brown and BIC are involved, each own a
working interest and are, for the most part, co-tenants of a property subject to an operating
agreement; the co-tenants basically have an agreement how to split costs and profits. BIC has its
attorney; Mr. Brown may have his own attorney. I do not see how Modrall's representation of Mr.
Brown would benefit BIC.

Counsel of Record
Re: Front Row Technologies, LLC, v. Major League Baseball Properties, Inc., et al.,
    No. CIV 10-0433 JB/RLP
November 17, 2010
Page 7

All parties should be advised that Strata and Dinero are not the only two companies from which BIC receives, or has received, oil-and-gas checks. Others include Devon Energy Production Co. LP; Yates Exploration Corporation; Mewbourne Oil Company; PXP (Plains Exploration & Production Company); St. Mary Operating Company; Navajo Refining Company, L.P.; Primero Operating, Inc.; and Oxy USA Inc. -- Permian. BIC also recently signed a division order with Texas ReExploration Operating, L.C. BIC also pays expenses to NGX. I do not know if Mr. Brown is involved in investments with all of these companies, or who may represent them. Mr. Brown and BIC are also involved with COG Operating.

In a letter dated February 22, 2008, which I attach as Exhibit B, the Modrall firm advised me that Earl E. DeBrine of Modrall represents Texas ReExploration Operating, LLC with respect to advice concerning remediation of oil and gas properties. Lynn H. Slade, R.E. Thompson, and Bill C. Scott of Modrall represent or have represented Navajo Refining Company, L.P., and its parent, Holly Corporation, with respect to several matters, including alleged claims of environmental contamination, personal injury and right-of-way acquisition. Curtis Schwartz of Modrall gave very limited tax advise to COG Operating, L.P. in 2005. John R. Cooney is currently adverse to Pogo Producing Company, and Mr. DeBrine also is adverse to Mewbourne Oil Company, in oil and gas litigation matters.

I believe that I have discussed similar issues with regard to Strata and to Dinero, and do not believe the information changes my conclusion. In any case, I ask each firm involved to determine whether they currently represent, or have represented, any of these other entities, and to alert the Court if they have represented any of these entities since this case has been on file. I attach as Exhibit C a responsive letter I received from the Modrall firm in another case. Moreover, if anyone has further questions, do not hesitate to ask.

Dinero sold all of its oil and gas assets, has distributed the proceeds to the principals, and is in the process of being dissolved or has been dissolved. By letter dated February 19, 2009, Dinero sent a check for BIC's portion of the final distribution. On February 25, 2009, Dinero sent BIC the final K-1. The distributions include BIC's final distribution in 2009. BIC still has, however, a remaining capital account tax basis. I have been advised that Dinero is now dissolved.

Effective March 1, 2010, BIC sold all its remaining oil-and-gas interests. BIC is still receiving some checks and paying bills for the period before March 1, 2010, and is in the process of transferring some funds received after March 1, 2010 to the buyer. The buyer and/or Strata Production Company, one of the operators, may owe BIC some money, too.

I have attached, as Exhibit D a copy of Advisory Opinion No. 107, which addresses a judge's recusal because of a spouse's business relationships. I have also attached, as Exhibit E a copy of Advisory Opinion No. 94, which deals with fractional royalty interests and mineral leases.

Counsel of Record
Re: <u>Front Row Technologies, LLC, v. Major League Baseball Properties, Inc., et al.,</u>
        No. CIV 10-0433 JB/RLP
November 17, 2010
Page 8

        BIC owns Dartmouth Street, LLC, which owns some investment real estate here in
Albuquerque.  Dartmouth Street has two mortgages.  I personally guaranteed the notes until early
last year, when I asked to be removed as a guarantor.  I understand I have been removed as
guarantor.

        I believe that I can be fair and impartial.  If anyone, however, has any questions about the
above, please let my Courtroom Deputy Clerk, K'Aun Wild, know, and we can perhaps have a
conference call.  I have instructed Mrs. Wild not to tell me who may call.  Best regards.

                                Sincerely,


                                James O. Browning
                                United States District Judge


Attachments: as stated



# MODRALL·SPERLING
L A W Y E R S

Alex C. Walker
505.848.1861
Fax: 505.848.1882
awalker@modrall.com

November 6, 2006

**VIA FACSIMILE & U.S. MAIL (505) 348-2285**

Honorable James O. Browning
U.S. District Judge
333 Lomas Blvd. NW
Albuquerque, NM 87102

Re:   Armijo v. Intel; CIV-06-0635 JB/RHS

Dear Judge Browning:

We are in receipt of your October 25, 2006 letter regarding your assignment to, and participation in, this case. In that letter, you asked Intel's counsel to advise as to whether or not your understanding (as stated in your letter) of the Modrall Law Firm's relationship with Strata Production Company and Dinero Production Company, LLC is correct. You also asked for us disclose whether Duane Brown has had Modrall represent him in any matters in which BIC is involved.

I am attaching for your review Mr. Brown's September 6, 2006 letter on these issues, where Mr. Brown indicates that Modrall is no longer representing Strata or Dinero on any matter. Mr. Brown further indicates that Modrall has never represented him with regard to oil and gas working interests operated by Strata and Dinero, nor with regard to any personal or business matters. I trust that Mr. Brown's September 6, 2006 letter is sufficient to address the concerns stated in your October 25, 2006 letter, but please advise if an additional submission is necessary. Counsel for Intel concurs in your assessment that you can be fair and impartial in this matter and sees no need for the case to be reassigned to another judge.

Thank you for your attention to this matter. Please feel free to contact me should you have any further questions or concerns.

Respectfully submitted,

Alex C. Walker

**RECEIVED**
At Albuquerque NM

**NOV 0 7 2006**

MATTHEW J. DYKMAN
CLERK

EXHIBIT A

Modrall Sperling
Roehl Harris & Sisk P.A.

