# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| FRONT ROW TECHNOLOGIES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | No. 1:10-cv-00433 JB-KBM |
| NBA MEDIA VENTURES, LLC; GBTV, | § | No. 1:12-cv-01309-JB-KBM |
| LLC; MERCURY RADIO ARTS, INC.; | § | |
| PREMIERE RADIO NETWORKS INC.; & | § | |
| MLB ADVANCED MEDIA, L.P. | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

## PLAINTIFF FRONT ROW TECHNOLOGIES, LLC'S
## MOTION TO TRANSFER

**TABLE OF CONTENTS**

**Contents**

I.      INTRODUCTION ................................................................................................... 1

II.     RELEVANT FACTS ............................................................................................. 2

        A. Front Row ................................................................................................... 2

        B. Procedural History ...................................................................................... 3

III.    STANDARD OF REVIEW ................................................................................... 5

IV.     ARGUMENT ........................................................................................................ 6

        A. This Case Could Have Been Brought in the Eastern District of Texas ............... 6

        B. The Transfer Factors Weigh in Favor of Transfer ............................................ 9

            1. Availability of compulsory process to insure attendance of witnesses ............ 9

            2. Accessibility of Witnesses and Other Sources of Proof ................................ 10

            3. Locus of Operative Facts and Plaintiff's Choice of Forum ........................... 13

            4. Convenience of Witnesses and Cost of Making the Necessary Proof ............ 14

            5. Relative advantages and obstacles to a fair trial ........................................... 16

            6. Difficulties that may arise from congested dockets ...................................... 16

            7. Conflict of Laws Questions ....................................................................... 17

            8. All other considerations of a practical nature that make a trial easy,
            expeditious, and economical ......................................................................... 17

V.      CONCLUSION ................................................................................................... 17

**TABLE OF AUTHORITIES**

**Cases**

*Doe v. NOSF, Inc.*,
No. 12-CV-00979 WJ-KBM, 2012 WL 6599009 (D.N.M. Dec. 17, 2012).........................10

*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*,
618 F.3d 1153 (10th Cir. 2010)...........................................................................................5

*Goff v. Hackett Stone Co.*,
185 F.3d 874, 1999 WL 397409 (10th Cir. 1999)..............................................................13

*Navajo Nation v. Urban Outfitters, Inc.*,
918 F. Supp. 2d 1245 (D.N.M. 2013).........................................................................passim

*Quorum Health Resources, LLC v. Lexington Ins. Co.*,
No. 11-374-MN/LAM, 2012 WL 769744 (D.N.M. Mar. 7, 2012)...........................5, 9, 10

*Safe Bed Techs. Co. v. KCI USA, Inc.*,
No. 02-c-97, 2002 WL 1769991 (N.D. Ill. July 31, 2002)..................................................13

**Federal Rules**

28 U.S.C. Section 1404(a)...............................................................................................5, 18

28 U.S.C. Section 1391(b)....................................................................................................6

## I.  INTRODUCTION

Counter-Plaintiffs[1] allege inequitable conduct against Front Row[2] cofounders, Luis Ortiz and Kermit Lopez, relating solely to activities whose locus is Ericsson, Inc.'s ("Ericsson") Plano, Texas headquarters. Counter-Plaintiffs proffer approximately 100 pages of allegations asserting that "upon information and belief" Front Row's principals, while in or around Plano, Texas, stole intellectual property from Ericsson and orchestrated a comprehensive scheme to defraud the United States Patent and Trademark Office ("USPTO") and to obtain an entire portfolio of patents assigned to Front Row. All of these allegations claim the fraud and theft occurred within the Eastern District of Texas and render that District the locus of operative facts. Most importantly, Ericsson witnesses will be required to testify relating to these allegations, but are outside the subpoena power of this Court. The Eastern District of Texas, on the other hand, has subpoena power of those witnesses, provides better access to sources of proof, and better serves the interest of justice because less travel is required for Counter-Plaintiffs and transfer would expedite the resolution of this litigation.[3]

The only connection to New Mexico is Front Row's residence. Front Row's Ortiz and Lopez agree to litigate in the transferee forum, a forum more convenient for the Defendants and third-parties. In fact, Ortiz and Lopez believe it is absolutely crucial that this case be litigated where they can obtain the testimony of Ericsson witnesses, to remedy

---

[1] "Defendants" or "Counter-Plaintiffs" hereafter shall refer to NBA Media Ventures, LLC, GBTV, LLC, Mercury Radio Arts, Inc. Premiere Radio Networks Inc., and MLB Advanced Media L.P.
[2] "Front Row" hereafter shall refer to Plaintiff Front Row Technologies, LLC.
[3] The litigation between Front Row and MLBAM has been pending for over 5 years and the patents at issue are literally being allowed to run out their life while in litigation.

the salacious, and frankly libelous allegations made by Counter-Plaintiffs regarding Ortiz and Lopez's practice before the USPTO. For these and the following reasons, this case should be transferred to the Eastern District of Texas.

