# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| FRONT ROW TECHNOLOGIES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | No. 1:10-cv-00433-JB-SCY |
| NBA MEDIA VENTURES, LLC; GBTV, | § | No. 1:12-cv-01309-JB-SCY |
| LLC; MERCURY RADIO ARTS, INC.; | § | |
| PREMIERE RADIO NETWORKS INC.; & | § | |
| MLB ADVANCED MEDIA, L.P., | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF
## FRONT ROW TECHNOLOGIES, LLC'S MOTION TO TRANSFER

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ..................................................................................1

II.  BACKGROUND ....................................................................................................3

    A.   Plaintiff and the Front Row Patents ..............................................................3

    B.   Plaintiff Files Its *First Complaint*, Fails in an Attempt to Move the Litigation to Texas, and Then Triples the Number of Patents Asserted.........................6

    C.   Plaintiff Brings the *Turner Action* Accusing the Same Products of Infringing Some of the Same Patents as the *Original Action.* ......................................8

    D.   The Court Lifts the Stay in the *Original Action* and Consolidates the *Original Action* and the *Turner Action.* ......................................................................9

    E.   Plaintiff Files Its *Seventh Complaint*, Initiating the *Latest Action*, and Reneges on the Agreed Schedule. ...........................................................................10

III. ARGUMENT ......................................................................................................11

    A.   A Transfer Is Not in the Interest of Justice. ...............................................12

        1.   Granting Plaintiff's Motion Would Split Cases on the Same Patents and Accused Products.........................................................................12

        2.   Plaintiff's Forum Shopping and Procedural Tactics Waste Court Resources and Increase Litigation Costs..............................................14

    B.   Plaintiff Has Failed to Demonstrate that the Availability of Compulsory Process and Accessibility of Witnesses and Sources of Proof Makes the Eastern District of Texas a Clearly More Favorable Venue. ......................15

    C.   The Locus of Operative Facts Test Does Not Favor Plano. ........................17

    D.   The Convenience and Cost to Witnesses Does Not Favor the Eastern District of Texas....................................................................................................19

    E.   Court Statistics Do Not Favor a Transfer. .................................................20

IV.  CONCLUSION...................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Biotronik, Inc. v. Lamorak Ins. Co.*,
No. 15-cv-00252-WJ-WPL, 2015 WL 3522362 (D.N.M. June 3, 2015) ................................ 12

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
928 F.2d 1509 (10th Cir. 1991) ....................................................................... 11

*Cont'l Grain Co. v. The FBL-585*,
364 U.S. 19 (1960).................................................................................. 12, 13

*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*,
618 F.3d 1153 (10th Cir. 2010) ............................................................... passim

*Headrick v. Atchison, Topeka & Santa Fe Ry. Co.*,
182 F.2d 305 (10th Cir. 1950) ......................................................................... 11

*Navajo Health Found.–Sage Mem'l Hosp., Inc. v. Burwell*,
No. CIV 14-0958 JB/GBW, 2015 WL 711072 (D.N.M. Feb. 5, 2015) ................................... 20

*Navajo Nation v. Urban Outfitters, Inc.*,
918 F. Supp. 2d 1245 (D.N.M. 2013).................................................................. 21

*ROC, Inc. v. Progress Drillers, Inc.*,
481 F. Supp. 147 (W.D. Okla. 1979)................................................................... 17

*Scheidt v. Klein*,
956 F.2d 963 (10th Cir. 1992) ............................................................. 11, 12, 16, 17

*Syntex (U.S.A.) LLC v. Apotex, Inc.*,
407 F.3d 1371 (Fed. Cir. 2005) ....................................................................... 17

*Therasense, Inc. v. Becton, Dickinson & Co.*,
649 F.3d 1276 (Fed. Cir. 2011) ....................................................................... 17

**Statutes**

28 U.S.C. § 1404(a) ............................................................................ 11, 12, 13

**Other Authorities**

15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper,
*Federal Practice and Procedure* § 3851 (3d ed. 2007)............................................. 19

U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics
35 (Mar. 31, 2015), *available for download at* http://www.uscourts.gov/
statistics/table/na/federal-court-management-statistics/2015/03/31-2............................ 24, 25

## I.      PRELIMINARY STATEMENT

Over the past five years, Plaintiff Front Row Technologies, LLC ("Plaintiff" or "Front Row") has employed numerous litigation tactics that can only have been designed to make litigation concerning its patents more onerous and expensive for the Court and Defendants. Indeed, Plaintiff—for the second time in three years—seeks to break apart the cases concerning its patents and move a portion of them to a new venue.  In May 2012, Plaintiff filed an action against Defendants MLB Advanced Media, L.P. ("MLBAM") and Mercury Radio Arts, Inc.; GBTV, LLC; and Premiere Radio Networks, Inc. (collectively, the "Beck Defendants") in the U.S. District Court for the Northern District of Texas while another action on related patents against MLBAM was already pending before this Court.[1]  Had Texas been the more convenient forum, and had splitting Plaintiff's litigation between multiple forums been in the interest of judicial economy, the Texas court would not have transferred the action back to New Mexico.[2] Moreover, had it been appropriate or beneficial to litigate Plaintiff's cases before multiple judges within the same district, three separate judges in this District—Judge Johnson,[3] Judge Vasquez,[4] and Judge Herrera[5]—would not have reassigned and/or consolidated three later-filed actions against Defendants before this Court.  Nor would Judge Johnson previously have explicitly

---

[1] *See Front Row Techs., LLC v. MLB Advanced Media, L.P. et al.*, No. 1:10-cv-00433-JB-SCY (D.N.M.) ("*Original Action*"), Dkt. No. 1 (filed May 5, 2010); *Front Row Techs., LLC v. MLB Advanced Media, L.P. et al.*, No. 3:12-cv-01639-K (N.D. Tex.) ("*Texas Action*"), Dkt. No. 1 (filed May 25, 2012).

