# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| FRONT ROW TECHNOLOGIES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | No. 1:10-cv-00433 JB-SCY |
| NBA MEDIA VENTURES, LLC; GBTV, | § | No. 1:12-cv-01309-JB-SCY |
| LLC; MERCURY RADIO ARTS, INC. | § | |
| d/b/a 'THE GLENN BECK PROGRAM, | § | |
| INC.' PREMIERE RADIO NETWORKS | § | |
| INC.; MLB ADVANCED MEDIA, L.P. | § | |
| | § | |
| Defendants. | § | |
| | § | |
| FRONT ROW TECHNOLOGIES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | No. 1:13-cv-00636-JB-SCY |
| TURNER SPORTS INTERACTIVE, INC. | § | |
| and TURNER DIGITAL BASKETBALL | § | |
| SERVICES, INC., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| FRONT ROW TECHNOLOGIES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | No. 1:13-cv-01153-JB-SCY |
| NBA MEDIA VENTURES, LLC, | § | |
| TURNER SPORTS INTERACTIVE, INC. | § | |
| and TURNER DIGITAL BASKETBALL | § | |
| SERVICES, INC., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## PLAINTIFF REPLY IN SUPPORT OF FRONT ROW TECHNOLOGIES, LLC'S
## MOTION TO TRANSFER

## TABLE OF CONTENTS

**Contents**

I.     INTRODUCTION ................................................................................. 1

II.    ARGUMENT ....................................................................................... 3

    A.  Transfer is in the Interest of Justice for Counter-Defendant to Fully Defend
Against Allegations Occurring in Texas. .......................................... 3

      1. Only a Single Filing is Necessary to Transfer All Defendants based on the
Court Ordered Consolidation. ................................................. 3

      2. Counter-Defendant Seeks to Defend against Counter-Plaintiffs'
Counterclaims Where all Sources of Evidence Exist ................................ 4

    B.  Counter-Defendant has Identified Specific Primary Fact Witnesses and Sources
of Proof that Require Compulsory Process ....................................... 5

    C.  The Locus of Operative Facts is at Ericsson's Texas Office ........................... 7

    D.  Convenience and Cost to Witnesses Favors the Eastern District of Texas. ...... 10

    E.  Court Statistics Favor Transfer or is Neutral ................................. 11

III.   CONCLUSION ................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Aurora Commercial Corp. v. Lenox Financial Mortg. Corp.*,
    No. 13-cv-0323-WJM-MJW, 2013 WL 5200231 (D. Colo. Sept. 16, 2013) ..................... 6, 7

*Biotronik, Inc. v. Lamorak Ins. Co.*,
    No. 15-00252 WJ/WPL, 2015 WL 3522362 (D.N.M. June 3, 2015) ................................. 6

*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*,
    618 F.3d 1153 (10th Cir. 2010) .......................................................................................... 5

*Garcia-Martinez v. City and County of Denver*,
    392 F.3d 1187 (10th Cir. 2004) .......................................................................................... 6

*Navajo Nation v. Urban Outfitters, Inc.*,
    918 F.Supp.2d 1245 (2013) .............................................................................................. 12

## I.  INTRODUCTION

Counter-Plaintiffs[1] do not seriously dispute that transfer to the Eastern District of Texas is proper. Instead, Counter-Plaintiffs attempt to paint Front Row[2] as engaging in mere "procedural tactics" and recount an irrelevant procedural history, Counter-Plaintiffs' arguments have no bearing on the fact that each and every case filed by Front Row is consolidated, has been stayed for multiple years, is without a scheduling order, and contains the **<u>identical</u>** counterclaims that render the Eastern District of Texas the locus of operative facts. Because all filings are submitted solely in Case No. 10-433 JB-KBM, Front Row has moved to transfer all cases by moving to transfer in that action.[3] As a result, all of Counter-Plaintiffs' arguments regarding splitting the case are irrelevant. And all of Counter-Plaintiffs' arguments regarding the procedural history are inapplicable, as they cover a time period prior to assertion of the counterclaims upon which the current transfer motion is based. Here's the real issue: Counter-Plaintiffs oppose transfer because, as the case currently stands, no discovery is occurring, no scheduling order has been entered, and Counter-Defendant has no ability to obtain the necessary testimony to refute Counter-Plaintiffs' libelous contentions that threaten Front Row's principals' legal careers.