Bank of America Centre
500 Fourth Street NW
Suite 1000
Albuquerque,
New Mexico 87102

PO Box 2168
Albuquerque,
New Mexico 87103-2168

Tel: 505.848.1800
www.modrall.com

The Honorable James O. Browning
November 6, 2006
Page 2


ACW/gms/w0649112
Enclosure – as stated

cc:    Jennifer Noya
       Duane Brown
       Arthur Olona
       Russell Whitener



**MODRALL SPERLING**
· L A W Y E R S ·

September 6, 2006

Duane E. Brown
505.848.1807
Fax: 505.848.9710
duanebrown@modrall.com

Honorable James O. Browning
District Judge
United States District Court
333 Lomas Blvd. NW
Chamber 660
Albuquerque, NM  87102

> Re:   *Trujillo vs. APS*, No. CIV 02-1146 JB/LFG
>          Consolidated with
>          *Trujillo vs. APS, et al.*, No. CIV 03-1185 JB/LFG

Dear Judge Browning:

    I too was unaware that Browning Investment Company ("BIC") was owned (at least in part) by you and that BIC and I owned oil and gas working interests in the same wells until your letter of May 26, 2006, in connection with the paperwork for a gas well being drilled by COG Operating, LLC.  In response to your letter dated August 7, 2006, please be advised that I concur with your conclusions that there would be no financial gain to BIC from my having the Modrall Law Firm as counsel (which will not happen – see next paragraph) with regard to working interests in oil and gas wells operated or controlled by Dinero Production Company, LLC, Strata Production Company or other oil and gas production companies.

    My oil and gas working interests are strictly personal investments and the Modrall Law Firm has no involvement with them.  Further, the Modrall Law Firm has never represented me with regard to oil and gas working interests operated by Strata Production Company and Dinero Production Company, LLC or with regard to any other personal or business matter.  I practice municipal bond law as a member of the Modrall Law Firm.  I am not a litigator or a natural resources lawyer.  When I need legal counsel, I hire outside attorneys who are not members of the Modrall Law Firm.

    In addition, as requested, I have confirmed that the Modrall Law Firm is no longer representing Strata Production Company on any matter, including the workers' compensation matter referred to in your letter of August 7, 2006, and is no longer representing Dinero Production Company, LLC on any matter.  Mr. Sealy Cavin and lawyers from other firms provide legal counsel for those companies.

Modrall Sperling
Roehl Harris & Sisk P.A.

Bank of America Centre
500 Fourth Street NW
Suite 1000
Albuquerque,
New Mexico 87102

PO Box 2168
Albuquerque,
New Mexico 87103-2168

Tel: 505.848.1800
www.modrall.com

The Honorable James O. Browning
September 6, 2006
Page 2

Should you, or any other party to this matter, have any additional questions about these issues, please let me know.  Thank you.

Very truly yours,

Duane E. Brown

DEB:jjr
cc:     Sealy Cavin
        Transito Trujillo
        Max J. Madrid
        Alex C. Walker
        Sean Olivas
        Melanie Frassanito
        K:\doa\client\90000141\W0626502.DOC

Rx Date/Time    MAR-27-2008(THU) 03:51  5058481889    P. 001
03-27-2008    03:51PM    FROM-Modrall Sperling Law Firm              505 8481889    T-781  P.001/003  F-366

Case 1:10-cv-00493-JHU-KBM  Document 38  Filed 11/17/10  Page 13 of 29



MODRALL SPERLING

**Fax Transmittal
Cover Sheet**

Modrall Sperling
Roehl Harris & Sisk, P.A.

Bank of America Centre
500 Fourth Street NW
Suite 1000
Albuquerque,
New Mexico 87102

Page 1 of 3

Date: March 27, 2008

Time: 3:50p

Client/Matter #: 83206-0001

PO Box 2168
Albuquerque,
New Mexico 87103-2168

Tel: 505.848.1800
www.modrall.com
Fax: 505.848.1889

**Please deliver the following pages to:**

Name: K'Aun Sanchez

Fax no. of recipient: 348-2285

From: Lynn H. Slade

Comments:

Attached is a copy of the letter to Judge Browning, dated 02-22-08, as requested.

Please advise if you have any questions or if you do not receive the attached in good order.

Linda Darnell
Legal Assistant to
Lynn H. Slade

K:\dox\client\83206\0001\W0813138.DOC

If you have any problems receiving our telecopy, please phone: 505.848.1800, Ext: 1828

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN
INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. If the reader of this
message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are
hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this
communication in error, please notify us immediately by telephone, and return the original message to us at the address above via the U.S.
Postal Service.

IRS Circular 230 Disclosure: To comply with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained
herein (including any attachments), unless specifically stated otherwise, is not intended or written to be used, and cannot be used, for the
purposes of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any
transaction or matter herein. Thank you.

EXHIBIT B



MODRALL SPERLING
L A W Y E R S

February 22, 2008

Lynn H. Slade
505.848.1828
Fax: 505.848.1889
lynn.slade@modrall.com

Honorable James O. Browning
United States District Court Judge
333 Lomas Blvd, NW, Suite 270
Albuquerque, NM 87102

      Re:    *City of Raton v. Arkansas River Power Authority;*
            *CIV-08-26 JB/WDS*

Dear Judge Browning:

      This responds to your February 4, 2008 letter concerning your oil and gas investments and the relationship between your investments and those of Mr. Duane Brown of this firm. I have shared your letter with Mr. Brown, and he confirms that statements in your letter are accurate as to his involvement and the inter-relationship between his investments and your investments. I have also reviewed our client conflict files, and I confirm that the information in your letter regarding prior representation by other lawyers of Dinero Production Company, LLC, by two lawyers no longer with Modrall Sperling, Bonnie J. Paisley and Kyle H. Moberly, is correct.