## II.  RELEVANT FACTS

### A. Front Row

On August 25, 2000, Luis Ortiz and his pregnant wife attended a Sting concert at the Smirnoff Music Center[4] located in Fair Park in Dallas, Texas.[5] Pregnancy gave Mrs. Ortiz morning sickness and a heightened sense of smell.[6] The smells and jostling of the other concert attendees quickly proved overwhelming.[7] So Luis and Mrs. Ortiz moved to a shaded area just outside the venue where they could still hear the music but could not see the performance.[8] While listening, Luis pulled out his Palm V PDA.[9] Then inspiration struck: "[h]ow great it would be if I could see video of the band on my PDA."[10] The basic concept behind Front Row's patent portfolio was born.

Shortly thereafter in September, Luis shared his idea with Kermit Lopez, a fellow associate at Bickel and Brewer, so that they could collaborate and further build on it.[11] About a month later, on October 26, 2000, Luis and Kermit filed U.S. Patent Application No. 60/243,561, which was assigned along with its associated family of continuation

---

[4] The Smirnoff Music Center has been renamed the Gexa Energy Pavilion.
[5] No. 1:10-cv-00433, Dkt. 187-1 at ¶ 22-23.
[6] *Id.* at ¶ 22.
[7] *Id.*
[8] *Id.*
[9] *Id.* at ¶ 23.
[10] *Id.*
[11] *Id.* at ¶ 24.

applications to Front Row.[12] Today, Front Row has a portfolio of 16 issued U.S. Patents, 7 pending U.S. applications, and 2 pending applications in India.

### B. Procedural History

On May 5, 2010, Front Row filed a patent infringement lawsuit in the District of New Mexico against MLB Advanced Media, L.P. ("MLBAM"), Major League Baseball Properties, Inc. ("MLBP"), and NBA Media Ventures, LLC ("NBA") alleging infringement of U.S. Patents Nos. 7,149,549, 7,379,388 (the "'388 patent"), 7,620,426, and 7,826,877 (the "First Lawsuit").[13] In March 2011, MLBAM filed requests for *inter partes* reexamination of all four of these patents. Front Row conditionally agreed to a stay, which was entered by the Court.[14] This stay was lifted on September 30, 2013 after extensive briefing.[15]

On May 25, 2012, Front Row filed a second lawsuit against MLBAM, Mercury Radio Arts, Inc., Premiere Radio Networks, Inc., and GBTV, LLC alleging infringement of the newly issued U.S. Patent No. 8,090,321 (the "'321 patent") (the "Second Lawsuit") in the Northern District of Texas.[16] On December 17, 2012, the Second Lawsuit was transferred to the District of New Mexico because four related patents were currently being litigated there.[17] No counterclaims were asserted at that time.

Per Counter-Plaintiffs' request, on February 12, 2013, the Second Lawsuit was consolidated with the First Lawsuit.[18] The Second Lawsuit was effectively dismissed on

---

[12] *Id.*at ¶ 25.
[13] Dkt. No. 1.
[14] Dkt. No. 82.
[15] Dkt. 163
[16] No. 1:12-CV-01309, Dkt. No. 1. The Second Lawsuit was filed in the Northern District of Texas then transferred to the District of New Mexico.
[17] No. 1:12-CV-01309, Dkt. No. 45.
[18] No. 1:12-CV-01309, Dkt. No. 65.