[2] *Texas Action*, Dkt. No. 44, at 11 (attached as Ex. A to the Declaration of Jeffrey T. Han in Support of Defendants' Response in Opposition to Plaintiff's Motion to Transfer ("Han Decl.")).

[3] *See Front Row Techs., LLC v. MLB Advanced Media, L.P. et al.*, No. 1:12-cv-01309-JB-SCY (D.N.M.) ("*Transferred Action*"), Dkt. No. 65.

[4] *See Front Row Techs., LLC v. Time Warner Inc. et al.*, No. 1:13-cv-00636-JB-SCY (D.N.M.) ("*Turner Action*"), Dkt. No. 34.

[5] *See Front Row Techs., LLC v. NBA Media Ventures, et al.*, No. 1:13-cv-01153-JB-SCY (D.N.M.) ("*Latest Action*"), Dkt. No. 65.

stated that Defendants' contention that "Front Row was engaging in forum shopping . . . may very well have merit." *Transferred Action*, Dkt. No. 65, at 3 n.1.

Plaintiff should not be allowed to re-litigate these issues and its forum shopping attempts should be deemed untimely.  It has been nearly two years since Defendants asserted the counterclaims upon which Plaintiff purports to base its current transfer motion.  *See* Plaintiff Front Row Technologies, LLC's Motion to Transfer, *Original Action*, Dkt. No. 221 ("Motion"); *Original Action*, Dkt. Nos. 173, 175–177 (Counterclaims filed October 22, 2013).  Yet, Front Row articulates no reason or change of circumstances to support transfer at this juncture. Further, Front Row avoids mentioning any of the relevant procedural history, or the fact that it is asking the Court to transfer only half of the consolidated, pending cases—notwithstanding that Front Row, itself, previously agreed that "efficient case management would be served by consolidating these actions for pretrial purposes." *Turner Action*, Dkt. No. 37 at 1.

Aside from Plaintiff's improper litigation tactics, discussed further in Part III.A, Front Row's Motion should be rejected for at least the following additional reasons:

(1) Plaintiff's arguments concerning compulsory process and availability of witnesses fail to address, let alone satisfy, the Tenth Circuit's three-part test for that factor.  Plaintiff fails to demonstrate that compulsory process requires a transfer of venue.  *See* Part III.B.

(2) The locus of operative facts does not merit a transfer, as Defendants' counterclaims are not centered around Plano, Texas.  While certain events occurred in Plano, many of the key events took place in Sweden and New Zealand, where Ericsson developed the systems described in the counterclaims.   Furthermore, at least one key third-party witness related to the counterclaims, the inventors' colleague Richard Krukar, resides in New Mexico.  *See* Part III.C.

(3) As Judge Kinkeade of the Northern District of Texas already determined, a transfer is not supported by Plaintiff's convenience arguments contrasting travel to the Eastern District of Texas with travel to the District of New Mexico.  Plaintiff's attempt to reargue this point should further be rejected because Defendants have agreed to litigate in New Mexico and have actually transferred portions of these cases *to* New Mexico *from* Texas in the past.  *See* Part III.D.

(4) While both courts' dockets are undoubtedly congested, Plaintiff's misrepresentation of court statistics to show that New Mexico has a more congested docket than the Eastern District of Texas distorts the truth revealed by other relevant statistics that the Eastern District of Texas is actually the more congested court.  *See* Part III.E.

Accordingly, Defendants respectfully request that the Court deny Plaintiff's Motion to Transfer and keep all of the consolidated cases in the home forum Plaintiff originally selected— where Plaintiff is headquartered and where its principals and the named inventors of the patents in suit live and work.

## II.    BACKGROUND

### A.    Plaintiff and the Front Row Patents

Plaintiff is a New Mexico company located in Albuquerque, New Mexico.  *See Original Action*, Dkt. No. 1, ¶ 1.  The company, however, does not appear to produce any products or offer any services, but rather is in business solely for the purpose of seeking to license its patents. Plaintiff's principals, who live and work in Albuquerque, are also the inventors and prosecuting patent attorneys listed on the Front Row patents.  *See* http://www.olpatentlaw.com.

To date, Plaintiff has obtained twenty U.S. patents, most of which stem from a single provisional patent application filed on October 26, 2000.   All ten patents asserted against

Defendants in the four presently consolidated actions (the *Original Action*, *Transferred Action*, *Turner Action*, and *Latest Action* (collectively, "*Pending Actions*")), claim priority to the October 2000 provisional application.  *See Original Action*, Dkt. No. 149, Exs. B–J; *Latest Action*, Dkt. No. 1, Ex. A.  Because all of the patents asserted in the *Pending Actions* derive from the same provisional application, they all are part of the same "patent family."  A "patent family" is a group of patents and patent applications that claim the same invention or several inventions sharing a common aspect, and which share priority to at least one originating application.