---

[1] "Defendants" or "Counter-Plaintiffs" hereafter shall refer to NBA Media Ventures, LLC, GBTV, LLC, Mercury Radio Arts, Inc. d/b/a 'The Glenn Beck Program, Inc.'; Premiere Radio Networks Inc., MLB Advanced Media L.P.; Turner Sports Interactive, Inc. and Turner Digital Basketball Services, Inc.

[2] "Front Row" hereafter shall refer to Plaintiff and Counter-Defendant, Front Row Technologies, LLC.

[3] No. 1:13-CV-01153, Dkt. 65 ("No further pleadings shall be filed in the instant case and all future filings shall be filed in Case No. 10-433 JB-KBM."); No. 1:13-CV-00636, Dkt. 43 (consolidating 636 case with 433 case); No. 1:12-CV-01309, Dkt. 65 (consolidating 1309 case with 433 case).

Counter-Plaintiffs pled 83 paragraphs of allegations regarding Counter-Defendant's "inequitable conduct" occurring within Ericsson, Inc.'s ("Ericsson") Plano, Texas headquarters through Counter-Defendant's reception of Contact Magazine in Ericsson's Texas office. That is not true, and it is absolutely crucial to obtain the testimony of Ericsson witnesses, as well as information relating to the Ericsson projects, to defend against these inequitable conduct allegations relating to Ericsson's Plano office.[4]

Front Row's recitation of third-party witnesses that will be required for trial include identification of specific individuals with specific relationships with Kermit Lopez and Luis Ortiz during the Ericsson engagement, specifically provides their testimony, and demonstrates their location. Knowing full well that Counter-Defendant established materiality of the identified witnesses, Counter-Plaintiffs instead attempt to divert focus away from Plano—where Kermit Lopez and Luis Ortiz are alleged to receive information relating to the Ericsson projects—to Sweden, New Zealand, or the USPTO. Witnesses located in Sweden, New Zealand, or the USPTO are not in the District of New Mexico and are immaterial to the current analysis.  The fact remains that Sweden and New Zealand are the locations of where the Ericsson projects were developed; Plano is the location of the alleged misconduct. And the **evidence** relating to Counter-Defendant's alleged misconduct with the USPTO and relating to Ericsson's international offices must have been communicated to Counter-Defendant's principals, Kermit Lopez and Luis Ortiz, and their employee, Richard Krukar, who were either located in the Eastern District of Texas at the time of the alleged misappropriation or have agreed to travel to the Eastern District of

_____

[4] Counter-Plaintiffs inequitable counterclaims were asserted after transfer of all cases, which are now all consolidated.

Texas. The evidence necessary to rebut the alleged misconduct occurring at Ericsson's

Texas office is located solely within the Eastern District of Texas.

## II.  ARGUMENT

### A. Transfer is in the Interest of Justice for Counter-Defendant to Fully Defend Against Allegations Occurring in Texas.

#### 1. Only a Single Filing is Necessary to Transfer All Defendants based on the Court Ordered Consolidation.

Counter-Plaintiffs argue that the pending transfer motion "would not serve the

interest of justice because it would split up the four consolidated *Pending Actions*, sending

two cases to the Eastern District of Texas and keeping two cases…here in New Mexico."[5]

Counter-Plaintiffs argue that Front Row's motion "does not include the *Latest Action* in its

Motion and it excludes the Turner Defendants entirely."[6] Not true. Front Row seeks to

transfer ***all*** cases by filing its motion pursuant to Judge Browning's consolidation order

stating that "[n]o further pleadings shall be filed in the instant case and all future filings shall

be filed in Case No. 10-433 JB KBM."[7] This Court further consolidated the 636 and 1309

cases with this case.[8] The filing of this motion in the 433 case applies to all consolidated

cases, and Counter-Defendant expressly moves to transfer all pending cases. Accordingly,

Counter-Plaintiffs' argument regarding case-splitting ignores this Court's orders and is

inapplicable.