      You have asked whether the firms of counsel in this case represent, or have represented, the companies identified on page 7 of the letter. Earl E. DeBrine of Modrall Sperling represents Texas ReExploration Operating, LLC with respect to advice concerning remediation of oil and gas properties. I, R. E. Thompson and Bill C. Scott of our firm represent or have represented Navajo Refining Company, LP, and its parent, Holly Corporation, with respect to several matters, including alleged claims of environmental contamination, personal injury and right-of-way acquisition. Curtis Schwartz of our firm gave very limited tax advice to COG Operating, L.P. in 2005. John R. Cooney is currently adverse to Pogo Producing Company, and Earl E. DeBrine also is adverse to Mewbourne Oil Company, an oil and gas litigation matters.

      We perceive no relationship between those representations and the current litigation. Nor do we believe our representation of the Arkansas River Power Authority in this case presents considerations of "divided loyalty" under Rule 16-107(B) with respect to any of the representations discussed here. I

Modrall Sperling
Roehl Harris & Sisk P.A.

Bank of America Centre
500 Fourth Street NW
Suite 1000
Albuquerque,
New Mexico 87102

PO Box 2168
Albuquerque,
New Mexico 87103-2168

Tel: 505.848.1800
www.modrall.com

Honorable James O. Browning
Re: *City of Raton v. Arkansas River Power Authority*
February 22, 2008
Page 2

have conferred with our client about these matters. The Authority advises that
it is comfortable with your continuing involvement in the case.

Sincerely,

Lynn H. Slade

LHS/ld
Cc:   Ms. Nannette M. Winter
       Mr. Craig N. Johnson
       Mr. Bill McEwan
       Mr. Duane E. Brown

K:\dox\client\83206\0001\W0802508.DOC



## MODRALL SPERLING

## Fax Transmittal
## Cover Sheet

Modrall Sperling
Roehl Harris & Sisk, P.A.

Bank of America Centre
500 Fourth Street NW
Suite 1000
Albuquerque,
New Mexico 87102

PO Box 2168
Albuquerque,
New Mexico 87103-2168

Tel: 505.848.1800
www.modrall.com

Page 1 of 3
Date: November 25, 2008
Time:  7:50 a.m.
Client/Matter #:

Please deliver the following pages to:

Name:  The Honorable James O. Browning's Chambers  (**Attention:  K. Sanchez**)

City:  Albuquerque, New Mexico

Fax no. of recipient:  348-2285

From:  John J. Kelly

---

Comments:    The attached letter is in response to Judge Browning's letter of November 21.

If you have any problems receiving our telecopy, please phone: 505.848.1800, Ext:

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the address above via the U.S. Postal Service.

IRS Circular 230 Disclosure:  To comply with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained herein (including any attachments), unless specifically stated otherwise, is not intended or written to be used, and cannot be used, for the purposes of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter herein. Thank you.

EXHIBIT C



M O D R A L L · S P E R L I N G

L A W Y E R S

John J. Kelly
505.848.1857
Fax: 505.848.1889
jkelly@modrall.com

November 25, 2008

Honorable James O. Browning
United States District Court Judge
333 Lomas Boulevard, NW, Suite 270
Albuquerque, NM  87102

Re:   *Guidance Endodontics LLC v. Dentsply International Inc. and Tulsa Dental
      Products, LLC*; No. 08-CV-1101 JB/RLP

Dear Judge Browning:

This letter responds to correspondence I received from your chambers, on
November 21, 2008 concerning a Browning family oil and gas investment, and the
relationship, if any, between that investment and this law firm, its clients and our
partner, Mr. Duane Brown.

I have confirmed with Mr. Duane Brown that whatever relationship may exist
between his oil and gas investment and that of Vermejo Property Investment
Company, his investment is (1) strictly personal, and Modrall, Sperling has no interest
in it whatsoever, (2) when he needs counsel in connection with his investment, he
employs lawyers outside of our Firm, and (3) the Firm has not represented Dinero
Production Company or Strata Production for a number of years.

As the Firm has stated in a prior correspondence, although Dinero Production
Company, LLC was represented many years ago by two lawyers formerly with
Modrall, Sperling, those lawyers are no longer practicing with us and the Firm
represents neither Dinero nor Strata Production.  Moreover, I can confirm that there
have been no material changes in Modrall, Sperling's relationship with any of the
companies identified on page 7 of your November 21, 2008 letter, since Mr. Lynn
Slade addressed this same subject with you nine months ago in 08-CIV-26 JB/WDS.

The Firm perceives no connection or relationship between the above-
captioned litigation and any of the attorney-client relationships described in Mr.
Slade's February 22, 2008 letter.  Nor do we believe our representation of Guidance
Endodontics, LLC in this case presents considerations of "divided loyalty" under Rule
16-107(B) with respect to any of the representations discussed here or in Mr. Slade's
letter.

Modrall Sperling
Roehl Harris & Sisk P.A.

Bank of America Centre
500 Fourth Street NW
Suite 1000
Albuquerque,
New Mexico 87102

PO Box 2168
Albuquerque,
New Mexico 87103-2168

Tel: 505.848.1800
www.modrall.com

Honorable James O. Browning
United States District Court Judge
November 25, 2008
Page 2

     I have conferred with our client, Guidance Endodontics, LLC about these matters and the client advises that it is entirely appropriate that you continue to serve as the United States District Court judge assigned to this case.

                     Modrall, Sperling, Roehl, Harris
                         & Sisk, P.A.