October 16, 2013 when the Court entered the parties' stipulated order to dismiss all claims, counterclaims, and defenses related to the '321 patent without prejudice.[19]

On July 10, 2013, Front Row filed a patent infringement lawsuit in the District of New Mexico against Time Warner Inc., Turner Broadcasting System, Inc., Turner Sports, Inc. and Turner Sports Interactive, Inc. alleging infringement of U.S. Patents Nos. 8,086,184 (the "'184 patent"), 8,270,895 (the "'895 patent"), and 8,401,460 (the "'460 patent") (the "Third Lawsuit").[20] The parties then agreed to a stipulated dismissal without prejudice of all claims against Time Warner Inc., Turner Broadcasting System, Inc., and Turner Sports, Inc. and to add Turner Digital Basketball Services, Inc. as a defendant.[21]

On October 22, 2013, Counter-Plaintiffs in the First and Second Lawsuits filed identical counterclaims of inequitable conduct consisting of approximately 100 pages of allegations asserting "upon information and belief" that Front Row's principals utilized information from Ericsson's office to allegedly defraud the USPTO to obtain Front Row's entire patent portfolio.[22]

On October 30, 2013, Counter-Plaintiffs in the Third Lawsuit filed a motion for leave to file an amended answer to add the identical inequitable conduct counterclaims asserted by the Counter-Plaintiffs in the First and Second Lawsuits.[23]

On November 5, 2013, Front Row sent MLBAM a Rule 11 "safe harbor" letter that detailed how 27 key allegations made "upon information and belief" were affirmatively

---

[19] No. 1:10-cv-00433, Dkt. 191.
[20] No. 1:13-cv-636, Dkt. No. 1.
[21] No. 1:13-cv-636, Dkt. No. 24.
[22] No. 1:10-cv-00433, Dkt. Nos. 173, 175, 176, and 177.
[23] No. 1:13-cv-636, Dkt. No. 39 & 39-1.

false.[24] MLBAM responded to the letter, refusing to withdraw its inequitable conduct counterclaims because "[g]iven the detailed description throughout the counterclaims of your clients' numerous false statements and misleading omissions to the USPTO, we do not believe their current self-serving statements in their declarations are credible."[25] As a result, on November 26, 2013, Counter-Defendant Front Row filed motions to dismiss Counter-Plaintiffs' career-threatening inequitable conduct allegations.[26]

On December 3, 2013, the Third Lawsuit was consolidated for pretrial purposes only with the First Lawsuit.[27]

### III. STANDARD OF REVIEW

28 U.S.C. Section 1404(a) provides that "a district court may transfer an action '[f]or the convenience of parties and witnesses, [and] in the interest of justice, … to any other district or division where it might have been brought.'"[28] "The objectives of Section 1404(a) are to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."[29]

Courts engage in a two-step analysis to determine whether to transfer venue.[30] The first issue is whether the case might have been brought in the forum to which transfer is sought. If the transferee district is a proper venue, then the Court "must consider whether

---

[24] No. 1:10-cv-00433, Dkt. 187-5.
[25] No. 1:10-cv-00433, Dkt. 187-8.
[26] No. 1:10-cv-00433, Dkt. Nos. 187, 188, 189, and 190.
[27] No. 1:13-cv-636, Dkt No. 43.
[28] *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting 28 U.S.C. § 1404(a)).
[29] *Quorum Health Resources, LLC v. Lexington Ins. Co.*, No. 11-374-MN/LAM, 2012 WL 769744, at *2 (D.N.M. Mar. 7, 2012) (citation omitted).
[30] *See Navajo Nation v. Urban Outfitters, Inc.*, 918 F. Supp. 2d 1245 (D.N.M. 2013).

convenience to the parties and witnesses and the interests of justice compel transfer."[31] The discretionary factors include:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and[ ] all other considerations of a practical nature that make a trial easy, expeditious and economical.[32]

Application of these factors demonstrates that transfer is proper.

## IV. ARGUMENT

### A. This Case Could Have Been Brought in the Eastern District of Texas

This case could have been brought in the Eastern District of Texas. Front Row is subject to personal jurisdiction there and a substantial part of the events giving rise to both Defendants' infringement and Counterclaim Plaintiffs' counterclaims occurred there.

Venue is proper in a judicial district where a substantial part of the events or omissions giving rise to the claim occurred. *See* 28 U.S.C. § 1391(b).

Defendants Mercury Radio Arts, Inc. and GBTV LLC admit that they conduct business in the State of Texas, have maintained offices in Dallas since 2012, and are in the business of creating and distributing content.[33] Defendant Premiere Radio Networks, Inc. admits that it engages in business throughout the United States.[34] Defendant MLBAM admits that its business involves "the transmission of certain entertainment, news, and

---

[31] *Id.*

[32] *Id.* (quoting *Employers Mut.*, 618 F.3d at 1167).

[33] No. 1:12-CV-01309, Dkt. No. 27 ¶¶ 3-4.