As described in further detail in the following sections, Plaintiff, through a needlessly convoluted process involving multiple complaints and multiple lawsuits against the same defendants and/or the same accused products, has—to date—asserted fourteen of its twenty issued patents.  A figure illustrating the improper and incredibly inefficient manner in which Front Row has asserted its patents is below.  This current Motion is just the latest in a string of efforts by Front Row to multiply the costs of litigation unnecessarily.



Front Row files *Original Action* (Judge Browning – N.M.)
*Original Action* stayed
Front Row files *Texas Action* (N.D. Tex.) and dismisses MLBAM and MLBP from *Original Action*
*Texas Action* transferred to N.M. (Judge Kinkeade – N.D. Tex.)
*Transferred Action* consolidated with *Original Action* (Judge Johnson – N.M.)
Front Row files *Turner Action* (N.M.)
*Turner Action* consolidated with *Original* and *Transferred Actions* (Judge Vasquez – N.M.)
*Original Action* – stay lifted
Front Row files *Latest Action* (N.M.)
*Latest Action* consolidated with *Original*, *Transferred*, and *Turner Actions* (Judge Herrera – N.M.)
All four actions consolidated

**B.    Plaintiff Files Its *First Complaint*, Fails in an Attempt to Move the Litigation to Texas, and Then Triples the Number of Patents Asserted.**

On May 5, 2010, Plaintiff filed its *First Complaint* in the *Original Action* in this Court against MLBAM and Major League Baseball Properties, Inc. ("MLBP") alleging infringement of U.S. Patent Nos. 7,149,549 ("the '549 patent"); 7,376,388 ("the '388 patent"); and 7,620,426 ("the '426 patent").   *See Original Action*, Dkt. No. 1 ("*First Complaint*").   In its *Second Complaint* and *Third Complaint*, Plaintiff added, respectively, NBA Media Ventures, LLC ("NBAMV") and U.S. Patent No. 7,826,877 ("the '877 patent").  *See Original Action*, Dkt. Nos. 21 ("*Second Complaint*") and 44 ("*Third Complaint*").

In March 2011, MLBAM filed reexamination requests with the U.S. Patent and Trademark Office ("USPTO") on the four patents first asserted in the *Original Action*.   The parties in the *Original Action* promptly submitted a *jointly agreed upon* motion to stay the litigation pending the reexamination proceedings, which the Court granted.   *Original Action*, Dkt. Nos. 82 & 83.   The USPTO has agreed with MLBAM and rejected every single one of the original 122 claims in those four patents.   Front Row has also attempted to add nearly 100 more claims during the proceedings; the USPTO has rejected all of those claims as well.   Front Row continues to appeal and seek rehearing of the USPTO's determinations.

After about a year, while the reexaminations proceeded, Front Row's strategy apparently changed.   On May 25, 2012, Front Row attempted to seek a new forum for its claims by filing its *Fourth Complaint* in a lawsuit against MLBAM and the Beck Defendants in a different venue—the U.S. District Court for the Northern District of Texas—asserting infringement of U.S. Patent No. 8,090,321 ("the '321 patent").   *See Texas Action*, Dkt. No. 1 ("*Fourth Complaint*").   In an

attempt to defeat a transfer motion and consolidation, Front Row subsequently dismissed MLBAM and MLBP from the *Original Action*.  *Original Action*, Dkt. No. 99.

However, because of the close relationship between the patents asserted in the *Original Action* and the '321 patent asserted in the *Texas Action*, MLBAM and the Beck Defendants successfully moved the Texas court to transfer the *Texas Action* to the District of New Mexico to be consolidated with the *Original Action*.  *See* Han Decl., Ex. A, at 11.  In the meantime, Plaintiff sought to dismiss the *Original Action* in its entirety without prejudice in order to avoid the transfer and consolidation of the *Texas Action* (*Original Action*, Dkt. Nos. 103, 114), but NBAMV opposed this maneuver (*Original Action*, Dkt. Nos. 112, 116).  In his Order granting the motion to transfer the *Texas Action* to New Mexico, Judge Kinkeade held "that in addition to the various individual private and public interest factors favoring transfer, the overall interest of justice is best served by transferring this case to the District of New Mexico."  Han Decl., Ex. A, at 11.

Upon transfer of the *Texas Action* to this District, Plaintiff refused to cooperate in ensuring the efficient prosecution of that action, forcing MLBAM and the Beck Defendants to file a motion either to consolidate the transferred case with the *Original Action* or stay the transferred action similar to the *Original Action*.  *See Transferred Action*, Dkt. No. 57.  Plaintiff opposed this motion, despite the order from the Texas court specifically transferring the case so that it could be consolidated.[6]  *See Transferred Action*, Dkt. No. 64.  Judge Johnson rejected

---

[6] Judge Kinkeade held that "[s]plitting the case into two venues and unnecessarily injecting a large degree of uncertainty into the proceedings will make the resolution of the parties' dispute more difficult, less efficient, more expensive, and may compromise the administration of justice."  Han Decl., Ex. A, at 9.  Despite this clear instruction, Plaintiff sought a separate court and separate judge within the same venue.