---

[5] No. 1:10-CV-00433, Dkt. 222 at 15.
[6] *Id.*
[7] No. 1:13-CV-01153, Dkt. 65 ("No further pleadings shall be filed in the instant case and all future filings shall be filed in Case No. 10-433 JB-KBM.").
[8] No. 1:13-CV-00636, Dkt. 43 (consolidating 636 case with 433 case); No. 1:12-CV-01309, Dkt. 65 (consolidating 1309 case with 433 case).

### *2. Counter-Defendant Seeks to Defend against Counter-Plaintiffs' Counterclaims Where all Sources of Evidence Exist.*

Counter-Defendant seeks transfer to the Eastern District of Texas based on Counter-Plaintiffs' inequitable conduct counterclaims arising from Counter-Defendant's actions allegedly occurring within Ericsson's Plano, Texas office.[9] Transfer is sought because that Court has subpoena power of witnesses located in or near Ericsson's Plano, Texas office, provides better access to evidence of the Arena and America's Cup projects allegedly communicated to Ericsson's Plano office, better serves the interest of justice because non-party witnesses located in or near Plano, Texas require no air travel, and transfer would expedite the resolution of this litigation that has been pending for over five years.

Counter-Plaintiffs argue that "[t]here have been no changes to the counterclaims to justify such a long delay in filing the Motion."[10] That argument ignores that Counter-Defendant has moved to dismiss the counterclaims.[11] Because the Court has not addressed that motion, Counter-Defendant must assume that the counterclaims are going forward on the merits. The merits require discovery; but no discovery is occurring in the case based upon the lack of a scheduling order and, when it does begin, discovery will require the participation of third-party witnesses and production of documents located in the Eastern District of Texas.  Counter-Plaintiffs seek to deny Counter-Defendant the ability to utilize primary fact witnesses and documents located in the Eastern District of Texas to rebut Counter-Plaintiffs' inequitable conduct claims. It is in the interest of justice for Counter-

---

[9] No. 1:10-CV-00433, Dkt. 173 at ¶¶ 23-105; Dkt. 175 at ¶¶ 144-226; Dkt. 176 at ¶¶ 144-226; Dkt. 177 at ¶¶ 144-226.
[10] No. 1:10-CV-00433, Dkt. 222 at 18.
[11] No. 1:10-CV-00433, Dkts. 187, 188, 189, 190.

Defendant to obtain the evidence it needs to defend against these allegations occurring within the Eastern District of Texas.

**B. Counter-Defendant has Identified Specific Primary Fact Witnesses and Sources of Proof that Require Compulsory Process.**

Counter-Plaintiffs argue that Counter-Defendant did not demonstrate with particularity the materiality of its witnesses' testimony, but with general allegations.[12] That is not only not true, but depends on a misreading of this District's authority.

Counter-Plaintiffs rely exclusively on *Employers Mutual* for the proposition that Counter-Defendant has not identified third-party witnesses with sufficient detail.[13] Counter-Plaintiffs ignore the facts of that case. In *Employers Mutual*, the party seeking transfer claimed only that "[t]he majority of potential witnesses in this case are Utah residents, are subject to compulsory process in Utah, and reside within close proximity to Salt Lake City."[14] In stark contrast, Counter-Defendant identified six **specific** individuals—Walt Evanyk, Arthur Navarro, Daniel F. Perez, Daniel Chalker, Ronald Burns, and Pamela Schultz—and included **how** these individuals had **specific working relationships** to Counter-Defendant and to the Ericsson engagements.[15] For example, Mr. Lopez provided factual information regarding Walt Evanyk's position as "an engineer, product manager, and Ericsson inventor while at Ericsson" and that he "**interfaced** with Walt Evanyk" during his employment with Ericsson.[16] Disclosure of such facts support the argument that "[a]ll third-party witnesses with knowledge relevant to Counter-Plaintiffs' inequitable conduct

---

[12] No. 1:10-CV-00433, Dkt. 222 at 18-19.
[13] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010).
[14] Opening Brief for Appellate, *Emp's Mut. Cas. Co. v. Bartile Roofs, Inc.*, No. 08-8064, 2009 WL 2332141 (10th Cir. July 17, 2009).
[15] No. 1:10-CV-00433, Dkts. 221-1, 221-2.
[16] No. 1:10-CV-00433, Dkt. 221-1 at ¶ 2 (emphasis added).