By: _____
          John J. Kelly

JJK/k:\dox\CLIENT\90D00\675\W0907223.DOCX

cc:     Brien Addison, Esq. (via email)



Home > Guide > Volume 2 > Chapter 4 > Adv. Opinion 107

⊙ Preface
⊙ Chapter 1
⊙ Chapter 2
⊙ Chapter 3
⊙ Chapter 4
  - Adv. Opinion 01
  - Adv. Opinion 02
  - Adv. Opinion 03
  - Adv. Opinion 04
  - Adv. Opinion 05
  - Adv. Opinion 06
  - Adv. Opinion 07
  - Adv. Opinion 08
  - Adv. Opinion 09
  - Adv. Opinion 10
  - Adv. Opinion 11
  - Adv. Opinion 12
  - Adv. Opinion 13
    Adv. Opinion 14
  - Adv. Opinion 15
  - Adv. Opinion 16
    Adv. Opinion 17
  - Adv. Opinion 18
  - Adv. Opinion 19
    Adv. Opinion 20
  - Adv. Opinion 21
  - Adv. Opinion 22
  - Adv. Opinion 23
  - Adv. Opinion 24
  - Adv. Opinion 25
  - Adv. Opinion 26
  - Adv. Opinion 27
  - Adv. Opinion 28
  - Adv. Opinion 29
  - Adv. Opinion 30
  - Adv. Opinion 31
  - Adv. Opinion 32
  - Adv. Opinion 33
  - Adv. Opinion 34
  - Adv. Opinion 35
  - Adv. Opinion 36
  - Adv. Opinion 37
  - Adv. Opinion 38
  - Adv. Opinion 39
  - Adv. Opinion 40

# CHAPTER 4: COMMITTEE ON CODES OF CONDUCT

## Advisory Opinion No. 107

### Judge's Recusal Due to a Spouse's Business Relationships.

A spouse's business relationships with a party, law firm, or attorney appearing before the judge may result in the judge's disqualification under Canon 3C(1) of the Code of Conduct for U.S. Judges. For example, recusal is mandatory under Canon 3C(1)(c) and (d) when:

- the judge's spouse is an officer, director, or trustee of a party in a proceeding before the judge (Canon 3C(1)(d)(i));

- the judge's spouse is an attorney representing a party in a proceeding before the judge (Canon 3C(1)(d)(ii));

- the judge's spouse is known to have an interest that could be substantially affected by the outcome of a proceeding before the judge (as when the spouse is an equity partner at a law firm that appears before the judge) (Canon 3C(1)(c) and (d)(iii) and Advisory Opinion No. 58);

- the judge's spouse is to the judge's knowledge likely to be a material witness in a proceeding before the judge (Canon 3C(1)(d)(iv)).

Recusal is not mandatory in other situations involving spousal business relationships that are less direct or consequential. Recusal in these situations will depend on a number of facts and circumstances that must be evaluated on a case-by-case basis to determine, in accordance with Canon 3C(1), whether "the judge's impartiality might reasonably be questioned."

This opinion offers guidance when a judge knows his or her spouse has a business relationship with a party, law firm, or attorney appearing before the judge in an unrelated proceeding. This opinion does not address situations described in Canon 3C(1)(c) or (d), above, which mandate the judge's recusal. The opinion also does not address situations in which the spouse or the spouse's business provides services in the proceeding before the judge.

Two particular forms of business relationships are addressed: (1) client relationships, where the spouse or spouse's business provides services to a client and that client appears before the judge in an unrelated proceeding as a party, law firm, or attorney, and (2) service provider relationships, where a party, law firm, or attorney that appears before the judge provides services to the spouse or the spouse's business that are unrelated to the proceeding before the judge. As a general proposition, the fact that the spouse or the spouse's business has a business relationship with an entity that appears in an unrelated proceeding before the judge usually does not require the judge's recusal.

EXHIBIT D

- Adv. Opinion 41
- Adv. Opinion 42
- Adv. Opinion 43
- Adv. Opinion 44
  Adv. Opinion 45
- Adv. Opinion 46
- Adv. Opinion 47
- Adv. Opinion 48
- Adv. Opinion 49
- Adv. Opinion 50
- Adv. Opinion 51
- Adv. Opinion 52
- Adv. Opinion 53
- Adv. Opinion 54
- Adv. Opinion 55
- Adv. Opinion 56
  Adv. Opinion 57
- Adv. Opinion 58
- Adv. Opinion 59
  Adv. Opinion 60
- Adv. Opinion 61
- Adv. Opinion 62
  Adv. Opinion 63
- Adv. Opinion 64
- Adv. Opinion 65
  Adv. Opinion 66
- Adv. Opinion 67
- Adv. Opinion 68
  Adv. Opinion 69
- Adv. Opinion 70
- Adv. Opinion 71
  Adv. Opinion 72
- Adv. Opinion 73
- Adv. Opinion 74
- Adv. Opinion 75
- Adv. Opinion 76
- Adv. Opinion 77
- Adv. Opinion 78
- Adv. Opinion 79
- Adv. Opinion 80
- Adv. Opinion 81
- Adv. Opinion 82
- Adv. Opinion 83
- Adv. Opinion 84
- Adv. Opinion 85
- Adv. Opinion 86
- Adv. Opinion 87
- Adv. Opinion 88
- Adv. Opinion 89
- Adv. Opinion 90
- Adv. Opinion 91
- Adv. Opinion 92
- Adv. Opinion 93
- Adv. Opinion 94

I. Client Relationships

When a judge knows that a client of the judge's spouse or the spouse's business appears before the judge, the Committee has advised that the judge should evaluate certain factors to determine whether recusal is warranted. These factors include: (1) the spouse's personal role or lack of personal role in providing services to the client, (2) whether the services provided to the client are substantial and ongoing, (3) the nature of the client's relationship to the spouse or the spouse's business, and (4) the financial connection between the client, the business, and the judge's spouse (including the percentage of business revenue the client provides and the amount of compensation the spouse earns from the client). Additionally, judges should consider recusal whenever they become aware of circumstances suggesting that the hiring of the spouse or the spouse's business may have been influenced by the judge's position.

A. *Spouse Not Personally Engaged in Providing Services*. In the Committee's view, judges generally are not required to recuse from cases involving a current client of a spouse or a spouse's business if the spouse is not then personally engaged in work for that client. The spouse's connection to such a client is indirect and attenuated, and absent other factors a reasonable person would not question the judge's impartiality if the client appeared before the judge in an unrelated proceeding. This is true even if the spouse personally worked for the client in the past but is not currently engaged in work for the client during the time of the client's proceeding before the judge.