[34] No. 1:12-CV-01309, Dkt. No. 32 ¶ 5.

6

sporting events over computer networks."[35] Defendant NBAMV distributes NBA League Pass Mobile and NBA League Pass Broadband throughout the United States, including the State of Texas. All of this content is thus admittedly transmitted, distributed, and sold in Texas. Thus, Defendants business is directed to and conducted within the State of Texas. This specific conduct is the subject of Plaintiff's infringement allegations, and satisfies the "substantial part of the events or omissions" prong of the venue statue.

Additionally, Counterclaim-Plaintiffs' allegations of inequitable conduct and fraud are directed toward the former work performed by Luis Ortiz and Kermit Lopez in or around Ericsson's Plano, Texas office. Counterclaim-Plaintiffs allege that:[36]

- On information and belief, Lopez worked at Ericsson's North American headquarters near Dallas, Texas."

- On information and belief, Lopez's position as in-house patent and intellectual property counsel gave him access to internal documentation and information regarding Ericsson's research and development.

- On further information and belief, Lopez's position further allowed him considerable access to internal documentation and information available at affiliates and divisions of Ericsson worldwide, including Ericsson Erisoft in Luleå, Sweden.

- In August 2000, approximately two months prior to filing the provisional patent application that led to all Patents-in-Suit, Lopez left Ericsson as in-house patent and intellectual property counsel and joined the law firm of Bickel & Brewer. On information and belief, Lopez continued to represent Ericsson in intellectual property matters as an associate at Bickel & Brewer until he left the law firm in March 2001.

- On information and belief, Applicant Luis Ortiz was not a direct employee of Ericsson, but was a patent attorney who managed patent applications and prosecutions for Ericsson.

---

[35] No. 1:10-CV-00433, Dkt. 173 at ¶ 2.
[36] No. 1:10-CV-00433, Dkt. 173 at ¶¶ 25-27, 29, 31-35, 59-60, 78-79; Dkt. 175 at ¶¶ 146-148, 150, 152-156, 180-181, 199-200; Dkt. 176 at ¶¶ 146-148, 150, 152-156, 180-181, 199-200; Dkt. 177 at ¶¶ 146-148, 150, 152-156, 180-181, 199-200.

- On information and belief, between at least May 1999 and May 2000, Ortiz worked as outside counsel on Ericsson intellectual property matters as an attorney for the law firm of Gardere Wynne Sewell LLP. One such matter was a patent application that ultimately became U.S. Patent No. 6,505,051 and was assigned to Ericsson.

- From approximately May 2000 until March 2001, Ortiz was an attorney at the law firm Bickel & Brewer. On information and belief, during this time Ortiz continued to represent Ericsson in intellectual property matters.

- From May 1999 to March 2001, Ortiz held a position of trust for Ericsson as outside counsel. As explained in paragraphs 156 through 226 below, Ortiz breached this trust by taking action contrary to the best interest of Ericsson for his own personal gain.

- From August 2000 to March 2001, both Ortiz and Lopez worked together as attorneys at Bickel & Brewer, who represented Ericsson. During this time, Ortiz and Lopez filed a provisional patent application and a non-provisional patent application naming themselves as inventors. On information and belief, neither Ortiz nor Lopez ever disclosed these applications to Ericsson.

- On information and belief, Mr. Lopez was aware of the Arena Project, either through its publication in Contact magazine or through other sources of information available to Ericsson in-house counsel. On further information and belief, Mr. Lopez was aware of the efforts of Tor Bjorn Minde's AWARE research group and its development of intellectual property through the Arena Project as an Ericsson in-house attorney working on Ericsson intellectual property matters.

- On information and belief, Mr. Ortiz was aware of the Arena Project, either through its publication in Contact magazine or through other sources of information available to Ericsson's outside counsel.

- On information and belief, Lopez was aware of Ericsson's collaboration with Virtual Spectator, either through the publication of articles in Contact magazine describing the America's Cup Project or through other sources of information available to Ericsson in-house counsel or the public in general.

- On information and belief, Ortiz was aware of Ericsson's collaboration with Virtual Spectator, either through the publication of articles in Contact magazine describing the America's Cup Project or through other sources of information available to Ericsson outside counsel or the public in general.

Accordingly, this case could have been brought in the Eastern District of Texas.