Plaintiff's opposition and granted the consolidation motion.  *See Transferred Action*, Dkt. No. 65.  In doing so, Judge Johnson noted that it was "not entirely clear why Front Row initially filed . . . in the Northern District of Texas when Front Row had previously filed a patent litigation in this District" and that MLBAM and the Beck Defendants' contention that "Front Row was engaging in forum shopping . . . may very well have merit."  *See id.* at 3 & n.1.  While the motion to consolidate was pending, Front Row petitioned the U.S. Court of Appeals for the Federal Circuit for a writ of mandamus, asking it to vacate Judge Kinkeade's transfer order.  Han Decl., Ex. B.  After Judge Johnson granted the motion for consolidation, Front Row withdrew its petition.  Han Decl., Ex. C.

On April 23, 2013, Front Row made another attempt to increase Defendants' costs and get around the agreed stay in the *Original Action* by filing its *Fifth Complaint* overall (the Fourth Amended Complaint in the *Original Action*), dropping most of the previously asserted patents that were in reexamination (the '549, '426, and '877 patents) and adding eight new, related patents to the case (U.S. Patent Nos. 7,796,162; 7,812,856; 7,782,363; 7,884,855; 8,086,184 ("the '184 patent"); 8,184,169 ("the '169 patent"); 8,270,895 ("the '895 patent"); and 8,401,460 ("the '460 patent")).[7] *See generally Original Action*, Dkt. No. 149.

### C.   Plaintiff Brings the *Turner Action* Accusing the Same Products of Infringing Some of the Same Patents as the *Original Action.*

On July 10, 2013, Plaintiff then filed a case in this District against Turner Sports Interactive, Inc. and Turner Digital Basketball Services, Inc. (collectively, the "Turner Defendants"), alleging infringement of the same '184, '895, and '460 patents previously asserted

---

[7] Front Row also added allegations regarding infringement of the '321 patent against NBAMV, which previously had been asserted against only MLBAM and the Beck Defendants in the *Transferred Action*.

in the *Original Action* by, *inter alia*, the same NBA League Pass Mobile product already at issue.[8] *See Turner Action*, Dkt. No. 1 ¶¶ 17, 22, 27 ("*Sixth Complaint*").  On September 4, 2013, Front Row agreed to the filing of a Joint Motion for Reassignment of the *Turner Action* to this Court, since the *Original Action* "currently pending before Judge Browning involves the same patents and several of the same accused products."  *See Turner Action*, Dkt. No. 27 at 1.  On October 2, 2013, Judge Vasquez, to whom the case initially was assigned, granted this joint motion.  *See Turner Action*, Dkt. Nos. 27, 34, 35.

> **D.** **The Court Lifts the Stay in the *Original Action* and Consolidates the *Original Action* and the *Turner Action*.**

On September 30, 2013, the Court lifted the stay in the *Original Action*.  *Original Action*, Dkt. No. 163.  Defendants in the *Original Action* filed answers and counterclaims on October 22, 2013, including extensive inequitable conduct counterclaims relating to the improper procurement of the asserted patents and related patents.  *See Original Action*, Dkt Nos. 173, 175–177.  Plaintiff filed motions to dismiss Defendants' inequitable conduct counterclaims on November 26, 2013.  *See Original Action*, Dkt. Nos. 187–190.

The parties jointly moved to consolidate the *Turner Action* with the *Original Action* for pre-trial purposes, because Front Row agreed that "efficient case management would be served by consolidating these actions for pretrial purposes," to which the Court agreed.  *Turner Action*, Dkt. No. 37 at 1; *Turner Action*, Dkt. No. 43.

---

[8] The Turner Defendants originally were improperly named as including Turner Broadcasting System, Inc., Turner Sports, Inc., and Time Warner Inc. *See Turner Action*, Dkt. No. 24.

E.      **Plaintiff Files Its *Seventh Complaint*, Initiating the *Latest Action*, and Reneges on the Agreed Schedule.**

On December 5, 2013, two days after the Court consolidated the *Turner Action* and the *Original Action*, Front Row filed in this District a *Seventh Complaint* against NBAMV and the Turner Defendants, accusing the same NBA products already at issue in the *Original Action* and the *Turner Action* of infringing another related patent: U.S. Patent No. 8,583,027 ("the '027 patent").  *See Latest Action*, Dkt. No. 1 ¶ 12.  The *Latest Action* was originally assigned to Judge Herrera.

Given the overlapping accused products and the fact that the patents are closely related, NBAMV and the Turner Defendants filed a motion to reassign the case from Judge Herrera to this Court for consolidation with the other *Pending Actions*.  *Latest Action*, Dkt. No. 41.  Plaintiff opposed.  *Latest Action*, Dkt. No. 46.  Judge Herrera granted the motion to consolidate, explaining that the '027 patent "belongs to the same patent family, involves the same subject matter, and shares many of the same claim terms as the patents in the pending cases before Judge Browning.  The cases also share common defendants, accused products, and legal issues."  *Latest Action*, Dkt. No. 65, at 1–2.  Thus, the *Latest Action* finally joined the *Original Action*, the *Transferred Action*, and the *Turner Action* before this Court.

Meanwhile, the parties reached agreement on a proposed schedule governing the consolidated cases, which was initially submitted to the Court on October 31, 2013 (*Original Action*, Dkt. No. 183), and then resubmitted on February 3, 2014, in lieu of a scheduling conference (*Original Action*, Dkt. No. 218-1).  Only two and a half months later, Plaintiff reneged on its agreement to the proposed schedule, informing Defendants that "the parties will need to negotiate a new scheduling order."  *Original Action*, Dkt. No. 218-2.  Plaintiff then

waited more than four months before informing the Court of its change in position.  *Original Action*, Dkt. No. 219.