claims are persons who have previously worked with Kermit Lopez and Luis Ortiz at Ericsson's Plano office or during their employment with Bickel & Brewer and/or Gardere Wynne Sewell LLP…in Dallas."[17] In fact, this Court finds this more than sufficient to demonstrate the materiality of witnesses identified. For example, in *Biotronik*, this Court found movant's generic references to "past and present employees," "company representatives and its insurance broker," and "Aon Risk Services Inc. of Oregon" as sufficiently "reasonable to expect these [generically identified] individuals to be material witnesses in the coverage disputes that are central to th[e] lawsuit."[18] Consistent with this Court's precedent, Front Row's disclosure of relevant third-party witnesses mandates transfer to obtain the testimony of those witnesses.

Counter-Plaintiffs next argue that Counter-Defendant "cannot articulate a reason why deposition testimony could not be used by the parties if a witness were unwilling to appear in New Mexico."[19] But "[t]he preference for a witness's attendance at trial is axiomatic. When the 'key factual issues' at trial turn on the 'credibility' and 'demeanor' of the witness, we prefer the finder of fact to observe live testimony of the witness."[20] Given the allegations of misrepresentation and fraud, credibility is of critical importance for trial in this case.

---

[17] No. 1:10-CV-00433, Dkt. 221 at 12.

[18] *Biotronik, Inc. v. Lamorak Ins. Co.*, No. 15-00252 WJ/WPL, 2015 WL 3522362, at * 14 (D.N.M. June 3, 2015).

[19] No. 1:10-CV-00433, Dkt. 222 at 20.

[20] *Garcia-Martinez v. City and County of Denver*, 392 F.3d 1187, 1191 (10th Cir. 2004). *See also Aurora Commercial Corp. v. Lenox Financial Mortg. Corp.*, No. 13-cv-0323-WJM-MJW, 2013 WL 5200231, at *4 (D. Colo. Sept. 16, 2013) ("The impact the non-presence of the primary fact witnesses would have on a trial, should both parties be required to rely solely on their deposition testimony would be immeasurable.").

Denying transfer would prejudice Counter-Defendant from using trial testimony to fully defend against claims of inequitable conduct. The necessity of trial testimony from witnesses with former working relationships with the Counter-Defendant, along with documents related to the alleged "stolen" Arena and America's Cup projects located within Ericsson, requires the compulsory process from the Eastern District of Texas. Without transfer, these witnesses cannot be compelled to travel to New Mexico for trial, and the non-presence of such primary fact witnesses would be immeasurable in defending against Counter-Plaintiffs' counterclaims.[21] Counter-Plaintiffs know their allegations are without factual support, and are attempting to try this case in a vacuum where Counter-Defendant does not have access to the highly-credible corroborating witnesses located in the Eastern District of Texas.

**C. The Locus of Operative Facts is at Ericsson's Texas Office.**

In an attempt to misdirect the Court from the acts that occurred in Texas, Counter-Plaintiffs argue, "actions relevant to Defendants' counterclaims actually occurred at least as much in Sweden, New Zealand, and New Mexico as in Plano."[22] It is unclear why this argument has any relevance, given that no party is seeking to (or can) transfer this case to Sweden or New Zealand, and all parties with a connection to New Mexico seek transfer to the Eastern District of Texas.

What is clear, however, is that Counter-Plaintiffs alleged 83 paragraphs detailing a "scheme" to mislead the USPTO relating to the Ericsson projects that originated from

---

[21] *See Aurora*, 2013 WL 5200231, at *4.
[22] No. 1:10-CV-00433, Dkt. 222 at 21.

Counter-Defendant's actions occurring at Ericsson **in Texas**.[23] Counter-Plaintiffs merely allege Ericsson's Arena and America's Cup Projects were **conceived and developed** in Sweden and New Zealand, respectively, and details about the projects were published in the May 18, 2000 and September 16, 1999 issues of Contact Magazine.[24] Counter-Plaintiffs then allege Kermit Lopez's position as in-house patent and intellectual property counsel at Ericsson's Texas Office "gave him access to internal documentation and information regarding Ericsson's research and development" such as **receiving a copy** of the May 18, 2000 and September 16, 1999 issues of Contact Magazine at Ericsson's Texas office:[25]

> 44.     On information and belief, Ericsson distributed a copy of the May 18, 2000 issue of Contact Magazine to all employees worldwide.  On further information and belief, Lopez, an Ericsson in-house attorney at the time, received his copy of this issue on or around May 18, 2000.