B. *Spouse Personally Engaged in Providing Services*. When the judge knows that his or her spouse is personally engaged in providing services to a client appearing before the judge (including the supervision of services performed by other employees for the client), an additional consideration bearing on the judge's recusal is the degree of involvement of the spouse or the spouse's business. If the relationship to the client involves only an occasional or isolated transaction, recusal is not required unless some other particular fact or circumstance gives rise to reasonable questions about the judge's impartiality.

The Committee has advised that a judge whose spouse was a clinical psychologist need not recuse when a law firm appearing before the judge had retained the judge's spouse on one or two occasions in an unrelated matter, where there was no ongoing relationship between the spouse and the law firm. The Committee gave similar advice where a spouse's notary business had an insubstantial, noncontinuous relationship with a client that appeared before the judge. The Committee has also advised that a judge whose spouse owned and operated a legal or executive recruitment business need not recuse merely because a law firm appearing before the judge engaged the judge's spouse, either currently or in the past, to recruit an additional lawyer, or because the spouse made preliminary overtures to recruit attorneys but no contract or employment negotiations resulted. Similarly, a judge need not recuse because an attorney spouse represented members of a class action who filed unrelated actions in the judge's court, where the spouse had no close professional or personal relationship with the class members.

- Adv. Opinion 95
- Adv. Opinion 96
- Adv. Opinion 97
- Adv. Opinion 98
- Adv. Opinion 99
- Adv. Opinion 100
- Adv. Opinion 101
- Adv. Opinion 102
- Adv. Opinion 103
- Adv. Opinion 104
- Adv. Opinion 105
- Adv. Opinion 106
- Adv. Opinion 107
Chapter 5
Chapter 6
Chapter 7
Chapter 8

At the other end of the spectrum, when the spouse is personally engaged in providing services to a client who appears before the judge in an unrelated proceeding, recusal is appropriate if the judge knows that the spouse or the spouse's business has an exclusive arrangement, or a substantial and ongoing relationship, with a client that appears before the judge. For example, the Committee concluded that a current engagement of the spouse's executive recruitment business for the spouse to work on a law firm's merger would require the judge's recusal when the law firm appeared before the judge, as would other similar efforts that would result in a substantial change in the law firm and thus constitute for the law firm, appearing before the judge, an undertaking of similar importance for the future of the firm. A spouse who personally performed four high level executive recruitments in the same year for the same company for substantial fees for each recruitment would be considered to have a substantial and ongoing relationship with the company, requiring the judge's recusal, but if the work were spread out over a substantially longer period, recusal may not be required.

C. *Nature of Spouse/Client Relationship.* When a spouse is employed by or owns a business whose major or sustaining client appears before the judge, appearance concerns may arise even if the spouse personally performs no services for the client. These concerns are generally heightened when the spouse's business is very small and the client is a very large client, so that the spouse is personally identified with the client, or the client can be reasonably perceived as the sustaining or sole client of the business.

The Committee has advised that if a judge knows a particular company appearing before the judge is the prime or sole client of the spouse's small business, and a ruling in the case could jeopardize the client's continued existence, the spouse would have an interest that could be substantially affected by the case and the judge should therefore recuse.

Concerns may also arise if judge knows the spouse's business or law firm effectively serves as general counsel or in a managerial relationship to the client, rather than simply providing services in arms' length transactions. In a relationship of sufficient magnitude, the client may be considered equivalent to an employer of the spouse, in which case the judge should consider recusal based on the considerations applicable when a party or law firm before the judge directly employs the judge's spouse. See, e.g., Advisory Opinion No. 58.

D. *Financial Considerations.* The nature and size of the client's financial connection to the spouse and the spouse's business can also affect the assessment of the judge's impartiality. A key consideration is the spouse's actual or potential financial benefit from the client. For example, the spouse's compensation may be paid by the spouse's employer and related only indirectly, insignificantly, or not at all to the fees paid by the client to the spouse's employer. In this regard, the Committee advised that a judge's impartiality could not reasonably be questioned because the judge was aware the spouse earned a relatively small sales commission, in an ordinary, arms' length contract, from a party appearing before the judge in an unrelated proceeding.

Alternatively, a spouse may receive a commission or direct payment from the client. The Committee concluded that a one-time payment made to a spouse for employment recruitment services rendered to a law firm did not require the judge's recusal, where the fee was but a small percentage of the spouse's compensation, was typical for the type of services rendered, was neither a major outlay nor a matter of great significance for the law firm client, and no other features of the transaction suggested impropriety. However, if the judge knew the spouse directly received a portion of client fees amounting to more than a small percentage of the spouse's income, the judge's impartiality might reasonably be questioned in a proceeding involving the client, in which case the judge should recuse. In situations of this nature, involving large fees paid by a client to the spouse, it is immaterial whether the spouse personally works for the client or collects fees in the nature of finders' fees or based on the services provided to the client by others.

The client's financial contribution to the spouse's business assumes more significance when the spouse is a partner, shareholder, or owner of the business. A major or sustaining client may provide more than a small percentage of the revenue of the spouse's business and, in turn, the spouse's income as a partner, shareholder, or owner. Departure of such a client could materially reduce the spouse's income or threaten the existence of the business. In such circumstances, the spouse's business, and the spouse as a partner, shareholder, or owner, may be so dependent upon the client that the judge's impartiality may reasonably be questioned in a proceeding involving the client. Additionally, the spouse who is a partner, shareholder, or owner may be so generally identified with the client that the judge's impartiality may reasonably be questioned in a proceeding before the judge involving the client. However, a judge is not automatically disqualified when a client of the spouse's business appears in a proceeding, even if the spouse is a shareholder, partner, or owner; this is simply one additional factor to consider. Further, if the client's financial contribution to the spouse's business is a relatively small percentage of the revenue of the spouse's business (and, in turn, of the spouse's income as a partner, shareholder, or owner), recusal is not required simply because the client appears before the judge in an unrelated proceeding.