**B. The Transfer Factors Weigh in Favor of Transfer**

The site of the alleged inequitable conduct at issue in Defendants' counterclaims occurs in or around Plano, Texas. Transfer to the Eastern District of Texas is more convenient for all Defendants and third-party witnesses because evidence is more accessible in the Eastern District of Texas, time and costs are lowered, and the transferee district is more expeditious according to its local patent rules.

**1. *Availability of compulsory process to insure attendance of witnesses***

"The ability to compel the attendance of witnesses is generally relevant only to third-party witnesses, because employees of the parties, as a practical matter, will be available in any venue by virtue of the employment relationship."[37] All third-party witnesses with knowledge relevant to Counter-Plaintiffs' inequitable conduct claims are persons who have previously worked with Kermit Lopez and Luis Ortiz at Ericsson's Plano office or during their employment with Bickel & Brewer and/or Gardere Wynne Sewell LLP ("Gardere Wynne") in Dallas.

The Eastern District of Texas has compulsory power over third-party witnesses from Ericsson in Plano, and over Bickel & Brewer and Gardere Wynne in Dallas.[38] The compulsory process is necessary to secure appearance of these Plano and Dallas witnesses, both at trial and at deposition.[39] Compelling these witnesses for trial is not only critical for Front Row's defense of Counter-Plaintiffs' inequitable conduct counterclaim, but also important to protect Counter-Defendant's livelihood in practicing before the USPTO. This factor weighs in favor of transfer.

---

[37] *Navajo Nation*, 918 F. Supp. 2d at 1257.
[38] Fed. R. Civ. P. 45(c).
[39] *See Quorum Health Resources, LLC* 2012 WL 769744, at *3.

**2.** *Accessibility of Witnesses and Other Sources of Proof*

"The convenience of witnesses is the most important factor in deciding a motion under Section 1404(a)."[40] The majority of witnesses with knowledge regarding Counter-Plaintiffs' alleged inequitable conduct are in the Eastern District of Texas.

Kermit Lopez was an in-house patent and intellectual property counsel at Ericsson, Inc. (now in Plano, Texas) from September 14, 1998 through August 9, 2000.[41] Counter-Plaintiffs allege this position gave Lopez access to "internal documentation and information regarding Ericsson's research and development," "internal documentation and information available at affiliates and divisions of Ericsson worldwide, including Ericsson Erisoft in Luleå, Sweden," and news and status updates, including Ericsson's Contact magazine.[42] Mr. Lopez then worked for the Dallas law firm, Bickel & Brewer, from August 14, 2000 to March 15, 2001.[43] Bickel & Brewer's representation of Ericsson ended on August 18, 2000.[44] From May 1999 to March 2001, Luis Ortiz worked for Gardere Wynne and Bickel & Brewer.[45] Counter-Plaintiffs allege Ortiz was outside counsel for Ericsson during this time.[46] Thus, former Ericsson, Gardere Wynne, and Bickel & Brewer employees had prior working relationships with Lopez and Ortiz and are third-party witnesses that reside much closer to the proposed transferee forum than this District.

---

[40] *Quorum Health Resources, LLC*, 2012 WL 769744, at *3 (citation omitted). *See also Doe v. NOSF, Inc.*, No. 12-CV-00979 WJ-KBM, 2012 WL 6599009, at *2 (D.N.M. Dec. 17, 2012) (finding the alleged abuse occurred in [transfer state] "which in turn means that the sources of proof will be more available there; and [the transfer state] will be more convenient for most of the witnesses.").

[41] *See* No. 1:10-cv-00433, Dkt. 187-2 at ¶ 2.

[42] *See* No. 1:10-cv-00433, Dkt. 173 at ¶¶ 26-28.

[43] *See* No. 1:10-cv-00433, Dkt. 187-2 at ¶ 16.

[44] *Id.* at ¶ 17.

[45] *See* No. 1:10-cv-00433, Dkt. 187-1 at ¶ 5-6.

[46] *See* No. 1:10-cv-00433, Dkt. 173 at ¶¶ 32-33.

For example, Ericsson employee Walt Evanyk was an engineer, product manager, and inventor of Ericsson patents, and currently resides in the Dallas/Fort Worth area.[47] Mr. Evanyk worked with Ericsson's intellectual property legal team and has knowledge of Ericsson's intellectual property and will refute the facts alleged by Counter-Plaintiffs if required to testify.