## III.    ARGUMENT

Under 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented" "[f]or the convenience of parties and witnesses[ and] in the interest of justice."  In considering a motion to transfer, courts in the Tenth Circuit weigh the following "discretionary factors":

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and[] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)).  "The 'party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient.'" *Id.* (quoting *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)).  Indeed, "[f]or more than five decades, [the Tenth Circuit] ha[s] required the movant to demonstrate that the balance of factors '*strongly favors*' a transfer of venue under § 1404(a)." *Id.* at 1167 n.13 (emphasis added); *see also Headrick v. Atchison, Topeka & Santa Fe Ry. Co.*, 182 F.2d 305, 310 (10th Cir. 1950) (requiring "clear and convincing evidence" to transfer). "Merely shifting the inconvenience from one side to the other, however, obviously is not a

permissible justification for a change of venue." *Emp'rs Mut.*, 618 F.3d at 1167 (quoting *Scheidt*, 956 F.2d at 966).

The relevant question here is whether "convenience of the parties and witnesses" and "the interest of justice" compel a transfer to the Eastern District of Texas. As shown below, Plaintiff has failed to meet its heavy burden that these factors "*strongly favor*" the transfer it now seeks.

**A.   A Transfer Is Not in the Interest of Justice.**

1.   Granting Plaintiff's Motion Would Split Cases on the Same Patents and Accused Products.

Granting Plaintiff's Motion would not serve the interest of justice because it would split up the four consolidated *Pending Actions*, sending two cases to the Eastern District of Texas and keeping two cases involving the same patents and accused products here in New Mexico. "Th[e 'interest of justice'] element is concerned with both judicial efficiency and the avoidance of conflict between coordinate courts." *Biotronik, Inc. v. Lamorak Ins. Co.*, No. 15-cv-00252-WJ-WPL, 2015 WL 3522362, at *5 (D.N.M. June 3, 2015) (citing *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)). "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain*, 364 U.S. at 26.

Here, Plaintiff's Motion only requests transfer of the *Original Action* and the *Transferred Action*. Plaintiff does not include the *Latest Action* in its Motion and it excludes the Turner Defendants entirely. *See generally* Motion. If the Motion is granted, which it should not be, that would result in a transfer of the *Original Action* and the *Transferred Action* to the Eastern District of Texas, while keeping the *Turner Action* and the *Latest Action* with this Court.

However, as discussed above, Plaintiff in the *Turner Action* accuses the Turner Defendants of infringing the same '184, '895, and '460 patents previously asserted in the *Original Action* by, *inter alia*, the same NBA League Pass Mobile product already at issue.  *See Turner Action*, Dkt. No. 1 ¶¶ 17, 22, 27.  As a result, the two courts would be confronted with deciding the *exact same issues*.  It was exactly for this reason that Plaintiff previously agreed that "efficient case management would be served by consolidating" the *Original Action* and the *Turner Action*.  *See Turner Action*, Dkt No. 37.  Similarly, the *Latest Action* also involves products accused in the *Original Action*, namely the NBA League Pass Mobile and NBA League Pass Broadband products, as well as a patent related to those asserted in the *Original Action*.  *See Latest Action*, Dkt. No. 1 ¶ 12.

In order to avoid needless duplication of efforts by the two courts and the parties, coordinated case schedules for discovery and other case deadlines would likely be required—for example, for infringement and invalidity contentions, depositions, document production, and expert reports.  However, given the different dockets and levels of court congestion in the District of New Mexico and the Eastern District of Texas, this may be difficult to achieve. Furthermore, having two separate courts ruling on identical issues could present conflicting results.  Transfer in the face of the overlapping and related nature of the asserted patents and the overlapping accused products in these cases would lead to "the wastefulness of time, energy and money that § 1404(a) was designed to prevent."  *Cont'l Grain*, 364 U.S. at 26.  This fact thus strongly weighs against a transfer.

2.      Plaintiff's Forum Shopping and Procedural Tactics Waste Court
Resources and Increase Litigation Costs.

Plaintiff's Motion is yet another example of the tremendous lengths to which it will go to avoid litigating in this Court.  As discussed above, this is not the first time Front Row has tried to move its case out of this District to Texas.  In 2012, Front Row filed the *Texas Action* and dismissed MLBAM from the *Original Action*.  When MLBAM and the Beck Defendants moved to transfer the *Texas Action* back to this Court for consolidation with the *Original Action*, Plaintiff opposed.  Even after the Texas court granted the transfer motion so that the case could be consolidated with the *Original Action*, Plaintiff still opposed MLBAM and the Beck Defendants' motion to consolidate the *Transferred Action* with the *Original Action*, and instead sought to pursue duplicative litigation before two different judges in this District.  Judge Johnson, who had been assigned the *Transferred Action* when it first came to this District, rejected Plaintiff's maneuvering, consolidated the cases, and stated that it was "not entirely clear why Front Row initially filed . . . in the Northern District of Texas when Front Row had previously filed a patent litigation in this District" and that MLBAM and the Beck Defendants' contention that "Front Row was engaging in *forum shopping . . . may very well have merit*." *Transferred Action*, Dkt. No. 65, at 3 & n.1 (emphasis added).