> 59.     On information and belief, Mr. Lopez was aware of the Arena Project, either through its publication in Contact magazine or through other sources of information available to Ericsson in-house counsel.  On further information and belief, Mr. Lopez was aware of the efforts of Tor

---

[23] No. 1:10-CV-00433, Dkt. 173 at ¶¶ 23-105; Dkt. 175 at ¶¶ 144-226; Dkt. 176 at ¶¶ 144-226; Dkt. 177 at ¶¶ 144-226.

[24] No. 1:10-CV-00433, Dkt. 173 at ¶¶ 36-79; Dkt. 175 at ¶¶ 157-200; Dkt. 176 at ¶¶ 157-200; Dkt. 177 at ¶¶ 157-200.

[25] No. 1:10-CV-00433, Dkt. 173 at ¶¶ 25-26, 28, 44, 59, 64, 78; Dkt. 175 at ¶¶ 146-147, 149, 165, 180, 185, 199; Dkt. 176 at ¶¶ 146-147, 149, 165, 180, 185, 199; Dkt. 177 at ¶¶ 146-147, 149, 165, 180, 185, 199.

> 78.    On information and belief, Lopez was aware of Ericsson's collaboration with Virtual Spectator, either through the publication of articles in Contact magazine describing the America's Cup Project or through other sources of information available to Ericsson in-house counsel or the public in general.

Counter-Plaintiffs further argue that Luis Ortiz's position in Dallas as outside counsel to Ericsson gave him access to the Arena and America's Cup Projects through the distribution of the Contact Magazine.[26]

> 60.    On information and belief, Mr. Ortiz was aware of the Arena Project, either through its publication in Contact magazine or through other sources of information available to Ericsson's outside counsel.

> 79.    On information and belief, Ortiz was aware of Ericsson's collaboration with Virtual Spectator, either through the publication of articles in Contact magazine describing the America's Cup Project or through other sources of information available to Ericsson outside counsel or the public in general.

It is only through this contact with Texas that Counter-Defendant's principals Lopez and Ortiz allegedly obtained access to that information. How can Counter-Plaintiffs allege

---

[26] No. 1:10-CV-00433, Dkt. 173 at ¶¶ 60, 79; Dkt. 175 at  ¶¶ 181, 200; Dkt. 176 at ¶¶ 181, 200; Dkt. 177 at ¶¶ 181, 200.

the inequitable conduct occurred in Texas, but argue that the Eastern District of Texas is not the appropriate location for trial? This is simply unjust.

Counter-Plaintiffs further argue that the additional counterclaims "allege several acts of misconduct on the part of Front Row's principals, many of which do not involve Ericsson."[27] They allege that Counter-Defendant "filed unmistakably false declarations, withheld adverse decisions of the PTO Board of Patent Appeals and Interferences ("Appeals Board"), and concealed material information from the PTO, such as the existence of, and office actions from, related co-pending applications." [28] While these allegations may not involve Counter-Defendant's actions within Ericsson, these allegations rely solely on evidence from Front Row principals Lopez and Ortiz, and their employee, Richard Krukar, all of which have agreed to travel to the Eastern District of Texas to testify.[29] Counter-Plaintiffs arguments on this point are a red herring.

**D. Convenience and Cost to Witnesses Favors the Eastern District of Texas.**

Counter-Plaintiffs ignore the convenience to non-party witnesses. Judge Kinkeade of the Texas court did not "debate the minutia of exactly how far each witness may have to travel" because the convenience of non-party witnesses was not in consideration at that time. Counter-Plaintiffs alleged identical inequitable counterclaims regarding events that occurred in or near Plano, Texas *after* the Texas court granted a motion to transfer to this Court.[30] Now that inequitable conduct counterclaims have been asserted, witnesses with

---

[27] No. 1:10-CV-00433, Dkt. 222 at 20.