If the judge's spouse is a salaried employee, rather than a partner or owner, and receives no bonus or commission based on the work performed for clients, the spouse will not be considered to have an interest in business clients that would require the judge's disqualification in an unrelated proceeding involving such clients. See Advisory Opinion No. 58 (a judge need not recuse from matters involving a relative's law firm, so long as the relative is not an equity partner and has not participated in the matter, and the relative's compensation is in no manner dependent upon the outcome). This conclusion is not affected by the spouse's involvement (or lack thereof) in a client's matters, so long as matters in which the spouse is involved are not at issue in the proceeding before the judge.

II. Relationships with Service Providers

A spouse's business and professional employment may involve relationships with a variety of service providers, such as surety

companies, landlords, banks or other lending institutions, and law firms. Companies that provide services to the spouse or the spouse's business may from time to time appear before the judge in unrelated proceedings. Whether such a business relationship warrants the judge's recusal depends on the nature of the relationship and services provided.

When a service provider's transactions with the judge's spouse or the spouse's business are in the regular course of business, routine in nature, and are unaccompanied by special circumstances suggesting that the selection of the spouse or the spouse's business may have been influenced by the judge's position, recusal is ordinarily not required. The Committee has advised against recusal in various situations where a party, law firm, or attorney appearing before the judge also provided services to the spouse's business. For example, the Committee advised that a judge need not recuse from proceedings involving banks and other lenders to the spouse's business where the relationship with the spouse's business involved traditional bank accounts and loans and no special circumstances were present (such as unusually favorable terms).

In other circumstances, the special character of the relationship between service providers and the spouse or the spouse's business may make recusal advisable should the service provider appear before the judge. In this regard, the Committee has advised that a judge should recuse from matters handled by a law firm subleasing space to the judge's spouse, because the judge's impartiality might reasonably be questioned. For similar reasons, the judge should recuse if the spouse's business is a tenant in the offices of a company that appears as a party before the judge.

Recusal considerations also arise when members of a law firm that provides services to a spouse's business appear before a judge in unrelated proceedings. In this situation, the Committee has advised that if the judge knows that the same attorney who represents the spouse's business even in a routine matter appears before the judge, the judge should recuse. The judge should also recuse if an attorney represents the judge's spouse's business in a matter that the judge knows could substantially affect the spouse's interest, and other members of the attorney's firm appear before the judge. However, if an attorney represents the spouse's business in routine matters that would have no substantial effect on the business or the spouse's interest therein, the judge's impartiality could not reasonably be questioned merely because another attorney from the same law firm appears before the judge.

III.   Other Considerations

Most of the business relationships mentioned in this opinion do not fall within the definition of financial interest in Canon 3C(3)(c) and, consequently, judges have no obligation under Canon 3C(2) to ask their spouses about those business relationships. However, Canon 3C(2) does oblige judges to make a reasonable effort to keep informed about a spouse's personal financial interests. As defined in Canon 3C(3)(c), financial interest means a legal or equitable interest, such as stock ownership, or a relationship as director, advisor, or other active participant in the affairs of a party.

Further, if a judge is not aware that a party, law firm, or attorney in a proceeding before the judge has a business relationship with the spouse's business, the judge's impartiality could not reasonably be questioned. See Advisory Opinion No. 90 (advising that a judge need

not investigate whether any relative is a member of a class action because "the unknown presence of a judge's relative as a party . . . does not create a risk of injustice to the parties, and does not undermine the public's confidence in the judicial process – so long as the judge recuses upon learning of the relative's status as a party"). If a judge nevertheless becomes aware that a client of or service provider to the spouse's business is involved in a proceeding before the judge, the judge should consider the facts presented and recuse under the circumstances set forth herein.

When a spouse's business relationships with a party, law firm, or attorney appearing before the judge cause the judge's impartiality reasonably to be questioned, the judge must recuse, absent remittal. See Canon 3D. Remittal is not available for any of the mandatory recusal situations described in Canon 3C(1)(a) to (e), including when the judge knows the spouse has an interest that could be substantially affected by the outcome of the proceeding before the judge. In most of the circumstances described above, however, the judge's disqualification is pursuant to Canon 3C(1), and remittal is available.

June 22, 2007

Trans 29 vol 2
08/17/07



Preface
Chapter 1
Chapter 2
Chapter 3
Chapter 4
- Adv. Opinion 01
- Adv. Opinion 02
- Adv. Opinion 03
- Adv. Opinion 04
- Adv. Opinion 05
- Adv. Opinion 06
- Adv. Opinion 07
- Adv. Opinion 08
- Adv. Opinion 09
- Adv. Opinion 10
- Adv. Opinion 11
- Adv. Opinion 12
- Adv. Opinion 13
- Adv. Opinion 14
- Adv. Opinion 15
- Adv. Opinion 16
- Adv. Opinion 17
- Adv. Opinion 18
- Adv. Opinion 19
- Adv. Opinion 20
- Adv. Opinion 21
- Adv. Opinion 22
- Adv. Opinion 23
- Adv. Opinion 24
- Adv. Opinion 25
- Adv. Opinion 26
- Adv. Opinion 27
- Adv. Opinion 28
- Adv. Opinion 29
- Adv. Opinion 30
- Adv. Opinion 31
- Adv. Opinion 32
- Adv. Opinion 33
- Adv. Opinion 34
- Adv. Opinion 35
- Adv. Opinion 36
- Adv. Opinion 37
- Adv. Opinion 38
- Adv. Opinion 39
- Adv. Opinion 40

## CHAPTER 4: COMMITTEE ON CODES OF CONDUCT

### Advisory Opinion No. 94

**Recusal Considerations When a Party Appearing Before a Judge (1) Is a Purchaser of Minerals in Which the Judge Owns a Fractional Royalty Interest or (2) Is the Lessee of a Mineral Estate Leased by the Judge.**

This advisory opinion addresses two issues involving mineral interests:

(1)   whether a judge must recuse whenever a purchaser of oil or gas, in which the judge has a fractional royalty interest, is a party in a case before the judge; and

(2)   whether a judge who holds the executory rights to lease minerals for production must recuse whenever the lessee is a party in a case before the judge.