Arthur Navarro, who currently resides in Irving, Texas acted as outside counsel to Ericsson and interfaced with Mr. Lopez while he was in-house counsel to Ericsson.[48] He is located around 25 miles from the Eastern District of Texas courthouse and could be compelled to testify there.[49]

Daniel F. Perez, a former partner at Gardere Wynne and Bickel and Brewer, has knowledge of the Ericsson relationship and hired Kermit Lopez from Ericsson at the end of the Ericsson engagement.[50] Mr. Perez is located around 18 miles from the Eastern District of Texas, Plano Division and is another third-party witness that would be available for trial.[51]

Daniel Chalker was a Gardere patent attorney assigned to prepare patent applications from Ericsson.[52] Mr. Chalker's practice, Chalker Flores, is located on 14951 Dallas Parkway, Dallas, TX 75254, and is located 11 miles from the Eastern District of Texas courthouse.[53]

---

[47] Declaration of Kermit Lopez ("Lopez Decl.") at ¶ 2.
[48] Lopez Decl. at ¶ 3.
[49] *Id.* at Ex. B.
[50] No. 1:10-cv-00433, Dkt. 187-1 at ¶¶ 11-18.
[51] Lopez Decl., Ex. C.
[52] No. 1:10-cv-00433, Dkt. 187-1 at ¶ 10.
[53] Ortiz Decl., Ex A.

Ronald Burns was a former patent agent at Gardere Wynne who was also assigned to prepare patent applications for Ericsson.[54] Mr. Burns is located in Frisco, Texas, and is less than 10 miles from the courthouse.[55]

Another resident in the Dallas/Ft. Worth area is Pamela Schultz, who was an Ericsson administrative assistant and worked with Kermit Lopez during his employment with Ericsson.[56]

Ericsson and its employees in Plano also possess documents and information on the Arena Project and America's Cup Project, and other internal Ericsson information Lopez and Ortiz were alleged to have access to.[57]

Counter-Plaintiffs have maliciously alleged Ortiz and Lopez "engaged in a comprehensive scheme to deceive the United States Patent and Trademark Office."[58] To protect Ortiz and Lopez's livelihood in practicing before the USPTO, it is necessary to utilize internal Ericsson information, including the Arena Project and America's Cup Project, located in Plano and Dallas, Texas, to clear Ortiz and Lopez's names. This factor weighs heavily in favor of transfer.

---

[54] No. 1:10-cv-00433, Dkt. 187-1 at ¶ 10.
[55] Ortiz Decl., Ex. B.
[56] Lopez Decl. at ¶ 5.
[57] *See* No. 1:10-cv-00433, Dkt. 173 at ¶¶ 44-45, 64-66; Dkt. 175 at ¶¶ 165-166, 185-187; Dkt. 177 at ¶¶ 165-166, 185-187; Dkt. 179 at ¶¶ 165-166, 185-187.
[58] *See* No. 1:10-cv-00433, Dkt. 173 at ¶ 21; Dkt. 175 at ¶ 142; Dkt. 177 at ¶ 142; Dkt. 179 at ¶ 142.

### 3. *Locus of Operative Facts and Plaintiff's Choice of Forum*

For venue purposes, "in determining what events or omissions give rise to a claim, the focus is on relevant activities of the defendant, not the plaintiff."[59] The same principle applies to Counter-Plaintiffs and Counter-Defendants.[60] Counter-Defendant Front Row's cofounders, Luis Ortiz and Kermit Lopez, are accused of inequitable conduct for their patenting of alleged similar technologies to Ericsson's Arena Project and America's Cup Project. For example, Counter-Plaintiffs alleged in approximately 100 pages that Lopez and Ortiz patented similar design features of the Arena Project and America's Cup Project and were aware of the projects through the publication of articles in Contact magazine—an internal Ericsson publication—or other sources available only to Ericsson's in-house and outside counsel.[61] Counter-Plaintiffs particularly allege that Ericsson distributed copies of the May 18, 2000 issue of Contact magazine that described the Arena Project, and the September 1999 and March 2000 issues that described the America's Cup Project.[62] They further allege that the Contact magazine was distributed to all employees, including those in Plano, Texas, and that Lopez received the issue, among other internal documents and information, through his in-house counsel position at the time at Ericsson, Inc.[63] Counter-Plaintiffs also allege Ortiz became aware of the Arena Project and America's Cup Project

---

[59] *Goff v. Hackett Stone Co.*, 185 F.3d 874, 1999 WL 397409, at *1 (10th Cir. 1999) (citation omitted).

[60] *See Safe Bed Techs. Co. v. KCI USA, Inc.*, No. 02-c-97, 2002 WL 1769991, at *4 (N.D. Ill. July 31, 2002) (finding location of events giving rise to counterclaim and affirmative defenses relevant to transfer consideration).