Plaintiff nevertheless continued its attempts to increase the costs of defending this lawsuit.  In order to end an agreed-upon stay while the patents asserted in the *Original Action* underwent reexamination at the USPTO, Plaintiff filed its *Fifth Complaint* (the Fourth Amended Complaint in the *Original Action*), dropping three of the original patents and adding eight others. A ninth new patent was added not long thereafter with the filing of the *Seventh Complaint* (asserting the '027 patent in the *Latest Action*), bringing the total number of asserted patents to

ten.  In a repeat of its earlier forum and judge shopping tactics, Plaintiff opposed consolidation of the *Latest Action* with the *Original Action*, but Judge Herrera granted the motion.

Now Plaintiff, relying solely on selected portions of counterclaims that Defendants asserted nearly two years ago, again seeks to move parts of the case to Texas.  There have been no changes to the counterclaims to justify such a long delay in filing the Motion, and this Motion is merely another attempt to avoid Plaintiff's originally chosen forum.  Moreover, Plaintiff does not even come close to satisfying its burden under Tenth Circuit precedent as to why the Eastern District of Texas is a more convenient forum, let alone a substantially more convenient forum. This Motion is merely another attempt by Plaintiff to avoid the very forum it originally chose. This pattern of vexatious and wasteful litigation behavior does not serve the interest of justice, and Plaintiff's untimely and unsupported Motion should be denied.

**B.    Plaintiff Has Failed to Demonstrate that the Availability of Compulsory Process and Accessibility of Witnesses and Sources of Proof Makes the Eastern District of Texas a Clearly More Favorable Venue.**

Front Row's arguments that the availability of compulsory process and the availability of witnesses and sources of proof favor transfer to the Eastern District of Texas (Motion at 9–12) fail.  Indeed, Front Row has not even attempted to satisfy the Tenth Circuit's requirement that these factors be demonstrated with particularity, rather than with general allegations.  To satisfy the Tenth Circuit's test for showing that New Mexico is an inconvenient venue for third-party witnesses and that compulsory process in the Eastern District of Texas is the only way to procure their testimony, Plaintiff must

> (1) identify the witnesses and their locations; (2) "indicate the quality or materiality of the[ir] testimony"; and (3) "show[ ] that any such witnesses were unwilling to come to trial . . . [,] that deposition testimony would be unsatisfactory[,] or that the use of compulsory process would be necessary."

15

*Emp'rs Mut.*, 618 F.3d at 1169 (quoting *Scheidt*, 956 F.2d at 966).  Although Plaintiff's Motion and the self-serving declarations of its principals list several individuals in the Plano and Dallas area (Motion at 11–12; *Original Action*, Dkt Nos. 221-1 & 221-2), the Motion relies on nothing substantively more than the general allegation that "[a]ll third-party witnesses with knowledge relevant to Counter-Plaintiffs' inequitable conduct claims are persons who have previously worked with Kermit Lopez and Luis Ortiz at Ericsson's Plano office or during their employment with Bickel & Brewer and/or Gardere Wynne Sewell LLP . . . in Dallas."[9]  Motion at 9.  But where "the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum, . . . the application for transferring the case should be denied." *Emp'rs Mut.*, 618 F.3d at 1169 (quoting 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3851, at 227–28 (3d ed. 2007)).

Nowhere in Plaintiff's discussion of potential witnesses does it address either the second prong or the third prong of the Tenth Circuit's test.  Plaintiff does not "indicate the quality or materiality of [the potential witnesses'] testimony."  *Emp'rs Mut.*, 618 F.3d at 1169 (quoting *Scheidt*, 956 F.2d at 966).  The closest that the Motion gets to this is the blatantly unsupported statement that Ericsson employee Walk Evanyk "will refute facts alleged by Counter-Plaintiffs if required to testify."  But this allegation is nothing more than attorney argument, which is insufficient to satisfy Front Row's burden.  *See Scheidt*, 956 F.2d at 966 ("Since 'it is necessary that some factual information relative to the materiality of witness testimony and the considerations mentioned above be supplied to the [trial court,]' [the movant's] meager showing

---

[9] Dallas does not even fall within the Eastern District of Texas, but rather the Northern District of Texas, where the *Transferred Action* was originally filed.

failed to demonstrate the requisite inconvenience to his witnesses." (quoting *ROC, Inc. v. Progress Drillers, Inc.,* 481 F. Supp. 147, 152 (W.D. Okla. 1979))).

Plaintiff further makes no attempt whatsoever to "show[ ] that any such witnesses were unwilling to come to trial . . . [,] that deposition testimony would be unsatisfactory[,] or that the use of compulsory process would be necessary." *Emp'rs Mut.*, 618 F.3d at 1169 (quoting *Scheidt*, 956 F.2d at 966). Instead, Front Row simply has supplied a minimal list of individuals in the Plano or Dallas area. In particular, Front Row has not and cannot articulate a reason why deposition testimony could not be used by the parties if a witness were unwilling to appear in New Mexico. In addition, inequitable conduct is an equitable defense that is committed to the trial judge's discretion. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc); *Syntex (U.S.A.) LLC v. Apotex, Inc.*, 407 F.3d 1371, 1378 (Fed. Cir. 2005). Accordingly, any evidentiary issues concerning witness depositions related to the counterclaim could be resolved by the Court without presenting any problems for a jury. Thus, given Plaintiff's failure to address the Tenth Circuit's test concerning the convenience offered by the availability of compulsory process and the availability of witnesses and sources of proof, Plaintiff has not met its burden to show that these factors favor a transfer.