[28] No. 1:10-CV-00433, Dkt. 173 at ¶¶ 106-382 Dkt. 175 at  ¶¶ 227-503; Dkt. 176 at ¶¶ 227-503; Dkt. 177 at ¶¶ 227-503.

[29] The other individual allegedly with knowledge of Counter-Defendant's misconduct with the USPTO is Tony Verna, who is now deceased.

[30] *See* No. 1:10-CV-00433, Dkts. 173, 175, 176, 177.

knowledge related to Lopez and Ortiz's Ericsson engagement are located in or near Plano, and the Eastern District of Texas is a more convenient forum.

Counter-Plaintiffs do not contest the convenience to the non-party Ericsson witnesses (Ericsson witnesses). Rather, they only dispute that the ease of airplane travel today does not warrant a transfer. For non-party witnesses in the Eastern District of Texas, **no** airplane travel would be required to testify at the transferred case. By avoiding airfare and flight time through driving short distances, the Eastern District of Texas would be a more convenient forum for the non-party witnesses.

**E. Court Statistics Favor Transfer or is Neutral.**

Counter-Plaintiffs argue that the median time to disposition and median time to trial is inconsequential and cite the latest release of statistics.[31] But the median time to disposition of this district (11.0 months) and the Eastern District of Texas (8.3 months) has a difference of nearly three months. Counter-Plaintiffs also argue that the Eastern District of Texas median time to trial rose to 22.9 months, but Counter-Plaintiffs failed to indicate that the median time to trial for the District of New Mexico was not provided in the most recent statistics. Nevertheless, for the last five years, the District of New Mexico had a longer median time from filing to trial.[32]

Counter-Plaintiffs further argue that *Navajo Nation* does not support Front Row's argument. In *Navajo Nation*, this Court still found congestion despite the Eastern District of

---

[31] *See* U.S. District Courts-Combined Civil and Criminal Federal Court Management Statistics 35 (Mar. 31, 2015), *available for download at* http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/03/31-2
[32] *Id.* at 35, 81.

11

Pennsylvania having nearly 600 more cases pending per judge than this Court.[33]

Furthermore, the case also noted that the weighted filings per judge in the District of New

Mexico were predominately criminal felony cases, not civil. With all these factors taken into

consideration, the Eastern District of Texas generally resolves civil cases faster than this

District. Accordingly, this factor weighs in favor of transfer, or is neutral.

### III.CONCLUSION

Transfer to the Eastern District of Texas, Plano Division would enable Counter-

Defendant to utilize the court's compulsory process to obtain the testimony of Ericsson

witnesses and information relating to the Arena and America's Cup Projects, and remedy

the erroneous allegations made by Counter-Plaintiffs regarding Ortiz and Lopez's practice

before the USPTO. Counter-Defendant's principals Ortiz and Lopez should be provided an

opportunity to clear their names.

---

[33] *Navajo Nation v. Urban Outfitters, Inc.*, 918 F.Supp.2d 1245, 1260 (2013).

Dated: August 17, 2015                    Respectfully submitted,

                                          */s/ Dustin R. Lo*
                                          Bryan J. Davis, Esq.
                                          William G. Gilchrist, Esq.
                                          DAVIS, GILCHRIST & LEE, P.C.
                                          124 Wellesley Drive SE
                                          Albuquerque, New Mexico 87106
                                          Telephone: 505.435.9908
                                          bryan@dglnm.com

                                          Michael W. Shore
                                          Alfonso Garcia Chan
                                          Christopher L. Evans
                                          Dustin R. Lo
                                          SHORE CHAN DEPUMPO LLP
                                          901 Main Street, Suite 3300
                                          Dallas, Texas 75202
                                          Telephone: 214.593.9110
                                          Facsimile: 214.593.9111
                                          mshore@shorechan.com
                                          achan@shorechan.com
                                          cevans@shorechan.com
                                          dlo@shorechan.com

                                          Attorneys for Plaintiff
                                          Front Row Technologies, LLC


## CERTIFICATE OF SERVICE

I certify that on August 17, 2015 I electronically filed the foregoing document with the

U.S. District Court, District of New Mexico using the CM/ECF system, which sent

notification of such filing to all counsel of record who has registered with the CM/ECF

system.

                                          */s/ Dustin R. Lo*
                                          Dustin R. Lo

13