Of course, if the subject of the case before the judge involves the judge's fractional mineral royalty interest or the lease to which the judge is a party, the judge must recuse. This opinion addresses situations where the case before the judge does not involve either the lease or the minerals in which the judge has a royalty interest, but nevertheless one of the parties happens to be the purchaser of oil or gas in which the judge owns a fractional royalty interest or is a lessee of a mineral estate leased by the judge, who holds the executory rights to lease.

It is not uncommon, particularly in regions of the country where oil and gas production is concentrated, for a party to appear before a judge to whom the party is making royalty payments based on purchases of oil or gas in which the judge has a fractional royalty interest. For example, if a judge owns a fractional royalty interest in oil or gas that is being purchased by a major oil or gas company, it is likely that, during a time the judge is receiving royalty payments from that company, that company will occasionally be a party in cases before the judge on issues entirely unrelated to the judge's royalty interest.

A variation of that scenario occurs when the judge holds the executory rights to lease the mineral estate for development. If the judge signs a lease with a major oil or gas company it is, once again, likely that the company will appear occasionally as a party before the judge on matters completely unrelated to the lease while it is still in effect. In this scenario, the judge may either have had a history of direct contract negotiations with that party or, at the least, the judge will be a direct signatory to a lease involving that party.

Canon 3C(1)(c) of the Code of Conduct for United States Judges provides: (1)

EXHIBIT E

Adv. Opinion 41
Adv. Opinion 42
Adv. Opinion 43
Adv. Opinion 44
Adv. Opinion 45
Adv. Opinion 46
Adv. Opinion 47
Adv. Opinion 48
Adv. Opinion 49
Adv. Opinion 50
Adv. Opinion 51
Adv. Opinion 52
Adv. Opinion 53
Adv. Opinion 54
Adv. Opinion 55
Adv. Opinion 56
Adv. Opinion 57
Adv. Opinion 58
Adv. Opinion 59
Adv. Opinion 60
Adv. Opinion 61
Adv. Opinion 62
Adv. Opinion 63
Adv. Opinion 64
Adv. Opinion 65
Adv. Opinion 66
Adv. Opinion 67
Adv. Opinion 68
Adv. Opinion 69
Adv. Opinion 70
Adv. Opinion 71
Adv. Opinion 72
Adv. Opinion 73
Adv. Opinion 74
Adv. Opinion 75
Adv. Opinion 76
Adv. Opinion 77
Adv. Opinion 78
Adv. Opinion 79
Adv. Opinion 80
Adv. Opinion 81
Adv. Opinion 82
Adv. Opinion 83
Adv. Opinion 84
Adv. Opinion 85
Adv. Opinion 86
Adv. Opinion 87
Adv. Opinion 88
Adv. Opinion 89
Adv. Opinion 90
Adv. Opinion 91
Adv. Opinion 92
Adv. Opinion 93
Adv. Opinion 94

C. Disqualification

(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which:

* * *

(c) the judge knows that, individually or as a fiduciary, the judge has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be affected substantially by the outcome of the proceeding.

Neither receiving royalty payments from a party nor leasing a mineral estate to a party qualifies as a "financial interest" in a party, which is defined in Canon 3C(3)(c) as "ownership of a legal or equitable interest" in a party. *Compare* Advisory Opinion No. 75 (judge receiving military pension need not recuse when military service is a party); Advisory Opinion No. 27 (judge's spouse who is the beneficiary of a trust that leased property to defendant does not have a "financial interest" in the defendant).



The inquiry, however, does not end there. Canon 3C(1)(c) also requires a judge to recuse whenever he or she has "any other interest that could be affected substantially by the outcome of the proceeding." *See also* 28 U.S.C. § 455(b)(4). Recusal, therefore, would be necessary under Canon 3C(1)(c) when the value of the judge's fractional royalty interest could be "substantially" affected, even though it cannot be characterized as a legal or equitable interest in the party appearing before the judge. The fact that the amount of royalties received might be small is not dispositive. It is not the size of the interest that is a concern under Canon 3C(1)(c), but rather whether the interest could be substantially affected. Thus we have said that a $.60 per month increase would not be a substantial effect on a judge's utility bill, but that the doubling of a utility bill from $10 to $20 per month would be substantial. *See* Compendium §§ 3.1-7[1](c), (e) (2005). However, unless the suit before the judge was of such a magnitude that it could realistically impact the party's financial ability to pay royalties to the judge, the "interest that could be affected substantially" clause of Canon 3C(1)(c) is not implicated. Moreover, even if the suit were of that magnitude, it might not have the potential substantially to affect the judge's royalty interest if it is clear that the oil or gas could and would be marketed to others at a comparable price in the eventuality that the purchaser/party before the judge no longer remained a viable purchaser as a result of the suit.



We turn next to a consideration of the more general prohibition in Canon 3C(1) that a judge must recuse when the judge's "impartiality might reasonably be questioned." We have said that a judge's impartiality might reasonably be questioned in a variety of situations where a judge is asked to hear a case involving a party with whom the judge does business. For example, where a judge's spouse was the principal beneficiary of a trust that

- Adv. Opinion 95
- Adv. Opinion 96
- Adv. Opinion 97
- Adv. Opinion 98
- Adv. Opinion 99
- Adv. Opinion 100
- Adv. Opinion 101
- Adv. Opinion 102
- Adv. Opinion 103
- Adv. Opinion 104
- Adv. Opinion 105
- Adv. Opinion 106
- Adv. Opinion 107
- Chapter 5
- Chapter 6
- Chapter 7
- Chapter 8

leased property to a party in a case, and the amount of rent was substantial, we said that it would create an appearance of impropriety for the judge to hear that case. Advisory Opinion No. 27. *See also* Compendium § 3.4-2(b) (2005). We also have said that it would create an appearance of impropriety for a judge who contracts with a party for the use of a service mark to hear cases involving that party. Compendium § 2.11(b) (2005). Moreover, we have advised that an appearance of impropriety is created when a party before the judge is either a lessor of real estate to the judge or a lessee of real estate owned by the judge. Compendium § 3.4-2(b) (2005). In all of these cases, the judge should recuse, subject to remittal under Canon 3D.