[61] *See* No. 1:10-cv-00433, Dkt. 173 at ¶¶ 58-60, 77-79; Dkt. 175 at ¶¶ 179-181, 198-200; Dkt. 177 at ¶¶ 179-181, 198-200; Dkt. 179 at ¶¶ 179-181, 198-200.

[62] *See* No. 1:10-cv-00433, Dkt. 173 at ¶¶ 44-45, 64-66; Dkt. 175 at ¶¶ 165-166, 185-187; Dkt. 177 at ¶¶ 165-166, 185-187; Dkt. 179 at ¶¶ 165-166, 185-187.

[63] *See id.*

either through publication of articles in the Contact magazine or other sources of
information available to Ericsson's outside counsel.[64]

The concentration of these facts is contrasted with the nationwide-infringement
conducted by Defendants. Defendants are in the business of distributing content throughout
the United States, including the Eastern District of Texas. Accordingly, the locus of the
events alleged by Counter-Plaintiffs—including witnesses with this knowledge—
demonstrates that the significant operative facts in this case have a particularized location
that occurred in the Eastern District of Texas.

**4.** *Convenience of Witnesses and Cost of Making the Necessary Proof*

Transferring to the Eastern District of Texas would significantly lower the cost and
time of travel for third-party and Defendant witnesses. The cost of travel for witnesses in
Ericsson's Plano Division is *de minimis* as it is separated by only a short drive of 2.5 miles in
comparison to 637 miles from the District of New Mexico (in the alternative, a 1 hour and
40 minute flight).[65] Further, transferring to the Eastern District of Texas would give
Defendants' witnesses shorter travel distances and times:[66]

| Defendants Principal Place of Business | District Court | Distance | Duration of Flight |
|---|---|---|---|
| MLB Advanced Media, L.P.; GBTV, LLC; Mercury Radio Arts, Inc. (New York) | New York to District of New Mexico | 1,812.58 miles | 4 hours 55 minutes |
| | New York to Eastern District of Texas, Plano Division | 1,361.77 miles | 3 hours 35 minutes |

---

[64] *See* No. 1:10-cv-00433, Dkt. 173 at ¶¶ 60, 79; Dkt. 175 at ¶¶ 181, 200; Dkt. 177 at ¶¶ 181, 200; Dkt. 179 at ¶¶ 181, 200.
[65] Lo Decl., Exs. A-B.
[66] Lo Decl., Exs. C-N.

| NBA Media Ventures, LLC (New Jersey) | New Jersey to District of New Mexico | 1,810.11 miles | 4 hours 55 minutes |
|---|---|---|---|
| | New Jersey to Eastern District of Texas, Plano Division | 1,360.65 miles | 3 hours 35 minutes |
| Premiere Radio Networks Inc. (San Antonio) | San Antonio to District of New Mexico | 617.09 miles | 3 hours 20 minutes |
| | San Antonio to Eastern District of Texas, Plano Division | 272.25 miles | 1 hour |

The Eastern District of Texas is also a more convenient forum for witnesses from Ericsson's international headquarters, Telefonaktiebolaget LM Ericsson, located in Torshamnsgatan 21, Stockholm, Sweden, 164 83. There are more flights in and out of DFW International Airport and are more cost effective than flights to and from Albuquerque, New Mexico.[67]

Moreover, Chief Executive Officer Glenn L. Beck, who will be called to testify during trial, resides at 2208 Vaquero Estates Boulevard, Westlake, Tarrant County, Texas 76262, and has a primary place of business at 6301 Riverside Drive, Irving, Dallas County, Texas 75039. The ability to drive to the Eastern District of Texas is more convenient than flying to the District of New Mexico.[68]

The only two persons who could even claim to be inconvenienced would be Kermit Lopez and Luis Ortiz, who agree to litigate in the Eastern District of Texas.

---

[67] Lo Decl., Exs. O, P.
[68] Lo Decl., Exs. Q, R.

"The costs to Defendants [and third-parties] of trying suit in this District will likely be greater than if the case were transferred to the [Eastern District of Texas]."[69] Accordingly, this factor also weighs in favor of transfer.

### 5. *Relative advantages and obstacles to a fair trial.*

This factor is neutral. There are no advantages or obstacles to a fair trial as this case is only in its early stages. To date, MLBAM and NBAMV served their Responses and Objections to Plaintiff's First Set of Interrogatories and Requests for Production on November 14 and 15, 2013.