**C.  The Locus of Operative Facts Test Does Not Favor Plano.**

Plaintiff further alleges that the locus of operative facts of Defendants' inequitable conduct counterclaims centers on the Ericsson facility in Plano. But Defendants' counterclaims allege several acts of misconduct on the part of Front Row's principals, many of which do not involve Ericsson. For example, Defendants allege that Front Row's principals repeatedly

misrepresented and concealed material information to the USPTO.  *See, e.g.*, *Original Action*, Dkt. No. 173, at 82–122.  Plano is not the locus of relevant facts for these allegations.

And for those allegations that do involve Ericsson, the Ericsson facility in Plano is only one of several relevant locations.  Indeed, actions relevant to Defendants' counterclaims actually occurred at least as much in Sweden, New Zealand, and New Mexico as in Plano.  Significant portions of Defendants' counterclaims are based on Ericsson's activities in developing, implementing, and documenting the Arena Project and the America's Cup Project in Sweden and New Zealand, respectively.  *See, e.g.*, *id.* at 40–53.  The fact that the inventors learned of these activities while working in Texas does not mean that all the operative facts occurred there.  As detailed in Defendants' counterclaims, Ericsson developed these projects and then published articles about them in the *Contact* magazine for Ericsson employees worldwide.  *Id.*  Defendants will need to uncover facts relating to these projects and their similarity to the asserted patents in order to establish their inequitable conduct counterclaims, and Plaintiff will likewise look to these projects to show they were not copied.  These facts are most likely to be found in Sweden, not Plano.

Plaintiff also ignores the fact that a substantial portion of Defendants' counterclaims involve the actions of a New Mexico witness.  Defendants described in detail throughout the counterclaims how the inventors submitted false declarations to the USPTO from their law firm colleague, Richard Krukar.  *Id.* at 60–74.  Those declarations, and the accompanying argument to the USPTO, asserted that Dr. Krukar was an independent expert when, in fact, he was and continues to be an employee of the inventors' law firm.  Dr. Krukar is therefore a key witness and is located in New Mexico, not Plano.  *See* http://www.olpatentlaw.com/richard-krukar.

18

### D.    The Convenience and Cost to Witnesses Does Not Favor the Eastern District of Texas.

Plaintiff attaches nearly twenty exhibits to its Motion in an effort to demonstrate that litigating in the Eastern District of Texas would be more convenient and cost-effective for witnesses than the District of New Mexico (Motion at 14–15; *Original Action*, Dkt. Nos. 221-3 through 221-21), but given the ease of airplane travel today and numerous flights between Albuquerque and cities across the country, this factor does not warrant a transfer.  Indeed, the Northern District of Texas considered the reverse scenario when presented with MLBAM and the Beck Defendants' motion to transfer in the *Texas Action*.  There, Judge Kinkeade of the Texas court stated:

> The court sees no need to debate the minutia of exactly how far each witness may have to travel compared to other possible witnesses, or the relative merits of the flight schedules, travel time and layovers involved, or the airports serving [the Northern District of Texas] and the District of New Mexico. . . . Because traveling to either of the proposed venues is not particularly onerous, the court finds that this factor is neutral.

Han Decl., Ex. A, at 8.

In addition, Plaintiff's professed concern of inconvenience to Defendants by litigating in New Mexico instead of the Eastern District of Texas is disingenuous and blatantly ignores Judge Kinkeade's order to the contrary.  Defendants are located in cities around the country—New York, New York; Secaucus, New Jersey; San Antonio, Texas—so Defendants will have to travel to litigate this case regardless of the location.  Plaintiff, on the other hand, is based in the District of New Mexico—its principals live and work in Albuquerque.  Transferring the case away from Plaintiff's home district would thus *increase* the amount of travel required by the parties, which would certainly be an inefficient result.  Also, like Defendants, third-parties listed in the parties'

Initial Disclosures—including Richard Krukar, an employee at Ortiz and Lopez PLLC in Albuquerque (*see* Han Decl., Ex. D, at 3); Kenneth Bolvin, Kermit Lopez's former supervisor at Ericsson, now in Minnesota (*see* Han Decl., Ex. E, at 2); MobiTV, Inc., developer of certain of NBAMV's accused products, based in California (*see* Han Decl., Ex. F, at 3); and various current or former Ericsson employees in Sweden and New Zealand—all will be forced to travel, or provide video testimony, regardless of the venue.  Because transfer to Texas would force Plaintiff to travel when it otherwise would not have to, while all other parties and most witnesses would have to travel regardless, the convenience and cost factor should weigh against transfer.

> **E.      Court Statistics Do Not Favor a Transfer.**

Plaintiff argues that court statistics show that the Eastern District of Texas is less congested than the District of New Mexico, but Plaintiff can assert this position only by cherry-picking certain statistics, ignoring other statistics that applicable case law has determined to be also relevant, and misquoting case law.  "The Tenth Circuit has explained that, when evaluating the administrative difficulties of court congestion, 'the most relevant statistics are [1] the median time from filing to disposition, [2] median time from filing to trial, [3] pending cases per judge, and [4] average weighted filings per judge.'" *Navajo Health Found.–Sage Mem'l Hosp., Inc. v. Burwell*, No. CIV 14-0958 JB/GBW, 2015 WL 711072, at *40 (D.N.M. Feb. 5, 2015) (Browning, J.) (quoting *Emp'rs Mut.*, 618 F.3d at 1169).  Plaintiff's Motion cites only median time to disposition (8.3 months in Texas versus 10.9 months in New Mexico) and median time to trial (21.9 months in Texas versus 23 months in New Mexico).  Motion at 16.  These differences are inconsequential, and indeed, the median time to trial in the Eastern District of Texas rose to 22.9 months for the 12 months ending March 31, 2015, in the latest release of statistics.  *See* U.S.