On the other hand, we have recognized that a judge must be allowed to manage his or her investments and to purchase goods and services and that a commercial relationship with a party does not always require recusal. For example, we have said that a judge's impartiality cannot reasonably be questioned when a judge sits on a case involving an insurance company of which the judge is a policy holder, so long as the case will not substantially affect the judge's interest in the policy. Advisory Opinion No. 26. *See* Compendium §§ 3.1-7[1](a), (b) (2005). A judge who is a bondholder and periodically receives interest payments on the bonds may hear cases involving the bond issuer so long as the case does not involve the bonds held by the judge. Compendium §§ 3.1-4(a), (b) (2005). Maintaining a bank account does not require a judge to recuse from cases in which the bank is a party, nor does owing money to a bank require recusal, absent special circumstances such as unusually favorable terms or a default. Compendium §§ 3.1-4(c), 3.1-7(e) (2005). A judge who is a utility customer may hear cases involving the utility. Compendium § 3.1-7[1](e)(2005). A judge who receives a military pension may sit on cases in which the military is a party. Advisory Opinion No. 75; Compendium § 3.1-7[2](a) (2005).

Several factors can help to reconcile these opinions and assist in identifying when recusal is necessary: (1) When a transaction is standardized and generally available to all who qualify, it is not likely to require recusal. To the extent that the parties to the transaction are fungible, with either party able to go elsewhere, the power of each party over the other is diminished, and therefore so is the appearance of impropriety. (2) When, during the pendency of the litigation before the judge, a relationship has previously been structured and is not likely to be restructured or to give rise to controversy regarding the duties of the parties, recusal is less likely to be required. The converse is also true. When a relationship is being negotiated or is likely to be renegotiated during the time a party is in court or there is a reasonable possibility that the relationship may become the subject of controversy during the pendency of the court proceeding before the judge, it is much more likely to require recusal. (3) The size of the investment is a relevant consideration in evaluating an appearance of impropriety. (4) It is relevant to consider whether the transaction gave rise to a personal and recurring relationship between the judge and the party or whether it is an impersonal market relationship. (5) Finally, it is necessary to consider whether there are any other unique characteristics of the transaction that give rise to an appearance of impropriety.

Applying these factors to the first question posed, we believe that the judge's presiding over a suit involving a party who pays royalties to a judge on unrelated mineral production will not ordinarily give rise to a reasonable appearance of impropriety. First, typically the judge as a fractional royalty interest owner will not have had any direct personal negotiations or a direct personal relationship with the party. Second, ordinarily the interests of most fractional royalty interest owners are fairly standardized within a particular community or producing field. Finally, many, although certainly not all, fractional royalty interests will be fairly small in both amount and percentage. Under these circumstances, we do not believe that an appearance of

impropriety would arise merely because a party appearing before a judge is making royalty payments to the judge on an unrelated fractional royalty interest owned by the judge, and we do not believe that the judge is required to recuse in that situation. Of course, the various factors set forth above need to be evaluated in each situation because of the potential variability that may exist in the actual relationship. If the judge is uncertain whether the various factors in his or her particular situation might give rise to a reasonable concern of the judge's impartiality, then the judge should consider utilizing the remittal procedure set forth in Canon 3D.

We then turn to the second question of whether a judge properly could hear a case when one of the parties, in an unrelated matter, entered into a mineral lease with the judge who held the executory rights to lease those minerals for production. The difference between this situation and the previous situation is that here the judge is likely personally to have signed a lease with the party and to have been more directly involved with the party. The judge holding the executory rights to lease typically will be both the surface landowner and an owner of a royalty interest in the minerals to be developed under the lease. The judge could be expected to have continued direct involvement with the lessee as the lessee enters upon the land to develop and produce oil and gas and as it markets those minerals in which the judge likely has a royalty interest. Further, there is often a reasonable possibility that controversy may arise concerning either the meaning of the lease or the parties' performance under the lease, and if such a controversy does arise, the judge likely will be directly involved.

Once again, Canon 3C(1)(c) is not implicated because the judge does not have a financial interest in the lessee. Similarly, the judge could not preside over the suit if the suit before the judge could substantially affect the judge's interests. Canon 3C(1)(c). However, here the judge's role as a contracting party with the lessee, the likelihood of ongoing relations directly with the lessee, the reasonable possibility that controversy may arise concerning the lease that will implicate the judge directly, and the nature of the judge's interests all suggest that the judge's impartiality might reasonably be questioned, implicating Canon 3C(1), if he or she were to preside over any suit involving that lessee. Therefore, the judge should ordinarily recuse in this situation, subject, of course, to the possibility of remittal upon full disclosure to all the parties. *See* Canon 3D. However, once again, each case must be examined on its own facts because of the potential variability that may exist in the actual relationship.

The second scenario raises one other consideration of which the judge should be aware. Although a judge may manage his or her own real estate investments and may even act as a fiduciary for family members, a judge may not act as a fiduciary for non-family members. Canon 5D; Judicial Conference Ethics Reform Act Regulations Concerning Outside Earned Income, Honoraria, and Outside Employment § 5(a)(3) and Commentary ¶ 10, set forth in *Guide to Judiciary Policies and Procedures*, Volume 2, Chapter VI, Part H. *See also* Compendium § 35.3(a) (2005). It is not uncommon that non-family members will have fractional royalty interests in the oil and gas produced under the lease signed by the judge. If, under controlling state law, the judge's role as lessor of mineral rights in which non-family entities have an interest imposes fiduciary obligations upon the judge toward such non-family entities, the judge should remove himself or herself from that role.

April 25, 1997
Revised October 27, 1998

(1) Requirements for disqualification also are found under 28 U.S.C. § 455, which contains language similar to the canons.