### 6. *Difficulties that may arise from congested dockets*

"The most relevant statistics when evaluating the administrative difficulties of court congestion 'are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge.'"[70] The statistics can be found here: http://www.uscourts.gov/statistics-reports/federal-court-management-statistics-december-2014. According to the statistics, for civil cases in the Eastern District of Texas in 2014, the median time frame for filing of a civil case to disposition is 8.3 months and from filing to trial is 21.9 months. In contrast, the same statistics for the District of New Mexico are as follows: median time from filing to disposition for civil cases in 2014 is 10.9 months; median time from filing to trial in 2013 is 23 months. "Consequently, this data indicates that this District has a more congested docket and, generally, does not resolve civil

---

[69] *Navajo Nation*, 918 F. Supp. 2d at 1259.
[70] *Id.* (quoting *Employers Mut. Cas. Co.*, 618 F.3d at 1169).

cases as quickly as the Eastern District of [Texas]."[71] That has proven particularly true in this case.

Defendants have refused to participate in discovery until a schedule is put in place in this case.[72] As Defendants have argued, the previously agreed-upon schedule requires changes to its dates, "which are no longer viable given the passage of time since the agreed scheduled was last presented to the Court (e.g., December 2014 for a *Markman* hearing).[73] The parties' proposed scheduling order has been pending since October 31, 2013.[74] Because of the "congested docket" in this District that has prevented the entry of a scheduling order, this factor favors transfer.

### 7. *Conflict of Laws Questions*

This factor is neutral, as any district court may handle a patent case with equal skill.

### 8. *All other considerations of a practical nature that make a trial easy, expeditious, and economical*

Transfer would not create unnecessary delay as only the beginning of discovery has occurred and the Court has not acted on the proposed schedule submitted in October of 2013. Furthermore, the Eastern District of Texas has local patent rules for handling the case in an expeditious and economical manner that can result in the resolution of the important issues underlying this case.

## V. CONCLUSION

The locus of operative fact for Defendants' inequitable conduct counterclaim occurs within the Eastern District of Texas. The Eastern District of Texas is more convenient for all

---

[71] *Id.* at 1260.
[72] *See* No. 1:10-cv-00433, Dkt. 220.
[73] *See id.* (September 5, 2014 letter from counsel for Defendants).
[74] *See* No. 1:10-cv-00433, Dkt. 183.

parties and third parties to this suit. This transferee forum provides better access to witnesses and sources of proof located within Ericsson's Plano office, Gardere Wynne's Dallas office, and Bickel & Brewer's Dallas office. To fully defend against malicious claims that threaten the livelihood of Counter-Defendant to practice before the USPTO, Front Row respectfully requests that the Court transfer this case to the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a).

Dated: July 13, 2015                    Respectfully submitted,

                                        */s/ Dustin R. Lo*
                                        Bryan J. Davis, Esq.
                                        William G. Gilchrist, Esq.
                                        DAVIS, GILCHRIST & LEE, P.C.
                                        124 Wellesley Drive SE
                                        Albuquerque, New Mexico 87106
                                        Telephone: 505.435.9908
                                        bryan@dglnm.com

                                        Michael W. Shore
                                        Alfonso Garcia Chan
                                        Christopher L. Evans
                                        Dustin R. Lo
                                        SHORE CHAN DEPUMPO LLP
                                        901 Main Street, Suite 3300
                                        Dallas, Texas 75202
                                        Telephone: 214.593.9110
                                        Facsimile: 214.593.9111
                                        mshore@shorechan.com
                                        achan@shorechan.com
                                        cevans@shorechan.com
                                        dlo@shorechan.com

                                        Attorneys for Plaintiff
                                        Front Row Technologies, LLC

**CERTIFICATE OF CONFERENCE**

Counsel for Front Row Technologies conferred with counsel for Defendants concerning the foregoing motion. On July 10, 2015, Defendants counsel, Alan Littman, David Weaver, and Hilary Preston, indicated that they opposed the motion.

*/s/ Dustin R. Lo*
Dustin R. Lo

**CERTIFICATE OF SERVICE**

I certify that on July 13, 2015 I electronically filed the foregoing document with the U.S. District Court, District of New Mexico using the CM/ECF system, which sent notification of such filing to all counsel of record who has registered with the CM/ECF system.

*/s/ Dustin R. Lo*
Dustin R. Lo

19