District Courts–Combined Civil and Criminal Federal Court Management Statistics 35 (Mar. 31, 2015), *available for download at* http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/03/31-2 ("Court Statistics").   On these statistics alone, the factor should be considered neutral.

Further, Plaintiff misquotes another case from this District, suggesting it supports transfer to the Eastern District of Texas: "Consequently, this data indicates that this District has a more congested docket and, generally, does not resolve civil cases as quickly as the Eastern District of [Texas]."   Motion at 16–17 (quoting *Navajo Nation v. Urban Outfitters, Inc.*, 918 F. Supp. 2d 1245, 1260 (D.N.M. 2013)).   Plaintiff's argument is highly misleading.   *Navajo Nation* related to the Eastern District of *Pennsylvania*, not Texas.   918 F. Supp. 2d at 1260.   Neither Plaintiff's cited statistics nor its case law support Front Row's argument.

Moreover, other statistics show that this factor should weigh against transfer.   Plaintiff ignores the fact that the latest court statistics also show that the number of pending cases per judge in the Eastern District of Texas was 694, whereas the District of New Mexico had 406 pending cases per judge.   Court Statistics at 35, 81.   Furthermore, the average weighted filings per judge in the Eastern District of Texas was 1346, compared to the District of New Mexico's 591.   *Id.*   In light of these statistics, ignored by Plaintiff, the court congestion factor should weigh against transfer.[10]

---

[10] In addition, Plaintiff's assertion in connection with this part of its Motion that "Defendants have refused to participate in discovery" is untrue, as demonstrated by the document that Plaintiff itself cites in support of that false statement.   *See* Motion at 17 & n.72; *Original Action*, Dkt. No. 220.   In the letter to the Court cited by Plaintiff, NBAMV and the Turner Defendants directly refute this same allegation, explaining that they have served responses and objections to all of Plaintiff's discovery requests and produced documents.   *See Original Action*, Dkt. No. 220, at 2.

## IV.     CONCLUSION

In moving to transfer portions of the *Pending Actions* to the Eastern District of Texas, Front Row bears the burden of establishing that the balance of factors "strongly favors" a transfer of venue.  *Emp'rs Mut.*, 618 F.3d at 1167 & n.13.  Front Row has failed to meet that burden.  Thus, for the foregoing reasons, Defendants respectfully request that the Court deny Front Row's Motion to Transfer.

Dated:  July 30, 2015                    Respectfully submitted,

                                         */s/ David B. Weaver*
                                         David B. Weaver
                                         New Mexico Bar No. 8061
                                         Stephen M. Hash
                                         Jeffrey Han
                                         **VINSON & ELKINS LLP**
                                         2801 Via Fortuna, Suite 100
                                         Austin, TX 78746
                                         Tel:  (512) 542-8400
                                         Fax:  (512) 542-8612
                                         dweaver@velaw.com
                                         shash@velaw.com
                                         jhan@velaw.com

                                         Hilary L. Preston
                                         Temilola Sobowale
                                         **VINSON & ELKINS LLP**
                                         666 Fifth Avenue, 26th Floor
                                         New York, NY 10103-0040
                                         Tel:  (212) 237-0000
                                         Fax:  (212) 237-0100
                                         hpreston@velaw.com
                                         tsobowale@velaw.com

                                         *Attorneys for Defendants NBA Media
                                         Ventures, LLC; Turner Sports Interactive,
                                         Inc.; and Turner Digital Basketball
                                         Services, Inc.*

*/s/ Alan E. Littmann*
Alan E. Littmann
Illinois Bar No. 6283389
Brian O'Donoghue
Illinois Bar No. 6283857
Doug Winnard
California Bar No. 275420
**GOLDMAN ISMAIL TOMASELLI BRENNAN & BAUM LLP**
564 W. Randolph St., Ste 400
Chicago, IL 60661
Tel: (312) 681-6000
Fax: (312) 881-5191
alittmann@goldmanismail.com
bodonoghue@goldmanismail.com
dwinnard@goldmanismail.com

Emil J. Kiehne
**MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.**
P.O. Box 2168
Albuquerque, NM 87103
Tel: (505) 848-1800
Fax: (505) 848-1889
ejk@modrall.com

*Attorneys for Defendant MLB Advanced Media, L.P.*

*/s/ Eleanor M. Lackman*
Eleanor M. Lackman
**COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP**
41 Madison Avenue, 34th Floor
New York, New York 10010
Tel: (212) 974-7474
Fax: (212) 974-8474
elackman@cdas.com

*Attorney for Defendants Premiere Radio Networks, Inc.; Mercury Radio Arts, Inc.; and GBTV, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2015, I electronically filed the foregoing document with the U.S. District Court, District of New Mexico using the CM/ECF system, which sent notification of such filing by electronic mail to all counsel of record who have registered with the CM/ECF system.

*/s/ David B. Weaver*
 David B. Weaver

25

US 3671875