# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

FRONT ROW TECHNOLOGIES, LLC,

    Plaintiff,

vs.                                           No. CIV 10-0433 JB/SCY

NBA MEDIA VENTURES, LLC,
MLB ADVANCED MEDIA, L.P.,
MERCURY RADIO ARTS, INC.,
GBTV, LLC, MAJOR LEAGUE
BASEBALL PROPERTIES, INC ., &
PREMIERE RADIO NETWORKS, INC.,

    Defendants.

*consolidated with*

FRONT ROW TECHNOLOGIES, LLC,

    Plaintiff,

vs.                                           No. CIV 12-1309 JB/SCY

MLB ADVANCED MEDIA, L.P.,
MERCURY RADIO ARTS, INC.,
d/b/a 'THE GLEN BECK PROGRAM,
INC.', & GBTV, LLC,

    Defendants.

*consolidated with*

FRONT ROW TECHNOLOGIES, LLC,

    Plaintiff,

vs.                                           No. CIV 13-0636 JB/SCY

TURNER SPORTS INTERACTIVE, INC., AND
TURNER DIGITAL BASKETBALL SERVICES,
INC.

      Defendants.

*consolidated with*

FRONT ROW TECHNOLOGIES, LLC,

      Plaintiff,

vs.                                                              No. CIV 13-1153 JB/SCY


NBA MEDIA VENTURES,
TURNER SPORTS INTERACTIVE, INC.
& TURNER DIGITAL BASKETBALL
SERVICES, INC.,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendants' Memorandum of Law in

Support of their Motion for Entry of a Prosecution Bar Provision in the Protective Order, filed

February 20, 2014 (Doc. 204)("Motion").  The Court held a hearing on October 27, 2015.  The

primary issues are: (i) whether the Court should grant a prosecution bar, which would prohibit

Front Row's counsel from simultaneously participating in this litigation and prosecuting related

patents; and (ii) whether the proposed prosecution bar is reasonable.  The Court concludes that a

prosecution bar is appropriate to protect the Defendants' confidential technical information.  It

determines that the Defendants' proposed prosecution bar, modified with some of Front Row's

suggested changes, is reasonable.  Consequently, the Court will grant the Motion in part and

deny it in part.

## FACTUAL BACKGROUND

The Court takes its facts from the Plaintiff's Fourth Amended Complaint for Patent Infringement and Jury Demand, filed April 23, 2013 (Doc. 149)("Complaint").  It also draws on Plaintiff Front Row Technologies, LLC's Opposition to Defendants' Motion for Entry of a Prosecution Bar Provision in the Protective Order, filed March 10, 2014 (Doc. 205)("Response"), for important details where necessary.

Plaintiff Front Row Technologies ("Front Row") is a New Mexico limited liability company that holds patents related to streaming video on mobile devices.  See Complaint ¶¶ 1-20, at 1-5.  Front Row owns "all rights, title, and interest in and under" ten such patents:

1. United States Patent No. 8,090,321 ("321 patent"), titled "Transmitting Sports and Entertainment Data to Wireless Hand Held Devices over a Telecommunications Network," which duly and legally issued on January 3, 2012;

2. United States Patent No. 8,086,184 ("184 patent"), titled "Transmitting Sports and Entertainment Data to Wireless Hand Held Devices over a Telecommunications Network," which duly and legally issued on December 27, 2011;

3. United States Patent No. 8,270,895 ("895 patent"), titled "Transmitting Sports and Entertainment Data to Wireless Hand Held Devices over a Telecommunications Network," which duly and legally issued on September 18, 2012;

4. Plaintiff Front Row Technologies is the owner of all rights, title and interest in and under United States Patent No. 7,812,856 ("856 patent"), titled "Providing Multiple Perspectives of a Venue Activity to Electronic Wireless Hand Held Devices," which duly and legally issued on October 12, 2010;

5. United States Patent No. 7,796,162 ("162 patent"), titled "Providing Multiple Synchronized Camera Views for Broadcast from a Live Venue Activity to Remote Viewers," which duly and legally issued on September 14, 2010;

6. United States Patent No. 7,884,855 ("855 patent"), titled "Displaying Broadcasts of Multiple Camera Perspective Recordings from Live Activities at Entertainment Venues on Remote Video Monitors," which duly and legally issued on February 8, 2011;

7. United States Patent No. 7,782,363 ("363 patent"), titled "Providing Multiple Video Perspectives of Activities through a Data Network to a Remote Multimedia Server for

Selective Display by Remote Viewing Audiences," which duly and legally issued on August 24, 2010;

8. United States Patent No. 8,184,169 ("169 patent"), titled "Providing Multiple Video Perspectives of Activities through a Data Network to a Remote Multimedia Server for Selective Display by Remote Viewing Audiences," which duly and legally issued on May 22, 2012;

9. United States Patent No. 8,401,460 ("460 patent"), titled "Transmitting Sports and Entertainment Data to Wireless Hand Held Devices over a Telecommunications Network," which duly and legally issued on March 19, 2013; and

10. United States Patent No. 7,376,388 ("388 patent"), titled "Broadcasting Venue Data to a Wireless Hand Held Device," which duly and legally issued on May 20, 2008.

Complaint ¶¶ 11-20, at 3-5.  Front Row alleges that all of these patents are valid and enforceable.

See Complaint ¶¶ 21-31, at 5-6.

Inventors Luis Ortiz and Kermit Lopez founded Front Row in 2000.  See Motion at 7; Response at 3.  Front Row's lead litigation counsel in this matter are Michael Shore and Alfonso Chan of Shore Chan DuPumpo LLP, an intellectual property firm based in Dallas, Texas.  See Motion at 7; Response at 3.  Mr. Shore, Mr. Chan, Ortiz, and Lopez also co-founded and co-own Micro-Gaming Ventures LLC, another entity that pursues patents related to mobile smartphone gambling.  See Motion at 7; Response at 1, 3.

Defendant MLB Advanced Media, L.P. is in the business of broadcasting sporting events through electronic and wireless means, and of selling software to support that broadcasting.  See Complaint ¶ 2, at 1-2.  Its primary product relevant to this litigation is the "At Bat 13" smartphone application, the official application of Major League Baseball.  Complaint ¶ 33, at 6.

Defendants Mercury Radio Arts, Inc. and GBTV, LLC, create and distribute multimedia content over the internet.  They are both associated with talk show host and radio personality Glenn Beck.  See Complaint ¶¶ 4-5, at 2.

Defendant Premiere Radio Networks, Inc. is a "national radio network that produces radio programming and services for radio stations, and distributes its own and various third-party radio programs to radio station affiliates throughout the world."  Complaint ¶ 5, at 2.

Defendant NBA Media Ventures, LLC, like MLB Advanced Media, L.P., is in the business of broadcasting sporting events through electronic and wireless means, and of selling software to support that broadcasting.  See Complaint ¶¶ 6, 37, at 2, 8.  Its primary products relevant to this litigation are "NBA League Pass Mobile" and "NBA League Pass Broadband," which provide video of National Basketball Association games to consumers over the internet. Complaint ¶¶ 37, at 8.

## PROCEDURAL BACKGROUND

The Defendants have moved to insert a prosecution bar into the parties' existing protective orders.  Front Row opposes the entry of a prosecution bar and, in the alternative, argues that the court should modify the Defendants' preferred language.  Although the parties have worked to reach an agreement, there are still significant differences between their proposed prosecution orders.

### 1.    The Motion and Proposed Text.

Between November and December of 2013, Front Row and Defendants traded electronic messages with different proposals for the prosecution bar.  See Email from Doug Winnard, Goldman Ismail Tomaselli Brennan & Baum, LLP, to Christopher Evans, Shore Chan Dupumpo LLP (dated October 15, 2013), filed February 20, 2014 (Doc. 204-10).  The parties ultimately failed to reach an agreement on the prosecution bar's proper scope.  They thus submitted the agreed-upon parts of the protective order to the Court.  See Email from Chris Evans, Shore Chan

DePumpo LLC, to Andrew Allen, Vinson & Elkins (dated December 4, 2013), filed February 20, 2014 (Doc. 204-17).

On December 10, 2013, the Court entered the parties' agreed-upon Protective Orders in each of Front Row's cases against the Defendants.  See Protective Order Governing Discovery of Confidential and Proprietary Information, filed December 10, 2013 (Doc. 192); and Protective Order Governing Discovery of Confidential and Proprietary Information, filed December 10, 2013 (Doc. 44)(entered in separate docket for member case Front Row Techs. v. Time Warner Inc. et al, No. CIV 13-0636 JB/SCY).  These Protective Orders included placeholder language in paragraph 9: "This paragraph is reserved for a possible Prosecution Bar.  The parties disagree on whether such a bar is necessary.  Thus, the issue will be briefed separately."  Protective Order Governing Discovery of Confidential and Proprietary Information, filed February 20, 2014 (Doc. 204-2)("The Defendants' Proposal").

On February 20, 2014, all of the Defendants moved for a prosecution bar to be inserted into the Protective Orders in each of their cases.  See Motion at 1.  The Defendants explain that prosecution bars prohibit anyone who receives another party's confidential technical information in discovery from prosecuting patents "concerning the technological subject matter of the patents-in-suit."  Motion at 1-2.  The bar, the Defendants state, would prevent Front Row from seeking additional patents based on their confidential information.  See Motion at 1-2.

The Defendants include their proposed text for the prosecution bar as part of their Motion.  See Protective Order Governing Discovery of Confidential and Proprietary Information, filed February 20, 2014 (Doc. 204-2)("The Defendants' Proposal").  The Defendants' Proposal reads as follows:

a.     **Primary Proposal**.

(a) Notwithstanding any other provisions of this Protective Order, under no circumstances shall any person employed by, related to, or representing the parties, who has received Protected Materials specifically designated as "HIGHLY CONFIDENTIAL -- ATTORNEY'S EYES ONLY -- PROSECUTION BAR" or "HIGHLY CONFIDENTIAL -- SOURCE CODE" engage in any Prosecution Activity (as defined below) with respect to the subject matter of the patents-in-suit. Furthermore, any person receiving information designated as "HIGHLY CONFIDENTIAL -- ATTORNEY'S EYES ONLY" or "HIGHLY CONFIDENTIAL -- SOURCE CODE" shall not engage in any Prosecution Activity involving any application related to any of the patents-in-suit. The provisions of this paragraph do not apply where a party discloses its own Protected Materials to an individual not designated under this Order to receive such materials. These restrictions shall apply from the time of receipt of Protected Materials designated "HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY," "HIGHLY CONFIDENTIAL -- ATTORNEY'S EYES ONLY -- PROSECUTION BAR," or "HIGHLY CONFIDENTIAL -- SOURCE CODE" through and including two (2) years following the entry of a final, non-appealable judgment or order or the complete settlement of all claims against all Parties in this action.

(b) Prosecution Activity shall mean: (1) preparing and/or prosecuting any patent application, or portion thereof, whether design or utility, either in the United States or abroad; (2) preparing patent claim(s) for any application or patent; or (3) providing advice, counsel, or suggestions regarding, or in any other way influencing, claim scope and/or language, embodiment(s) for claim coverage, claim(s) for prosecution, or products or processes for coverage by claim(s). For the avoidance of doubt, the proscribed activities described herein are intended to include formulation of broadening claims relating to the Protected Material designated as "HIGHLY CONFIDENTIAL -- ATTORNEY'S EYES ONLY -- PROSECUTION BAR" or "HIGHLY CONFIDENTIAL -- SOURCE CODE," but are not intended to preclude participation in post-grant proceedings, including reexaminations, reissues, or *inter partes* review, to the extent of defending a claim of any patent of that person's client, including a patent-in-suit, against any assertion of invalidity or unpatentability. In addition, nothing in this paragraph shall prevent any attorney from sending Prior Art to an attorney involved in patent prosecution. Prior Art shall mean (i) publications, including patents and published patent applications; and (ii) materials or information regarding third party system or product that was publicly known, on sale, or in public use as of the relevant priority date, unless such materials are designated as Protected Materials by that third party or are subject to confidentiality obligations owed to that third party.

### b. __Alternative Proposal__.

(a) Notwithstanding any other provisions of this Protective Order, under no circumstances shall any person employed by, related to, or representing the parties, who has received Protected Materials specifically designated as "HIGHLY CONFIDENTIAL -- ATTORNEY'S EYES ONLY -- PROSECUTION BAR" or "HIGHLY CONFIDENTIAL -- SOURCE CODE" engage in any Prosecution Activity (as defined below) with respect to the capture of data, including video, related to a sports or entertainment event and the transmission of the data to a hand-held device." Furthermore, any person receiving information designated as "HIGHLY CONFIDENTIAL -- ATTORNEY'S EYES ONLY" or "HIGHLY CONFIDENTIAL -- SOURCE CODE" shall not engage in any Prosecution Activity involving any application related to any of the patents-in-suit. The provisions of this paragraph do not apply where a party discloses its own Protected Materials to an individual not designated under this Order to receive such materials. These restrictions shall apply from the time of receipt of Protected Materials designated "HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY," "HIGHLY CONFIDENTIAL -- ATTORNEY'S EYES ONLY -- PROSECUTION BAR," or "HIGHLY CONFIDENTIAL -- SOURCE CODE" through and including two (2) years following the entry of a final, non-appealable judgment or order or the complete settlement of all claims against all Parties in this action.

(b) Prosecution Activity shall mean: (1) preparing and/or prosecuting any patent application, or portion thereof, whether design or utility, either in the United States or abroad; (2) preparing patent claim(s) for any application or patent; or (3) providing advice, counsel, or suggestions regarding, or in any other way influencing, claim scope and/or language, embodiment(s) for claim coverage, claim(s) for prosecution, or products or processes for coverage by claim(s). For the avoidance of doubt, the proscribed activities described herein are intended to include formulation of broadening claims relating to the Protected Material designated as "HIGHLY CONFIDENTIAL -- ATTORNEY'S EYES ONLY -- PROSECUTION BAR" or "HIGHLY CONFIDENTIAL -- SOURCE CODE," but are not intended to preclude participation in post-grant proceedings, including reexaminations, reissues, or *inter partes* review, to the extent of defending a claim of any patent of that person's client, including a patent-in-suit, against any assertion of invalidity or unpatentability. In addition, nothing in this paragraph shall prevent any attorney from sending Prior Art to an attorney involved in patent prosecution. Prior Art shall mean (i) publications, including patents and published patent applications; and (ii) materials or information regarding third party system or product that was publicly known, on sale, or in public use as of the relevant priority date, unless such materials are designated as Protected Materials by that third party or are subject to confidentiality obligations owed to that third party.

The Defendants' Proposal at 2; Motion at 17 (emphasis added).

The Defendants argue that this proposed prosecution bar is appropriate for two primary reasons.  First, they contend that the close business relationship between Front Row's litigation counsel, Mr. Shore and Mr. Chan, and Micro-Gaming Ventures LLC creates a strong risk of inadvertent disclosure.  See Motion at 11.  The Defendants argue that Mr. Shore and Mr. Chan may use the Defendants' information to prosecute patent applications "in the same field of technology as the patents-in-suit, namely, the use of hand-held devices for wirelessly receiving information related to sports and entertainment."  Motion at 5.  The Defendants note that Mr. Shore and Mr. Chan are currently prosecuting new patent applications and bringing infringement claims against them.  See Motion at 6.  The Defendants maintain that the subject matter of the new and old patents overlaps -- for example, the location awareness necessary to comply with local laws in gambling applications may also be useful to black-out sporting events when the events are televised locally.  See Motion at 6-7.  The Defendants say that it would be impossible for Mr. Shore and Mr. Chan to "compartmentalize" their thinking by separating information gained in this litigation from the information they use to secure new patents.  Motion at 12 (citing In re Deutsche Bank Trust Co. Americas, 605 F.3d 1373, 1381 (Fed. Cir. 2010)).

Second, the Defendants argue that their prosecution bar is "both necessary and narrowly tailored to reasonably reflect this heightened risk of inadvertent disclosure."  Motion at 10.  They note that it is limited to two categories of technical documents marked "HIGHLY CONFIDENTIAL."  Motion at 14.  Defendants state that these labels will only apply to "highly sensitive, technical information, including commercially sensitive technical data and research and development information relating to existing and planned products."  Motion at 14.  They point to their proposal's definition of "Prosecution Activity," which they contend will include only activities that affect claim scope, such as preparing patent applications or claims.  The

Defendants' Proposal at 3.  See Motion at 15.  They also note that their proposal excludes "participation in post-grant proceedings," allowing Mr. Shore and Mr. Chan to remain involved in activities like patent reexaminations.  The Defendants' Proposal at 3.  See Motion at 15. Defendants also point to their Proposal's limited duration, which lasts "from the time of receipt of Protected Materials . . . through and including two (2) years following" entry of a final judgment or a complete settlement.  The Defendants' Proposal at 2.  They argue that this duration is reasonable, because: (i) the information will be less readily available in Mr. Shore and Mr. Chan's memories after two years, and thus less susceptible to inadvertent disclosure; and (ii) other courts have found this duration reasonable.  See Motion at 16 (citing EdiSync Sys., LLC v. Adobe Sys., Inc., No. 12-CV-02231-MSK-MEH, 2013 WL 561474, at *3 (D. Colo. Feb. 13, 2013)(Hegarty, J.)).  Finally, the Defendants contend that their bar's prohibition of patent prosecution "with respect to the subject matter of the patents-in-suit" is simple, reasonably tailored, and widely adopted by other courts.  Motion at 17.   As a fallback, the Defendants propose that the bar cover prosecution "with respect to the capture of data, including video, related to a sports or entertainment event and the transmission of that data to a hand-held device."  Motion at 17.

The Defendants close by attacking Front Row's earlier suggestion that the parties use the U.S. Patent Classification System to define the prosecution bar's boundaries.  First, they complain that this system would arbitrarily allow Front Row "to prosecute patent applications that are in the same patent family and indeed could be asserted against the same products accused of infringing the nine patents-in-suit, all because of the arbitrary classification combinations appearing on their cover pages."  Motion at 19.  The Defendants also note that the

then-current U.S. Patent Classification System was not static and was, in fact, slated for replacement in January 2015. See Motion at 19-20.

### 2.   **Front Row's Response and the Defendants' Reply.**

Front Row responded on March 10, 2014. See Plaintiff Front Row Technologies, LLC's Opposition to Defendants' Motion for Entry of a Prosecution Bar Provision in the Protective Order, filed March 10, 2014 (Doc. 205)("Response"). Front Row presents a different legal threshold for a prosecution bar, arguing that the Defendants must "prove that Front Row's outside counsel -- specifically Michael Shore and Alfonso Chan -- are competitive decision-makers[1] before the Court may even consider whether a prosecution bar is warranted." Response at 2 (citing In re Deutsche Bank Trust Co. Americas, 605 F.3d at 1378)). Front Row states that Mr. Shore and Mr. Chan act only as outside litigation counsel for Front Row, do not prosecute patents for Front Row, and make no competitive decisions. See Response at 3-7. Although it allows that they are also associated with Micro-Gaming Ventures LLC, it explains that this is a "*completely separate*" entity with patents that do not encompass similar subject matter. Response at 4-5 (emphasis in original).

The Defendants replied to the Response on March 27, 2014. See Defendants' Reply in Support of their Motion for Entry of a Prosecution Bar Provision in the Protective Order, filed March 27, 2014 (Doc. 209)("Reply"). The Defendants first dispute the proper legal standard. They assert that the moving party must show "that [1] the information designated to trigger the bar, [2] the scope of activities prohibited by the bar, [3] the duration of the bar, and [4] the

---

[1]The Federal Circuit has defined "competitive decisionmaking" as "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468 n. 3 (Fed. Cir. 1984)).

subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information."   Reply at 2 (quoting In re Deutsche Bank Trust Co. Americas, 605 F.3d at 1381)).

> The Defendants then describe the second step:
>
> Once the moving party has shown that the proposed prosecution bar is reasonable, the burden shifts to the party seeking an exemption from the prosecution bar to show on an individual-by-individual basis that: (1) the individual's activity before the [United States Patent and Trademark Office ("USPTO")] does not and is not likely to implicate competitive decision-making related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation" and (2) the potential injury to the exemption-seeking party from restrictions imposed on its choice of litigation and prosecution counsel (or experts) outweighs the potential injury to the information-producing party caused by such inadvertent use.

Reply at 2 (quoting In re Deutsche Bank Trust Co. Americas, 605 F.3d at 1381)).   The Defendants emphasize that the court's determination of whether the attorneys are competitive decisionmakers is part of this second step rather than a threshold determination.  See Reply at 3 (citing Eon Corp. IP Holdings, LLC v. AT&T Mobility LLC, 881 F. Supp. 2d 254, 257 (D.P.R. 2012)).  They claim that Front Row has failed to dispute the reasonableness of their proposal and that it is reasonable for the four reasons they provided in their Motion.  See Reply at 5 (citing Motion at 13-20).

Second, the Defendants contend that, in any case, Mr. Shore and Mr. Chan are involved in activities before the USPTO that will likely implicate competitive decision-making.  See Reply at 6-7.  They assert that Mr. Shore and Mr. Chan's work for a third-party can qualify as competitive decisionmaking, and make a prosecution bar appropriate.  See Reply at 6.  They explain that Mr. Shore and Mr. Chan's responsibilities include "making invention disclosures, reviewing applications before they are filed, and defining the scope of the claims that they have purportedly co-invented."  Reply at 9.  They also argue that the Court should compare Micro-

Gaming Ventures LLC's patents with not only the patents at issue here, but also with "any subject matter in which the patented technology reasonably *could* be used."   Reply at 9 (emphasis in original).   Third, the Defendants point out that Front Row fails to allege any injury from the proposed prosecution bar.   See Reply at 12.

### 3.    <u>The Hearing and Front Row's Proposed Text</u>.

The Court held a hearing on October 27, 2015.   See Transcript of Motion Proceedings at 1:1-4 (Court)(taken October 27, 2015)("Tr.").[2]   The Defendants made the first arguments, largely repeating the points made in their briefing.   See Tr. at 101:9-106:15 (Court, Littman).   The Defendants explained that they had attempted negotiations on the prosecution bar, but did not come close to an agreement.   See Tr. at 107:2-4 (Littman).   The Court requested that each party submit a letter including its last offer to opposing counsel, so that the Court could "narrow the gap [and] choose between" their positions.   Tr. at 108:1-14 (Court).   The Defendants agreed, but noted that they would not begin discovery until the prosecution bar was in place.   See Tr. at 108:15-109:2 (Littman, Court).   The Court then asked the Defendants whether they were aware of or could accept any model patent prosecution bars.   See Tr. at 109:3-23 (Court).   The Defendants did not give a definitive response, but suggested that they "would think" that language from the United States Court of Appeals for the Federal Circuit's model would be satisfactory.   Tr. at 110:14-21 (Court, Littman).

Front Row responded with a thirty-one-slide PowerPoint presentation.   See Notice of Plaintiff's Presentations for October 27, 2015 Hearing, filed October 29, 2015 (Doc. 240-3)("PowerPoint").   Front Row's submission and hearing arguments emphasized the differences

---

[2]The Court's citations to the transcript for this hearing refer to the court reporter's original, unedited version.   Any final version may contain slightly different page and/or line numbers.

between the patents at issue and Micro-Gaming Ventures LLC's patents.  See PowerPoint at 2-3; Tr. at 112:13-113:25 (Rafilson)(explaining that "none of the Microgaming [sic] patents are asserted against defendants" and "none of the patents claim priority to each other or to any common applications").  Front Row again noted that Micro-Gaming Ventures LLC's patents focused on gaming and wagering rather than video streaming.  See PowerPoint at 5.  It described the prejudice from the proposed bar, calling it a "thinly-veiled attempt to harass and disqualify Front Row's lead counsel."  PowerPoint at 7.  See Tr. at 115:1-9 (Rafilson)(making the same argument).  It explained that the Court must balance any risks of disclosure against "the potential difficulty the client might face if forced to rely on other counsel for the pending litigation" or USPTO proceeding.  PowerPoint at 18 (quoting In re Deutsche Bank Trust Co. Americas, 605 F.3d at 1381).  Given the "longstanding relationship" between Mr. Shore, Mr. Chan, and Front Row, it said, a prosecution bar would create a great burden.  PowerPoint at 21.

Front Row also moved to rebut the Defendants' interpretation of In re Deutsche Bank Trust Co. Americas.  Front Row points out that the risk of disclosure must be assessed on "*a counsel-by-counsel basis* . . . [which] should turn on the extent to which counsel is involved in 'competitive decisionmaking' with its client."  PowerPoint at 11 (quoting In re Deutsche Bank Trust Co. Americas, 605 F.3d at 1378)(emphasis in PowerPoint).  Front Row contends that neither attorney is a competitive decisionmaker, because: (i) Mr. Shore is not a registered patent attorney; (ii) neither Mr. Shore nor Mr. Chan has prosecuted patents for Front Row; and (iii) neither Mr. Shore nor Mr. Chan drafts claims for Micro-Gaming Ventures LLC or is involved in "day-to-day prosecution."  PowerPoint at 17.  See Tr. at 116:15-17 (Rafilson).  Front Row also attempts to distinguish Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc., No. C-

09-02180 SBA DMR, 2011 WL 197811, at *3 (N.D. Cal. Jan. 20, 2011)(Ryu, J.)(unpublished),[3]

on the grounds that the decisive factor supporting a general prosecution bar in that case, the

United States District Court for the Northern District of California's model protective order, does

not apply in the District of New Mexico.  See PowerPoint at 15.

Front Row then presented two alternative proposals for any prosecution bar's text

through a series of PowerPoint slides.  See PowerPoint at 25-31.  Front Row's proposal reads as

follows:

### a.   **Primary Proposal**.

(a) Notwithstanding any other provisions of this Protective Order, under no circumstances shall any person employed by, related to, or representing the parties, who has received Protected Materials specifically designated as "HIGHLY CONFIDENTIAL -- ATTORNEY'S EYES ONLY -- PROSECUTION BAR" or "HIGHLY CONFIDENTIAL -- SOURCE CODE" engage in any Prosecution Activity (as defined below) with respect to the subject matter of the patents-in-suit.  For clarification, the "subject matter of the patents-in-suit" does not include gambling and/or wagers, and any persons subject to this prosecution bar may provide input into gambling and/or wagering aspects of any patent, regardless of its remaining subject matter.  Furthermore, any person receiving information designated as "HIGHLY CONFIDENTIAL --

---

[3]Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc. is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc., No. C-09-02180 SBA DMR, 2011 WL 197811 (N.D. Cal. Jan. 20, 2011); Vasudevan Software, Inc. v. Int'l Bus. Machines Corp., No. C09-05897 RS HRL, 2010 WL 3629830 (N.D. Cal. Sept. 14, 2010) and Helferich Patent Licensing, LLC v. Suns Legacy Partners, LLC, No. CV-11-02304-PHX-NVW, 2012 WL 6049746 (D. Ariz. Dec. 5, 2012) have persuasive value with respect to material issues and will assist the Court in its disposition of this Memorandum Opinion and Order.

ATTORNEY'S EYES ONLY" or "HIGHLY CONFIDENTIAL -- SOURCE CODE" shall not engage in any Prosecution Activity involving any application related to any of the patents-in-suit. The provisions of this paragraph do not apply where a party discloses its own Protected Materials to an individual not designated under this Order to receive such materials. These restrictions shall apply from the time of receipt of Protected Materials designated "HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY," "HIGHLY CONFIDENTIAL -- ATTORNEY'S EYES ONLY -- PROSECUTION BAR," or "HIGHLY CONFIDENTIAL -- SOURCE CODE" through and including two (2) years following the entry of a final, non-appealable judgment or order or the complete settlement of all claims against all Parties in this action.

(b) Prosecution Activity shall mean: (1) preparing and/or prosecuting any patent application, or portion thereof, whether design or utility, either in the United States or abroad; (2) preparing patent claim(s) for any application or patent; or (3) providing advice, counsel, or suggestions regarding, or in any other way influencing, claim scope and/or language, embodiment(s) for claim coverage, claim(s) for prosecution, or products or processes for coverage by claim(s). For the avoidance of doubt, the proscribed activities described herein are intended to include formulation of broadening claims relating to the Protected Material designated as "HIGHLY CONFIDENTIAL -- ATTORNEY'S EYES ONLY -- PROSECUTION BAR" or "HIGHLY CONFIDENTIAL -- SOURCE CODE," but are not intended to preclude participation in post-grant proceedings, including reexaminations, reissues, or *inter partes* review, to the extent of (1) defending a claim of any patent of that person's client, including a patent-in-suit, against any assertion of invalidity or unpatentability, and/or (2) filing or requesting such a proceeding and participating in said proceeding thereafter. In addition, nothing in this paragraph shall prevent any attorney from sending Prior Art to an attorney involved in patent prosecution. Prior Art shall mean (i) publications, including patents and published patent applications; and (ii) materials or information regarding third party system or product that was publicly known, on sale, or in public use as of the relevant priority date, unless such materials are designated as Protected Materials by that third party or are subject to confidentiality obligations owed to that third party.

        **b.**    <u>**Alternative Proposal.**</u>

(a) Notwithstanding any other provisions of this Protective Order, under no circumstances shall any person employed by, related to, or representing the parties, who has received Protected Materials specifically designated as "HIGHLY CONFIDENTIAL -- ATTORNEY'S EYES ONLY -- PROSECUTION BAR" or "HIGHLY CONFIDENTIAL -- SOURCE CODE" engage in any Prosecution Activity (as defined below) with respect to (1) patents

and patent applications prosecuted of the same U.S. Classification (Cl.)[4] or Fields of Classification Search listed/identified on any of the patents-in-suit,[5] (2) patents and patent applications having a Cooperative Patent Classification corresponding [to] the International Classification listed on any of the patents-in-suit,[6] and/or (3) a Cooperative Patent Classification corresponding to the U.S. Classification Search listed on any of the patents-in-suit.[7] Furthermore, any person receiving information designated as "HIGHLY CONFIDENTIAL -- ATTORNEY'S EYES ONLY" or "HIGHLY CONFIDENTIAL -- SOURCE CODE" shall not engage in any Prosecution Activity involving any application related to any of the patents-in-suit. The provisions of this paragraph do not apply where a party discloses its own Protected Materials to an individual not designated under this Order to receive such materials. These restrictions shall apply from the time of receipt of Protected Materials designated "HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY," "HIGHLY CONFIDENTIAL -- ATTORNEY'S EYES ONLY -- PROSECUTION BAR," or "HIGHLY CONFIDENTIAL -- SOURCE CODE" through and including two (2) years following the entry of a final, non-appealable judgment or order or the complete settlement of all claims against all Parties in this action.

(b) Prosecution Activity shall mean: (1) preparing and/or prosecuting any patent application, or portion thereof, whether design or utility, either in the United States or abroad; (2) preparing patent claim(s) for any application or patent; or (3) providing advice, counsel, or suggestions regarding, or in any other way influencing, claim scope and/or language, embodiment(s) for claim coverage, claim(s) for prosecution, or products or processes for coverage by claim(s). For the avoidance of doubt, the proscribed activities described herein are intended to include formulation of broadening claims relating to the Protected Material

---

[4]The USPTO's U.S. Classification numbers are found [at]: http://www.uspto.gov/web/patents/classification/index.htm.

[5]For example, U.S. Patent 8,086,184 lists U.S. Classification Numbers 455/66.1, 455/414.1, 455/435.1, 455/3.06, 455/899 and Field of Classification Searched as 455/550.1, 455/566, 567, 414.1, 3.06, 435.1, 66.1, 899.

[6]The Cooperative Patent Classification System is based on the International Patent Classification System. A concordance, or cross reference, between the two is available at http://www.cooperativepatentclassification.org/cpcConcordances.html. For example, U.S. Patent 8,0864,184 lists International Patent Classification H04W 4/00. That classification corresponds to Common Patent Classification System classifications H04W 4/00, H04W 4/001, H04W 4/003, H04W 4/005, H04W 4/006, AND H04W 4/008.

[7]A Cooperative Patent Classification may be found by searching for a U.S. Classification ("USPC") on the USPTO's website at http://www.uspto.gov/web/patents/classification/index.htm.

designated as "HIGHLY CONFIDENTIAL -- ATTORNEY'S EYES ONLY -- PROSECUTION BAR" or "HIGHLY CONFIDENTIAL -- SOURCE CODE," but are not intended to preclude participation in post-grant proceedings, including reexaminations, reissues, or *inter partes* review, to the extent of (1) defending a claim of any patent of that person's client, including a patent-in-suit, against any assertion of invalidity or unpatentability, and/or (2) filing or requesting such a proceeding and participating in said proceeding thereafter. In addition, nothing in this paragraph shall prevent any attorney from sending Prior Art to an attorney involved in patent prosecution. Prior Art shall mean (i) publications, including patents and published patent applications; and (ii) materials or information regarding third party system or product that was publicly known, on sale, or in public use as of the relevant priority date, unless such materials are designated as Protected Materials by that third party or are subject to confidentiality obligations owed to that third party.

PowerPoint at 25-31 (emphasis and references in original). Front Row's alternative proposal responded to the U.S. Patent Classification System's expiration in January 2015. See PowerPoint at 23. Front Row contends that the parties could link the patents-in-suit to classifications within the new Cooperative Patent Classification System,[8] arguing that Front Row's counsel could simply avoid prosecuting patents with overlapping classifications. See PowerPoint at 23-24. Front Row also requests that the prosecution bar exempt both Mr. Shore and Mr. Chan. See PowerPoint at 31; Tr. at 126:5-15 (Rafilson). Front Row states that the Defendants would agree with its modification to part (b) to exclude post-grant activity from the prosecution bar. See PowerPoint at 28.

The Defendants responded to this proposal by suggesting that it was "a little bit of argument by ambush," because Front Row was presenting it for the first time. Tr. at 128:10-12 (Littman). They noted that there was still "a gap" between the parties' proposals and that they

---

[8]The Cooperative Patent Classification System is a joint initiative by the USPTO and the European Patent Office to create a common, internationally compatible classification system for technical documents. This system allows patent examiners to sort particular patent publications into common categories, making it easier to compare applications and locate similar existing patents. See Cooperative Patent Classification, EUROPEAN PATENT OFFICE AND UNITED STATES PATENT AND TRADEMARK OFFICE (Nov. 3, 2015), http://www.cooperativepatentclassification.org/index.html.

did not believe "we'd be able to accept the language as it currently is." Tr. at 128:19-23 (Littman). The Defendants made two final arguments. First, they argued that, assuming Mr. Shore and Mr. Chan's involvement in patent prosecution was as minimal as Front Row asserted, the Defendants' prosecution bar would not prejudice them in any way. See Tr. at 129:3-12 (Littman). Second, the Defendants questioned whether any court had employed the USPTO's categories in a prosecution bar. See Tr. at 131:6-10 (Littman).

The Court and Front Row then discussed whether the Northern District of California's model protective order was an appropriate model in the present case. See Tr. at 132:5-22 (Court, Rafilson). Front Row argued that In re Deutsche Bank Trust Co. Americas requires courts to examine "the specific factors in each individual case," making such a template not "useful or fair." Tr. at 132:15-22 (Rafilson).

### 4.   **The Defendants' Final Letter.**

The Defendants complied with the Court's request that they submit a letter including their last offer to Front Row on October 30, 2015. See Tr. at 108:1-14 (Court)(making the request); Letter from Doug Winnard, Goldman Ismail Tomaselli Brennan & Baum LLP, to Judge James Browning, filed October 30, 2015 (Doc. 243)("Final Letter"). The Final Letter largely repeated Defendants' earlier arguments, but it highlighted a patent application filed on April 29, 2014 with Mr. Shore and Mr. Chan's signatures. See Final Letter at 2. Defendants argued that Micro-Gaming Ventures, LLC's patents "focus on the same subject matter as the patents-in-suit and use generic references to gambling or wagering to claim a minor variation on the same theme." Final Letter at 2. It again attacked Front Row's updated proposal to use the Cooperative Patent Classification System to define the scope of the bar, arguing that patents would have no set classification at the time of filing and that "the classifications themselves are revised on an annual basis." Final Letter at 5. Although the Final Letter attached a proposed prosecution bar, it was

identical to the Defendants' February 2014 proposal.   <u>Compare</u> Protective Order Governing Discovery of Confidential and Proprietary Information, filed October 30, 2015 (Doc. 243-1) <u>with</u> The Defendants' Proposal at 2-3.

## LAW REGARDING PATENT PROSECUTION BARS

Discovery in patent litigation frequently requires parties to provide valuable confidential information to opposing counsel.   Courts typically shield such information with protective orders that specify that the recipients can use it only for the litigation's purposes.   They recognize, however, that because even competitors acting in good faith "cannot simply purge selected information from their memory, the risk is that they may later use the knowledge gained from the confidential material, however inadvertently, in the prosecution of future patents."   <u>Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.</u>, 2011 WL 197811, at *3.   This problem often arises when trial counsel in one patent case also represent their client in patent prosecution actions.   When trial counsel receive confidential technical information from opposing counsel, it may be difficult for them to avoid using the information in separate patent applications.   "A mere ban on such misuse is not enough; apart from the challenge of knowing what is happening in an ex parte proceeding, there is the matter of proof."   <u>Avago Techs., Inc. v. IPtronics Inc.</u>, No. 5:10-CV-02863-EJD, 2015 WL 3640626, at *1 (N.D. Cal. June 11, 2015)(Grewal, J.).

Patent prosecution bars protect against this risk by prohibiting the recipients of a party's confidential technical information from engaging in patent prosecution-related activities concerning the subject matter of the patents in question.   <u>See</u> 60 Am. Jur. 2d <u>Patents</u> § 768 ("A patent prosecution bar precludes all persons who had access to the opponent's confidential information produced for trial from working on the patent prosecution on that subject matter.").   Courts determining whether to incorporate a patent prosecution bar into a protective order must

balance the risk of inadvertent disclosure or improper use of confidential information against the potential harm to a party's right to representation by its preferred counsel.  "The determination of whether a protective order should include a patent prosecution bar is governed by federal circuit law."[9]  60 Am. Jur. 2d Patents § 761 (citing NeXedge, LLC v. Freescale Semiconductor, Inc., 820 F. Supp. 2d 1040, 1042 (D. Ariz. 2011)(Campbell, J.)).  "The party seeking a protective order or patent prosecution bar has the burden of showing good cause for its issuance."  60 Am. Jur. 2d Patents § 761 (citing In re Deutsche Bank Trust Co. Americas, 605 F.3d at 1378).

In re Deutsche Bank Trust Co. Americas, 605 F.3d 1373, is the Federal Circuit's foundational opinion on patent prosecution bars.  In that case, the owners of patents related to financial services brought an infringement suit against Deutsche Bank Trust Company Americas and Total Bank Solutions, LLC (collectively, "Deutsche Bank").  See 605 F.3d at 1375.  Deutsche Bank responded to their discovery requests by seeking a prosecution bar preventing "anyone who gains access in the litigation to documents marked 'confidential -- patent prosecution bar' from any involvement in prosecuting any patent in the area of 'deposit sweep services' during, and for a limited period after, the conclusion of this litigation."  605 F.3d at 1376.  Although the United States District Court for the Southern District of New York's

---

[9]The Federal Circuit applies its own law to discovery matters if the question involves an issue of substantive patent law.  See In re Deutsche Bank Trust Co. Americas, 605 F.3d at 1377; Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc., 265 F.3d 1294, 1307 (Fed. Cir. 2001); In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 803 (Fed. Cir. 2000)("In reviewing district court judgments, we apply the law of the circuit in which the district court sits with respect to nonpatent issues, but we apply our own law to issues of substantive patent law.").  The Federal Circuit has determined that

> A determination of whether a trial lawyer should be denied access to information under a protective order because of his additional role in patent prosecution, or alternatively be barred from representing clients in certain matters before the U.S. Patent and Trademark Office ("PTO"), is an issue unique to patent law.

In re Deutsche Bank Trust Co. Americas, 605 F.3d at 1377.

decision granted the bar, it made an exception for the plaintiff's lead trial counsel.  Deutsche Bank appealed.  <u>See</u> 605 F.3d at 1376.

The Federal Circuit seized the opportunity to determine "when an attorney's activities in prosecuting patents on behalf of a client raises an unacceptable risk of inadvertent disclosure." <u>In re Deutsche Bank Trust Co. Americas</u>, 605 F.3d at 1379.  It first set out a spectrum of patent prosecution activities ranging from "duties that involve little more than reporting office actions or filing ancillary paperwork, such as sequence listings, formal drawings, or information disclosure statements," 605 F.3d at 1379, to substantial engagement such as "writing, reviewing, or approving new applications or continuations-in-part of applications," 605 F.3d at 1380.  The Federal Circuit recognized a broad range of roles between these two extremes.  In light of this spectrum, the Federal Circuit held that courts must "examine all relevant facts surrounding counsel's actual preparation and prosecution activities, on a counsel-by-counsel basis."  605 F.3d at 1380.

Specifically, <u>In re Deutsche Bank Trust Co. Americas</u> requires courts to balance this risk of disclosure against the prejudice to the nonmoving party's right to counsel of its choice.  <u>See</u> 605 F.3d at 1380.  In making this decision, district courts have "broad discretion" to weigh

> the extent and duration of counsel's past history in representing the client before the PTO, the degree of the client's reliance and dependence on that past history, and the potential difficulty the client might face if forced to rely on other counsel for the pending litigation or engage other counsel to represent it before the PTO.

605 F.3d at 1381.  The Federal Circuit then attempted to articulate a concise test for future courts to apply:

> We therefore hold that a party seeking imposition of a patent prosecution bar must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar <u>reasonably reflect</u> the risk presented by the disclosure of proprietary competitive information. We further hold that the <u>party seeking an exemption</u>

from a patent prosecution bar must show <u>on a counsel-by-counsel basis</u>: (1) that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use.

<u>In re Deutsche Bank Trust Co. Americas</u>, 605 F.3d 1373, 1381 (Fed. Cir. 2010)(emphasis added).

> **1.      Framework.**

Courts attempting to apply the Federal Circuit's test have followed one of two routes. <u>See</u> James Boyle, <u>Patent Prosecution Bars: How Courts Apply Deutsche Bank</u>, Law360 (Jan. 23, 2013), <u>available at</u> http://www.law360.com/articles/408015/patent-prosecution-bars-how-courts-apply-deutsche-bank.   The majority of courts first require the movant to "show that there is an 'unacceptable' risk of inadvertent disclosure of confidential information, determined by the extent to which counsel is involved in 'competitive decisionmaking' with its client." <u>NeXedge, LLC v. Freescale Semiconductor, Inc.</u>, 820 F. Supp. 2d at 1043 (quoting <u>In re Deutsche Bank Trust Co. Americas</u>, 605 F.3d at 1381).   The movant must demonstrate this risk "on a counsel-by-counsel basis."   <u>NeXedge, LLC v. Freescale Semiconductor, Inc.</u>, 820 F. Supp. 2d at 1043. Second, the movant must show that the proposed prosecution bar is reasonable in scope -- that it

> reasonably reflect[s] the risk presented by the disclosure of proprietary competitive information. This showing requires that the information designed[[10]] to trigger the bar, the scope of activities prohibited by the bar, the duration of the

_____

[10]<u>NeXedge, LLC v. Freescale Semiconductor, Inc.</u> and similar cases use "designed" instead of "designated" while discussing the sort of information that will trigger a prosecution bar.   <u>See</u> 820 F. Supp. 2d at 1043.   Because this aspect of the test focuses on the labels a prosecution bar applies to different types of information, and because the information cannot literally be "designed" to fall within the bar, the Court agrees with the Federal Circuit's original choice of "designated."   <u>See</u> <u>In re Deutsche Bank Trust Co. Americas</u>, 605 F.3d at 1381.

bar, and the subject matter covered by the bar all reasonably reflect the risk presented by disclosure.

NeXedge, LLC v. Freescale Semiconductor, Inc., 820 F. Supp. 2d at 1043 (quotations omitted).

Only after these steps are complete does the burden shift to the nonmovant.  The party seeking an exception from the prosecution bar must show

> on a counsel-by-counsel basis: (1) that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and (2) that the potential injury from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the moving party caused by such inadvertent use.

NeXedge, LLC v. Freescale Semiconductor, Inc., 820 F. Supp. 2d at 1043.  The majority of courts thus require the movant to show, on a counsel-by-counsel basis, that opposing counsel engage in competitive decisionmaking.   See, e.g., ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc., 274 F.R.D. 576, 580 (E.D. Va. 2010)(Stillman, J.)(considering whether specified attorneys were competitive decisionmakers as a threshold determination); Ameranth, Inc. v. Pizza Hut, Inc., No. 11--1810(JLS/NLS), 2012 WL 528248, at *3 (S.D. Cal. Feb. 17, 2012)(Stormes, J.); AmTab Mfg. Corp. v. SICO Inc., No. 11--2692, 2012 WL 195027, at *2 (N.D. Ill. Jan. 19, 2012)(Darrah, J.); Iconfind, Inc. v. Google, Inc., No. 11--319(GEB/JFM), 2011 WL 3501348, at *4 (E.D. Cal. Aug. 9, 2011)(Moulds, J.); Kraft Foods Global, Inc. v. Dairilean, Inc., No. 10-c-8006, 2011 WL 1557881, at *4 (N.D. Ill. Apr. 25, 2011)(Lefkow, J.); Telebuyer, LLC v. Amazon.com, Inc., No. 13-CV-1677, 2014 WL 5804334, at *1 (W.D. Wash. July 7, 2014)(Rothstein, J.); Karl Storz Endoscopy-Am., Inc. v. Stryker Corp., No. 14-CV-00876-RS (JSC), 2014 WL 6629431, at *2 (N.D. Cal. Nov. 21, 2014)(Corley, J.); Sanders v. Mosaic Co., No. 09-00016-CV-W-JTM, 2012 WL 640159, at *3 (W.D. Mo. Feb. 27, 2012)(Maughmer, J.); Chiesi USA, Inc. v. Sandoz Inc., 41 F. Supp. 3d 417, 423 (D.N.J. 2014)(Donio, J.).

A minority of courts take a different approach.  First, the party seeking the bar must show that a general bar would be reasonable in its particular case.  See Eon Corp. IP Holdings, LLC v. AT&T Mobility LLC, 881 F. Supp. 2d at 256.  To meet this burden, it should demonstrate "that the information designated to trigger the bar, the scope of the activities prohibited by the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary information." Eon Corp. IP Holdings, LLC v. AT&T Mobility LLC, 881 F. Supp. 2d at 257.  The burden then shifts to the party seeking the exemption, which must make a counsel-by-counsel showing: (i) that the targeted counsel's role will not likely implicate competitive decisionmaking; and (ii) that its potential injury from the restrictions imposed on its choice of counsel outweighs the other party's potential injury resulting from its inadvertent use of protected information.  See Eon Corp. IP Holdings, LLC v. AT&T Mobility LLC, 881 F. Supp. 2d at 257.  Only two courts have expressly adopted this position.  See Eon Corp. IP Holdings, LLC v. AT&T Mobility LLC, 881 F. Supp. 2d at 257; Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc., 2011 WL 197811, at *3.[11]

Although the two approaches place different burdens on the party seeking the protective order, they consider the same factors.

## 2.    Competitive Decisionmaker and Risk to Movant.

The Federal Circuit held in In re Deutsche Bank Trust Co. Americas that district courts should determine whether counsel's representation of the client in two capacities "does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation

---

[11]Several other cases avoid discussing the issue.  See Kelora Sys., LLC v. Target Corp., No. C 10-04947 CW LB, 2011 WL 6000759, at *7 (N.D. Cal. Aug. 29, 2011)(Beeler, J.); E-Contact Technologies, LLC v. Apple, Inc., No. 1:11-CV-426 LED/KFG, 2012 WL 11924448, at *2 (E.D. Tex. June 19, 2012)(Giblin, J.); Xerox Corp. v. Google, Inc., 270 F.R.D. 182, 183 (D. Del. 2010)(Thynge, J.).

so as to give rise to a risk of inadvertent use of confidential information learned in litigation."
605 F.3d at 1381.  The Federal Circuit's earlier cases defined "competitive decisionmaking" as
"shorthand for a counsel's activities, association, and relationship with a client that are such as to
involve counsel's advice and participation in any or all of the client's decisions (pricing, product
design, etc.) made in light of similar or corresponding information about a competitor."
Iconfind, Inc. v. Google, Inc., 2011 WL 3501348, at *2 (quoting U.S. Steel Corp. v. United
States, 730 F.2d at 1468 n. 3).

The Federal Circuit separated attorneys into three categories to determine whether they
were competitive decisionmakers.  First, attorneys with only remote opportunities to engage in
any competitive decisionmaking would not be competitive decisionmakers:

> Some attorneys involved in patent litigation, for example, may have patent
> prosecution duties that involve little more than reporting office actions or filing
> ancillary paperwork, such as sequence listings, formal drawings, or information
> disclosure statements. Similarly, some attorneys may be involved in high-altitude
> oversight of patent prosecution, such as staffing projects or coordinating client
> meetings, but have no significant role in crafting the content of patent applications
> or advising clients on the direction to take their portfolios. . . . Unless there is a
> reasonable expectation that one such attorney's involvement or authority will
> change in a relevant way during the tenure of the prosecution bar, a judge may
> find that the attorney is properly exempted from a prosecution bar.

In re Deutsche Bank Trust Co. Americas, 605 F.3d at 1379-80.  See Applied Signal Tech., Inc. v.
Emerging Markets Commc'ns, Inc., 2011 WL 197811, at *5.  A second group "more
substantially engaged with prosecution" would be properly included in a patent prosecution bar:

> Such involvement may include obtaining disclosure materials for new inventions
> and inventions under development, investigating prior art relating to those
> inventions, making strategic decisions on the type and scope of patent protection
> that might be available or worth pursuing for such inventions, writing, reviewing,
> or approving new applications or continuations-in-part of applications to cover
> those inventions, or strategically amending or surrendering claim scope during
> prosecution. For these attorneys, competitive decisionmaking may be a regular
> part of their representation, and the opportunity to control the content of patent
> applications and the direction and scope of protection sought in those applications

may be significant. The risk of inadvertent disclosure of competitive information learned during litigation is therefore much greater for such attorneys.

In re Deutsche Bank Trust Co. Americas, 605 F.3d at 1380. Attorneys falling between these polar extremes would present a closer question:

> Between these examples lies a range of patent prosecution activities that may pose a closer question of the propriety of a patent prosecution bar. For instance, some junior level attorneys may primarily take instructions from more senior level attorneys, but may still have occasion to shape the content of a patent application. Some senior level supervisors may primarily serve as liaisons between prosecuting attorneys and clients, but may also have the opportunity to influence the direction of prosecution. While these activities may not pose the heightened risk inherent in principal prosecution activities, the risk of inadvertent disclosure may nonetheless arise under the facts and circumstances of a particular case if counsel is engaged with the client in certain competitive decisionmaking. It is therefore important for a court, in assessing the propriety of an exemption from a patent prosecution bar, to examine all relevant facts surrounding counsel's actual preparation and prosecution activities, on a counsel-by-counsel basis.

In re Deutsche Bank Trust Co. Americas, 605 F.3d at 1380.

In Ameranth, Inc. v. Pizza Hut, Inc., a small company with few employees and a patent-enforcement business model alleged that Pizza Hut infringed two of its patents. See 2012 WL 528248, at *1. Michael Fabiano, co-litigation counsel for Amarnath, Inc., was also the patent prosecutor on two pending patent applications related to the patents in dispute. See 2012 WL 528248, at *1. Mr. Fabiano was involved in "analyzing and submitting prior art, making strategic decisions concerning claim scope, and amending the claims." 2012 WL 528248, at *1. He had amended related claims and identified relevant prior art. See 2012 WL 528248, at *1. The Honorable Nita L. Stormes, Magistrate Judge for the United States District Court for the Southern District of California, concluded that Mr. Fabiano was a competitive decisionmaker, explaining that "Fabiano's prosecution duties include analyzing and submitting prior art, making strategic decisions concerning claim scope, and amending claims. These activities demonstrate Fabiano is substantially engaged in prosecution." 2012 WL 528248, at *5.

Courts have also considered whether the target attorney is a competitor in determining whether he or she is a competitive decisionmaker.   In NeXedge, LLC v. Freescale Semiconductor, Inc., the Honorable David Campbell, District Judge for the United States District Court for the District of Arizona explained: "Plaintiff is not a competitor of Defendants, its sole asset is the Asserted Patent, and it is not in the business of developing or patenting new products. Thus, many of the concerns recognized in the prosecution bar cases simply do not exist here." 820 F. Supp. 2d at 1044.

A target attorney's history of litigation against the party seeking the prosecution bar is relevant, but not dispositive.   In Iconfind, Inc. v. Google, Inc., 2011 WL 3501348, for example, Google argued that a prosecution bar was appropriate because "primary counsel for Iconfind are prominent plaintiffs' attorneys who have a history of filing suit against Google."   2011 WL 3501348, at *4.   The Magistrate Judge replied that:

> This type of argument, however, has been rejected by numerous courts. *See SmartSignal Corp. v. Expert Microsystems, Inc.,* 2006 WL 1343647, at *6 (N.D. Ill. May 12, 2006)(denying plaintiff's proposed prosecution bar despite defendant's outside counsel representing the defendant in patent prosecution work and representation of more than fifty clients on biotechnology matters, including the area involved in the underlying action); *AFP Advanced Food Products LLC v. Snyder's of Hanover Manufacturing, Inc.,* 2006 WL 47374, at *2 (E.D. Pa. Jan. 6, 2006)(denying defendant's prosecution bar that would prevent the plaintiff's attorneys from prosecuting new patents for the plaintiff for a period of two years based on insufficient facts).

2011 WL 3501348, at *4.   It explained that a broad prosecution bar, "without some tangible reason or good cause other than the general threat of inadvertent misuse of discovered materials, is the exact type of overly broad and generalized fear rejected by the Federal Circuit in *U.S. Steel, In re Sibia* [Neurosciences, Inc., 132 F.3d 50 (Fed. Cir. 1997)] and *Deutsche Bank.*"   2011 WL 3501348, at *4.

Other courts, however, have considered the target's litigation history in making their decisions.  Google, Inc. faced a similar plaintiff in buySAFE, Inc. v. Google, Inc., No. 3:13CV781-HEH, 2014 WL 2468553, at *3 (E.D. Va. June 2, 2014)(Hudson, J.).  This time, however, the United States District Court for the Eastern District of Virginia noted that the risk to Google, Inc. was significant, "especially in light of Plaintiff's alleged predisposition to file serial lawsuits against Defendant on newly-issued patent claims."  2014 WL 2468553, at *3.  The law on this point remains unsettled, but it appears that at least some courts consider the other litigation of the party objecting to the prosecution bar against the party seeking the bar.

### 3.     Whether the Bar Reasonably Reflects the Risk.

Courts must also determine whether the proposed prosecution bar "reasonably reflect[s] the risk presented by the disclosure of proprietary competitive information."  NeXedge, LLC v. Freescale Semiconductor, Inc., 820 F. Supp. 2d at 1043 (quoting In re Deutsche Bank Trust Co. Americas, 605 F.3d at 1381).  One court has described this task as determining "whether the proposed bar is reasonable in scope."  Ameranth, Inc. v. Pizza Hut, Inc., 2012 WL 528248, at *5.  Under either name, courts consider whether: "[i] the information designated to trigger the bar, [ii] the scope of activities prohibited by the bar, [iii] the duration of the bar, and [iv] the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information."  In re Deutsche Bank Trust Co. Americas, 605 F.3d at 1381.

### a.     Information designated to trigger the bar.

Courts have drawn a line between financial data and business information, on the one hand, and highly confidential technical information, on the other.  Financial data or business information that could give a party a competitive edge, but is irrelevant to a patent application, does not raise sufficient risk for a prosecution bar.  See Applied Signal Tech., Inc. v. Emerging

Markets Commc'ns, Inc., 2011 WL 197811, at *2; Kelora Sys., LLC v. Target Corp., 2011 WL 6000759, at *7; Opperman v. Path, Inc., No. 13-CV-00453-JST, 2013 WL 5643334, at *2 (N.D. Cal. Oct. 15, 2013)(Tigar, J.)("Because the proposed bar would be triggered by information that typically would not be relevant to the prosecution of a patent, such as confidential sales and competitive data, the bar is overly broad as currently drafted.").  Highly confidential or technical information such as source code,[12] on the other hand, triggers a prosecution bar.  See Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc., 2011 WL 197811, at *2 ("In contrast with financial data or business information, confidential technical information, including source code, is clearly relevant to a patent application and thus may pose a heightened risk of inadvertent disclosure."); Telebuyer, LLC v. Amazon.com, Inc., 2014 WL 5804334, at *2 ("Source code is highly confidential, technical information that creates a heightened risk of inadvertent disclosure.")(quotations omitted).  Parties may mark information in a protective order as "'Confidential,' 'Highly Confidential -- Attorneys' Eyes Only,' or 'Highly Confidential -- Source Code.'"  Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc., 2011 WL 197811, at *2.

> **b.**     **Scope of activities prohibited by the bar.**

Most courts to consider this issue have allowed prosecution bars on activities closely associated with patent prosecution.  In Kelora Sys., LLC v. Target Corp., for example, the court described a proposed prohibition on "directly or indirectly drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims" as "appropriately limited."  2011

---

[12]Source code is the "version of software as it is originally written (i.e., typed into a computer) by a human in plain text (i.e., human readable alphanumeric characters)."  Source Code Definition, THE LINUX INFORMATION PROJECT (Feb. 14, 2006), http://www.linfo.org/source_code.html.  Commercial software developers often try to keep source code secret so that their competitors do not copy it and use it in their own programs.

WL 197811, at *2.  The District Court for the Northern District of California approved a prosecution bar governing "patent prosecution" -- with "prosecution" defined to include "directly or indirectly drafting, amending, advising or otherwise affecting the scope or maintenance of patent claims, but [] not [] representing a party challenging a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, *ex parte* reexamination or *inter partes* reexamination)."  Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc., 2011 WL 197811, at *2 n.1.  Another decision provided normative guidelines for other courts to follow:

> [T]he protective order should include a limited patent acquisition bar that prohibits counsel from advising clients as to which patents to acquire to the extent such patents are narrowly related to the subject matter of this litigation, but allows counsel to advise on legal matters involving such patents, including validity. Further, the bar must not apply to settlement negotiations of litigations.

EPL Holdings, LLC v. Apple Inc., 2013 WL 2181584, at *5.  Where the parties cannot reach an agreement, courts may excise the parties' proposals and add their own language.  See Liveperson, Inc. v. 24/7 Customer, Inc., No. 14 CIV. 1559 RWS, 2015 WL 4597546, at *6 (S.D.N.Y. July 30, 2015)(Sweet, J.)("Since the parties cannot agree on the meaning of the phrase in question, the optimal approach is to excise it completely, and add clarifying language to the section on the activities exempted from the bar.").

Much of the litigation on patent prosecution bars has focused on whether bars can permissibly include patent reexamination proceedings.[13]   Courts have generally held that

---

[13]"Under the Patent Act, patent owners and third parties may initiate a 'reexamination' proceeding to confirm or challenge the validity of a previously issued patent."  Telebuyer, LLC v. Amazon.com, Inc., 2014 WL 5804334, at *5 (citing 35 U.S.C. §§ 302–307).  The USPTO's Director then determines whether the reexamination raises a "substantial new question of patentability."  35 U.S.C. § 303.  If it does, the USPTO orders a reexamination and allows all relevant parties to participate.  See 35 U.S.C. § 304.  The USPTO then proceeds with reexamination proceedings "according to the procedures established for initial examination."  35 U.S.C. § 305.

prosecution bars should not encompass reexamination proceedings.  See Ameranth, Inc. v. Pizza Hut, Inc., 2012 WL 528248, at *6 ("[A] review of cases directly discussing a prosecution bar applied to reexamination finds near unanimous support against extending the bar to cover reexamination[.]")(citing Pall Corp. v. Entegris, Inc., 655 F. Supp. 2d 169, 173 (E.D.N.Y. 2008)(Mauskopf, J.); NeXedge, LLC v. Freescale Semiconductor, Inc., 820 F. Supp. 2d at 1044; Xerox Corp. v. Google, Inc., 270 F.R.D. at 185; Vasudevan Software, Inc. v. Int'l Bus. Machines Corp., No. C09-05897 RS HRL, 2010 WL 3629830, at *4 (N.D. Cal. Sept. 14, 2010)(Lloyd, J.)(unpublished)).  This refusal is grounded in three considerations.  First, some courts view reexamination as "a limited proceeding assessing only the patentability of existing claims against specific prior art references."  Xerox Corp. v. Google, Inc., 270 F.R.D. at 184.  These courts state that confidential information is "basically irrelevant" to those determinations.  Xerox Corp. v. Google, Inc., 270 F.R.D. at 184.  Second, claims in reexamination proceedings can only be narrowed:  "[N]o product that did not infringe a patent before reexamination could ever infringe that patent following reexamination."  Xerox Corp. v. Google, Inc., 270 F.R.D. at 184.  Third, some courts have predicted that patent holders will attempt to maintain the broadest possible interpretation of their claims on reexamination regardless whether they have any new confidential information.  See Xerox Corp. v. Google, Inc., 270 F.R.D. at 184.

Courts' agreement on this point is not unanimous.  A "newer line of cases recognizes that even in a reexamination proceeding, a patent owner can use confidential information to restructure or amend its claims so as to improve its litigation position against alleged infringers." Telebuyer, LLC v. Amazon.com, Inc., 2014 WL 5804334, at *6.  See Shared Memory Graphics, LLC v. Apple, Inc., 2010 WL 4704420, at *3 (N.D. Cal. Nov. 12, 2010)(Chen, J.)("[A] patent owner may well choose to restructure claims in a manner informed by the alleged infringer's

confidential information gleaned from litigation[.]"); Grobler v. Apple Inc., 2013 WL 3359274, at *2 (N.D. Cal. May 7, 2013)(Grewal, J.)(extending prosecution bar to cover reexamination, in a limited form); EPL Holdings, LLC v. Apple Inc., 2013 WL 2181584, at *4 (holding that counsel "may participate in third-party initiated review proceedings so long as counsel is prohibited from assisting in any crafting or amendment of patent claims").

At least one court has also carefully scrutinized reissue and appeal proceedings, considering them separately from reexamination proceedings.   The District Court for the Southern District of California has noted that "[o]n reissue, an amendment may enlarge the scope of the claims, provided it is applied for within two years from the grant of the original patent. On appeal, the patentee may amend and expand the scope of the claims with a showing of good and sufficient reasons for the amendment."   Ameranth, Inc. v. Pizza Hut, Inc., 2012 WL 528248, at *7.   Because either procedure allows the patentee more room to enlarge its claims' scope, the risk of harm to other parties based on confidential information is greater, making prosecution bars more appropriate.   See 2012 WL 528248, at *7.

### c.     The bar's duration.

Courts routinely hold that prosecution bars with two-year durations are reasonable.   See Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc., 2011 WL 197811, at *2; Ameranth, Inc. v. Pizza Hut, Inc., 2012 WL 528248, at *7 ("The purpose of the bar is to prevent inadvertent disclosure of confidential information. A two-year bar fulfills this purpose more so than a one-year bar, as the confidential information will be less readily available in the memory of counsel."); Kelora Sys., LLC v. Target Corp., 2011 WL 6000759, at *7 (finding a two-year prosecution bar reasonable); Telebuyer, LLC v. Amazon.com, Inc., 2014 WL 5804334, at *7.

d.     **Subject matter that the bar covers.**

Courts generally center the subject matter that prosecution bars cover on the patents at issue in their cases.  A proposed prosecution bar's subject should be "coextensive with the subject matter of the patents-in-suit."  Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc., 2011 WL 197811, at *3.  Numerous other courts have used the same "subject matter of the patents-in-suit" language.  See Cheah IP LLC v. Plaxo, Inc., 2009 WL 1190331, at *2-3 (N.D. Cal. 2009)(Chen, J.); Eon Corp. IP Holdings, LLC v. AT & T Mobility LLC, 881 F. Supp. 2d at 258; E-Contact Techs., LLC v. Apple, Inc., 2012 WL 11924448, at *2 ("[I]t is the subject matter of the patent-in-suit which the Court must focus on, rather than on the scope of any individual claim asserted.").  Other courts have broadened the subject to include patent claims that "relate to the subject matter of this action."  Karl Storz Endoscopy-Am., Inc. v. Stryker Corp., 2014 WL 6629431, at *3.

Courts have also approved parties' attempts to define the subject matter more specifically.  In Ameranth, Inc. v. Pizza Hut, Inc., the district court approved the parties' decision to restrict the prosecution bar to actions relating to (i) food or beverage service related software for use through the Internet and/or wireless devices; (ii) food or beverage service related point of sale (POS) software; or (iii) food or beverage service-related reservation software.  See 2012 WL 528248, at *2.  In Kelora Sys., LLC v. Target Corp., the court approved the parties' compromise, which restricted the prosecution bar to "the prosecution of patents or patent applications relating to search engines, web search, or database or server search technology."  2011 WL 6000759, at *7.  Telebuyer, LLC v. Amazon.com, Inc., approved Amazon.com, Inc.'s requested language because "Amazon directly copied the language in its proposed order from Telebuyer's discovery

request and Telebuyer's own patent. Those are appropriate sources from which to draw a description of the prosecution bar's subject matter."  2014 WL 5804334, at *4.

Courts must take care not to limit prosecution bars to the field in which the patented innovations or products are currently useful.  In Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc., the plaintiffs argued in favor of a narrow prosecution bar limited to "patents that relate to 'self interference cancellation technology for shared-channel, satellite communications.'"  2011 WL 197811, at *2.  The plaintiffs conceded that the technology in dispute could be applied to other fields, but argued that none of the parties had any products outside of the satellite communications field.  See 2011 WL 197811, at *2.  The defendants countered that it should apply to all patents that related to "self-interference cancellation technology."  2011 WL 197811, at *2.  They presented evidence that the technology "could be used in patenting an invention unrelated to shared-channel satellite application, such as in wireless, wire line, or microwave communications."  2011 WL 197811, at *2.  The court agreed with the defendants, explaining that prosecution bars attempt to prevent individuals from "exploit[ing] their new knowledge in future patent prosecution," regardless whether the future patents concern similar products.  Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc., 2011 WL 197811, at *3.  It thus held that "the relevant question is not to which field the accused products are *currently* limited, but instead in which fields the patented technology reasonably *could* be used."  2011 WL 197811, at *3 (emphasis in original).  See Kelora Sys., LLC v. Target Corp., 2011 WL 6000759, at *8.

Finally, courts may impose patent prosecution bars against attorney's work for other, non-party clients.  In Telebuyer, LLC v. Amazon.com, Inc., defendant Amazon.com, Inc. successfully argued that "the harm is identical whether confidential information is inadvertently

used on behalf of Telebuyer or another client."  2014 WL 5804334, at *4.  See Kelora Sys., LLC v. Target Corp., 2011 WL 6000759, at *7 (asking "why the court should distinguish activities done on behalf of [the plaintiff] from those same activities when done on behalf of other clients"); Gen-Probe Inc. v. Becton, Dickinson & Co., 267 F.R.D. 679, 684 (S.D. Cal. 2010)(Stormes, J.)("Other cases have expanded the scope of the prosecution bar to apply not only to patents belonging to the litigating parties, but to counsel's other clients who may have patents related to the technology at issue.").

    **4.**   **Exemptions.**

Under either the majority or minority approach, a party who seeks an exemption to a patent prosecution bar must demonstrate:

> (1) that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use.

In re Deutsche Bank Trust Co. Americas, 605 F.3d at 1381.  A court's determination that there is significant risk of inadvertent disclosure does not end its inquiry.  "Even if a district court is satisfied that such a risk exists, the district court must balance this risk against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice."  In re Deutsche Bank Trust Co. Americas, 605 F.3d at 1380.  In re Deutsche Bank Trust Co. Americas provides a non-exclusive list of relevant factors, including:

> the extent and duration of counsel's past history in representing the client before the PTO, the degree of the client's reliance and dependence on that past history, and the potential difficulty the client might face if forced to rely on other counsel for the pending litigation or engage other counsel to represent it before the PTO.

605 F.3d at 1381.  The Federal Circuit recognized that this test would not be an "easy balancing act, since the factors that make an attorney so valuable to a party's prosecution interests are often the very factors that subject him to the risk of inadvertent use or disclosure of proprietary competitive information acquired during litigation."  605 F.3d at 1381.

The United States District Court for the District of Arizona considered this balance of risk against harm in Helferich Patent Licensing, LLC v. Suns Legacy Partners, LLC, No. CV-11-02304-PHX-NVW, 2012 WL 6049746 (D. Ariz. Dec. 5, 2012)(Wake, J.)(unpublished).  In that case, the defendants asserted that the plaintiff's counsel participated "in competitive decisionmaking by prosecuting new patent claims and patent reexaminations, and adding new claims to existing patents."  2012 WL 6049746, at *2.  The district court agreed that the plaintiff's counsel were competitive decisionmakers, but found that the risk of disclosure did not outweigh the potential prejudice to the plaintiff.  See 2012 WL 6049746, at *2-3.  It stated that the defendants failed to meet their burden, because they did not "identify any specific confidential information that could be misused, apart from broad allegations of potential harms."  2012 WL 6049746, at *3.  The district court was not impressed with the defendants' contention that confidential information "could be reviewed by a good patent lawyer to inspire him or her to draft new patent claims targeted on Defendants' systems and plans for future systems (if any)," calling it "highly speculative."  2012 WL 6049746, at *3.  It weighed this speculative harm against the concrete prejudice to the plaintiff: "Depriving [the plaintiff] of the specialized representation that its counsel can provide in this case would force them to rely on less knowledgeable counsel, either in this litigation or before the PTO, and thus increase costs and duplicate effort."  2012 WL 6049746, at *3 (quotations omitted).  It noted that the plaintiff's counsel had represented it "both in litigation and before the PTO for many years," and that they

were "deeply familiar with the patents at issue in this case."  2012 WL 6049746, at *3.  It thus denied the motion for a patent prosecution bar.  See 2012 WL 6049746, at *4.

Attorneys' familiarity with the relevant patents increases the potential prejudice to the prosecution bar's target.  See Endo Pharm. Inc. v. Actavis Inc., No. 12 CIV. 8060 (TPG), 2014 WL 3950900, at *3 (S.D.N.Y. Aug. 13, 2014)(Griesa, J.)(considering that "Dechert has developed extensive knowledge and expertise regarding [specific patent] challenges"); NeXedge, LLC v. Freescale Semiconductor, Inc., 820 F. Supp. 2d at 1044 ("Plaintiff has an interest in choosing its own counsel, particularly in the highly specialized area of patent litigation and prosecution.").

A district court reached the opposite conclusion in Ameranth, Inc. v. Pizza Hut, Inc., 2012 WL 528248, at *7.  The court explained that the plaintiff's chosen counsel, Mr. Fabiano, was "relatively new" to the plaintiff and had worked there for less than two years.  2012 WL 528248, at *7.  It also noted that the plaintiff's two other litigation counsel could more than adequately handle the case.  See 2012 WL 528248, at *7.  It forced Mr. Fabiano to "make a choice: either prosecute patents in this family of patents, or litigate the patents at issue, but not both."  2012 WL 528248, at *7.

Courts are more likely to grant an exemption where the attorney requesting it is not a member of the patent bar.  Opperman v. Path, Inc. reasoned that it was clear that "there is no danger that Plaintiffs' counsel will be involved in patent prosecution activities," because the "Defendants admit that '[t]here is no indication that any of plaintiffs' counsel are members of the patent bar."  2013 WL 5643334, at *3.  See Iconfind, Inc. v. Google, Inc., 2011 WL 3501348, at *3 (considering nonmovant's argument that "[e]ven if the prosecution bar was limited to counsel,

- 38 -

only two of the four attorneys for Iconfind passed the patent bar and, thus, are eligible to prosecute patents").

## ANALYSIS

The Court first concludes that it should adopt the minority rule as the governing framework.  The majority rule, which places the initial burden on the movant to show that opposing counsel engage in competitive decisionmaking, is inconsistent with In re Deutsche Bank Trust Co. Americas.  The Court next determines that Defendants' proposed prosecution bar, modified with some of Front Row's suggested changes, is appropriate and that it reasonably reflects the risk that the disclosure of the Defendants' proprietary competitive information presents.  Finally, the Court concludes that the threat to the Defendants outweighs Front Row's interest in continuing to employ Mr. Shore and Mr. Chan as both litigation counsel and patent prosecutors.

## I.   THE MINORITY FRAMEWORK IS MORE CONSISTENT WITH IN RE DEUTSCHE BANK TRUST CO. AMERICAS AND RESOLVES A SERIOUS FLAW IN THE MAJORITY FRAMEWORK.

As a threshold matter, the Court must determine whether to follow the majority or minority framework, or create some new approach.  The majority approach involves three steps.  First, the Defendants would have to show a risk of inadvertent disclosure by proving "that Front Row's outside counsel -- specifically Michael Shore and Alfonso Chan -- are competitive decision-makers."  Response at 2.  See NeXedge, LLC v. Freescale Semiconductor, Inc., 820 F. Supp. 2d at 1043.  Second, the Defendants would need to demonstrate that their proposed bar reasonably reflects the risk of disclosure.  See NeXedge, LLC v. Freescale Semiconductor, Inc., 820 F. Supp. 2d at 1043.  Third, Front Row would have to show: (i) that its counsel's continued representation would not implicate competitive decisionmaking; and (ii) that its potential injury

outweighs the potential injury to the Defendants from possible disclosures.  See NeXedge, LLC v. Freescale Semiconductor, Inc., 820 F. Supp. 2d at 1043.

The minority framework, on the other hand, has two steps.  First, the Defendants would have to demonstrate that their proposed bar "reasonably reflect[s] the risk presented by the disclosure of proprietary competitive information."  NeXedge, LLC v. Freescale Semiconductor, Inc., 820 F. Supp. 2d at 1043 (quotations omitted).  Second, the burden then shifts to Front Row to show that "counsel-specific balancing" favors exemptions for particular counsel.  Eon Corp. IP Holdings, LLC v. AT & T Mobility LLC, 881 F. Supp. 2d at 257.

The Court concludes that the minority approach is more consistent with In re Deutsche Bank Trust Co. Americas and resolves a practical problem with the majority approach.[14]  The majority approach suffers from two textual flaws.  First, as a threshold matter, it would require the Defendants to "prove that Front Row's outside counsel -- specifically Michael Shore and Alfonso Chan -- are competitive decision-makers before the Court may even consider whether a prosecution bar is warranted."  Response at 2.  See NeXedge, LLC v. Freescale Semiconductor, Inc., 820 F. Supp. 2d at 1043 (requiring the Court to first "examine all relevant facts surrounding counsel's actual preparation and prosecution activities, on a counsel-by-counsel basis.").  Yet In re Deutsche Bank Trust Co. Americas mentions this counsel-by-counsel analysis only when it discusses exemptions from patent prosecution bars.  See 605 F.3d at 1380 ("It is therefore

---

[14]The Court would not have reached a different result under the majority approach.  As discussed in greater detail below, the Court concludes that Mr. Shore and Mr. Chan are competitive decisionmakers because they are actively filing patent applications that overlap with the patents in dispute and are leadership figures within Front Row and Micro-Gaming Ventures LLC, a similar entity.  Defendants could also demonstrate that their proposed bar -- in a modified form -- is tailored to reasonably reflect the relevant risk.  Finally, Front Row would be unable to meet its burden to show that Shore and Chan's continued representation in two roles would not implicate competitive decisionmaking or that its injury from their absence would outweigh the potential injury to Defendants.

important for a court, <u>in assessing the propriety of an exemption</u> from a patent prosecution bar, to examine all relevant facts surrounding counsel's actual preparation and prosecution activities, on a counsel-by-counsel basis.")(emphasis added).   Second, the majority rule requires the court to complete the same competitive decisionmaking inquiry twice.   A court applying the majority rule would, as a threshold matter, evaluate each counsel's involvement in competitive decisionmaking.   It would then have to apply the same analysis to the same attorneys if the nonmovant were to request an exemption from the protective order.   If the majority rule were correct, in short, there would be no need for an exemption procedure.   <u>See</u> <u>Eon Corp. IP Holdings, LLC v. AT & T Mobility LLC</u>, 881 F. Supp. 2d at 256-57.

The Court recognizes that the party seeking the prosecution bar has the burden of showing good cause for its issuance.   <u>See</u> <u>In re Deutsche Bank Trust Co. Americas</u>, 605 F.3d at 1378.   The majority approach is more intuitively attractive, as it makes it more difficult for the movant to shift the burden to the nonmovant.   The plain text of <u>In re Deutsche Bank Trust Co. Americas</u>, however, rules out such an approach.   Moreover, a party seeking a prosecution bar faces unique practical challenges.   The parties seeking these bars generally require them before they share any confidential information, such as source code, with opposing counsel.   <u>See</u> <u>Eon Corp. IP Holdings, LLC v. AT & T Mobility LLC</u>, 881 F. Supp. 2d at 256.   They are thus unlikely to have the benefit of any discovery.   It is difficult for a party without any information on opposing counsel beyond their website biographies to demonstrate, "on a counsel-by-counsel basis, that the opposing counsel engage in competitive decisionmaking."   <u>Eon Corp. IP Holdings, LLC v. AT & T Mobility LLC</u>, 881 F. Supp. 2d at 256.   The courts should place the burden to produce this information on the party that possesses it.

Only a few courts have directly questioned the minority approach.  In <u>Chiesi USA, Inc. v. Sandoz Inc.</u>, the party advocating for the prosecution bar argued that <u>In re Deutsche Bank Trust Co. Americas</u> "presumes the imposition of a patent prosecution bar without requiring any counsel-specific inquiry."  41 F. Supp. 3d at 423.  The United States District Court for the District of New Jersey rejected this presumption as "overly narrow."  41 F. Supp. 3d at 423 n.5. It explained that "the *Deutsche* court expressly indicated that, '[i]n evaluating whether to grant a patent prosecution bar *in the first instance,* a court must be satisfied that the kind of information that will trigger the bar' relates 'to the preparation and prosecution of patent applications' before the Patent and Trademark Office."  41 F. Supp. 3d at 423 (emphasis in original).  It used this language to conclude that the "'first instance analysis' clearly contemplates an individualized and fact-sensitive inquiry with respect to specific individuals."  41 F. Supp. 3d at 423.

The Court respectfully disagrees with this conclusion.  There is, of course, no presumption that courts will impose a patent prosecution bar.  Any court examining a proposed prosecution bar must still "balance [the risk of inadvertent disclosure or competitive use] against the potential harm to the opposing party."  <u>In re Deutsche Bank Trust Co. Americas</u>, 605 F.3d at 1380.  It must do so, however, when it is considering whether to grant exemptions to specific attorneys.  The Federal Circuit's opinion includes sections that, viewed in isolation, could support the majority approach.  It summed up and condensed its test, however, into a compact and clear holding:

> We therefore hold that a party seeking imposition of a patent prosecution bar must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information. We further hold that the party seeking an exemption from a patent prosecution bar must show on a counsel-by-counsel basis: (1) that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of

the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use.

605 F.3d at 1381.  The Court agrees with Eon Corp. IP Holdings, LLC v. AT & T Mobility LLC that "the counsel-specific balancing is done only *after* a court has decided that a prosecution bar is called for, and it must be initiated by the party seeking the exemption."  881 F. Supp. 2d at 257 (emphasis in original).  Thus, while the Court is sympathetic to the majority's approach and favors putting as much of the burden on the movant for the bar as possible, the Court does not believe the majority is consistent with the Federal Circuit's decision in In re Deutsche Bank Trust Co. Americas.  Also, while the Court tried to think of a new third approach, in the end, the Court could not come up with another approach that is more consistent with In re Deutsche Bank Trust Co. Americas than the minority approach.

## II.     THE PROPOSED BAR, WITH SEVERAL OF FRONT ROW'S PROPOSED MODIFICATIONS, REASONABLY REFLECTS THE RISK THAT THE DISCLOSURE OF THE DEFENDANTS' CONFIDENTIAL INFORMATION PRESENTS.

The Court concludes that the Defendants' proposed prosecution bar, modified by a few of Front Row's suggestions, reasonably reflects the risk that the possible disclosure of the Defendants' confidential information presents.   The Court specifically discusses: (i) the information designated to trigger the bar; (ii) the scope of activities that the bar prohibits; (iii) the bar's duration; and (iv) the subject matter that the bar covers.  The Court concludes that all of these factors indicate that the bar reasonably reflects the relevant risk.

## A.   THE INFORMATION DESIGNATED TO TRIGGER THE BAR REASONABLY REFLECTS THE RELEVANT RISK.

The parties' draft proposals agree on the information designated to trigger the prosecution bar.  Both state that the bar will apply to "Protected Materials specifically designated as 'HIGHLY CONFIDENTIAL -- ATTORNEY'S EYES ONLY -- PROSECUTION BAR' or 'HIGHLY CONFIDENTIAL -- SOURCE CODE.'"  Motion at 17; PowerPoint at 25-31.  These terms are appropriate for three primary reasons.  First, they apply to source code, which numerous courts have held to be particularly sensitive confidential information.  See Telebuyer, LLC v. Amazon.com, Inc., 2014 WL 5804334, at *2 ("Source code is highly confidential, technical information that creates a heightened risk of inadvertent disclosure.")(quotations omitted); Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc., 2011 WL 197811, at *2 ("In contrast with financial data or business information, confidential technical information, including source code, is clearly relevant to a patent application and thus may pose a heightened risk of inadvertent disclosure.").

Second, they use procedures that numerous other cases have approved.  See Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc., 2011 WL 197811, at *2 (allowing parties to mark information as "Confidential," "Highly Confidential -- Attorneys' Eyes Only," or "Highly Confidential -- Source Code.").

Finally, there is no indication that either party will attempt to apply these designations to mere financial data or business information.  See Kelora Sys., LLC v. Target Corp., 2011 WL 6000759, at *7; Opperman v. Path, Inc., 2013 WL 5643334, at *2 (rejecting prosecution bar that applied to sales and competitive data).  This risk is particularly low here, given that Front Row does not itself produce mobile phone applications and the Court's prior decision to deny Front Row's request for certain of the Defendants' financial information.  See Tr. at 20:13-16 (Court).

**B.      THE  SCOPE  OF  ACTIVITIES  TRIGGERED  BY  THE  BAR
REASONABLY REFLECTS THE RELEVANT RISK.**

Front Row and the Defendants also agree on the bar's prohibited activities.  All parties'
proposed prosecution bars would preclude affected attorneys from preparing and prosecuting
patent applications, preparing patent claims, or providing advice, counsel, or suggestions on
claim scope, coverage, and several other activities.  See Motion at 17; PowerPoint at 25-31.
Both agree that the bar will prohibit the "formulation of broadening claims."  Motion at 17;
PowerPoint at 25-31.  The Defendants seek to allow "defending a claim of any patent of that
person's client, including a patent-in-suit, against any assertion of invalidity or unpatentability."
Motion at 17.  Front Row agrees to this condition, but seeks to clarify that the prohibited
activities do not include "filing or requesting [a post-grant] proceeding and participating in said
proceeding thereafter."  PowerPoint at 25-31.  Front Row thus seeks permission to bring post-
grant proceedings in addition to defending against them.  See PowerPoint at 30 (arguing that bar
should cover "offensive post-grant review proceedings").

The Defendants argue that their proposal is appropriate, because it "does not include
post-grant proceedings -- for example, reexaminations."[15]  Motion at 15.  This limit means that it
"prohibits only those prosecution activities in which the barred individual could use Defendants'
confidential technical information to shape the scope of patent claims to the disadvantage of

---

[15]The parties' agreement to allow post-grant proceedings effectively bypasses two
judicial disputes.  First, it makes the continuing controversy whether prosecution bars should
cover reexaminations irrelevant.  Compare Ameranth, Inc. v. Pizza Hut, Inc., 2012 WL 528248,
at *6 (describing "near unanimous support" against extending prosecution bars to cover
reexamination) with Telebuyer, LLC v. Amazon.com, Inc., 2014 WL 5804334, at *6 (noting a
"newer line of cases" finding possible harms from reexamination proceedings).  Second, courts'
concern about the risks of allowing appeals and reissues is also a moot point.  See Ameranth, Inc.
v. Pizza Hut, Inc., 2012 WL 528248, at *7 (allowing prosecution bar to cover reissue and appeal
proceedings).

Defendants."   Motion at 15-16.   Front Row thus convincingly contends that the Defendants would concur on its proposed modification.   See PowerPoint at 28.   The Court concludes that any exemption for post-grant proceedings should apply to both defensive and offensive proceedings.   The underlying danger -- that Front Row could use the Defendants' confidential information to shape the scope of its patent claims -- is no more likely in offensive post-grant proceedings than defensive post-grant proceedings.

The Court's final version of the bar[16] is consistent with those that numerous other courts have approved.   Like the prosecution bar in Kelora Sys., LLC v. Target Corp., for example, the bar's prohibited activities focus on patent prosecution.   See   2011 WL 197811, at *2.   The prohibited actions in the bar track the language in Chan v. Intuit, Inc., 218 F.R.D. 659, 661 (N.D. Cal. 2003)(Larson, J.).   The permitted activities are very similar to the activities allowed in Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.   See 2011 WL 197811, at *2 n.1 (permitting reissue protests, ex parte reexaminations, and inter partes reexaminations).

C.   **THE BAR'S DURATION REASONABLY REFLECTS THE RELEVANT RISK.**

The parties' proposed prosecution bars both last for two years.   See Motion at 17; PowerPoint at 25-31.   District courts throughout the country have approved this duration.   See Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc., 2011 WL 197811, at *2; Ameranth, Inc. v. Pizza Hut, Inc., 2012 WL 528248, at *7; Kelora Sys., LLC v. Target Corp., 2011 WL 6000759, at *7; Telebuyer, LLC v. Amazon.com, Inc., 2014 WL 5804334, at *7.   The Court sees no reason why a two-year duration would be unreasonable and will thus leave the parties' preferred language intact.

---

[16]The Court may modify or even replace the parties' proposed prosecution bars.   See Liveperson, Inc. v. 24/7 Customer, Inc., 2015 WL 4597546, at *6 (imposing a court's own version of the prosecution bar where the parties were unable to agree).

D.     THE   BAR'S   SUBJECT   MATTER   COVERAGE   REASONABLY
REFLECTS THE RELEVANT RISK.

The Court has four proposals for the prosecution bar's subject matter coverage before it: two from the Defendants and two from Front Row.  The Court will analyze each proposal in turn.

The Defendants first suggest that the prosecution bar should cover "the subject matter of the patents-in-suit," calling their definition reasonable, simple, and widely accepted by other courts.  Motion at 17-18.  See Tr. at 110:19-21 (Littman)("That's language that's frequently used in most prosecution bars all over the country.  And not something that's frankly disputed all that often.").  See also Cummins-Allison Corp. v. Glory Ltd., No. 02 C 7008, 2003 WL 26620151, at *11 (N.D. Ill. Dec. 31, 2003)(Schenkier, J.)(noting that a bar "relating to the subject matter of the patents-in-suit is the language routinely employed by the courts when imposing such a restriction")(citations omitted).

The Court concludes that this proposal is overly vague.  Other courts quoting the "subject matter of the patents-in-suit" language use it to define the boundaries for more specific subject matter rather than as the patent prosecution bar's actual scope.  In Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc., for example, the court noted that the "subject matter of the proposed prosecution bar in this case should be coextensive with the subject matter of the patents-in-suit," 2011 WL 197811, at *3, before going on to approve a prosecution bar covering "self-interference cancellation technology." id., at *2-3.  Similarly, in E-Contact Technologies, LLC v. Apple, Inc., the court noted that it would focus on "the subject matter of the patent-in-suit." 2012 WL 11924448, at *2.  The resulting prosecution bar, however, included five specific subject areas related to electronic mail programs.  See 2012 WL 11924448, at *2.  Given that

Front Row and the Defendants dispute the relevant patents' subject matter, resting the prosecution bar on this brief phrase alone would lead only to further discovery disputes.

Front Row's secondary proposal relies on the Cooperative Patent Classification system. See PowerPoint at 25-31.  Front Row proposes that the bar prevent its counsel from prosecuting patents or patent applications that share classifications with the patents at issue in this case.  See PowerPoint at 25-31.  The Court, however, agrees with the Defendants that reliance on this system would be inappropriate.  First, the parties have not cited, and the Court has been unable to locate, any cases employing a classification system to implement a prosecution bar.  The Court is reluctant to lead such an experiment.  Second, although Front Row did not provide an example of its proposed prosecution bar in operation, the Defendants have presented evidence that: (i) patent applications are not classified until they are filed and assigned to a technology center, see 1 Practitioner's Manual of Patent Examining Proc. § 903.08; and (ii) patent applications may be transferred and re-classified under a relatively complicated review system, see 1 Practitioner's Manual of Patent Examining Proc. § 903.07.  Front Row's counsel would have to predict the USPTO's classification decisions before beginning to draft new patent applications.  This system seems unworkable in practice.  Finally, if any classifications were assigned based on the patents' current applications, they could be overly narrow.  Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc. held that "the relevant question is not to which field the accused products are *currently* limited, but instead in which fields the patented technology reasonably *could* be used."  2011 WL 197811, at *3 (emphasis in original).  Patent classifications may fail to capture other fields in which the patents "could be used."  2011 WL 197811, at *3.

Both parties' remaining proposals are more reasonable.  Front Row's primary proposal uses "the subject matter of the patents-in-suit" language, but adds an exception: "For

clarification, the 'subject matter of the patents-in-suit' does not include gambling and/or wagers, and any persons subject to this prosecution bar may provide input into gambling and/or wagering aspects of any patent, regardless of its remaining subject matter."  PowerPoint at 25-31.  This exception, however, assumes that there is no overlap between the "gambling and/or wagering aspects of any patent" and the Defendants' confidential information.  The gambling aspects of a patent could include, and indeed have included, "authorizing [a] mobile device access to said online wagering service based on said location of said mobile device."  Final Letter at 2 (quoting Front Row's U.S. Application No. 14/262,175, as filed on April 25, 2014).  Front Row could thus use confidential location-authorization aspects of the Defendants' data to contribute to the gambling aspects of new patents without violating the prosecution bar.

The Defendants suggest, in the alternative, that the bar should encompass "the capture of data, including video, related to a sports or entertainment event and the transmission of the data to a hand-held device."  Motion at 17-18.  The Court concludes that this proposal is the most reasonable option.  Front Row's counsel will be able to continue prosecution activities related to purely wagering activities.  See Final Letter at 5 ("Plaintiff's counsel is free to file patent applications on wagering features or systems, provided that those applications do not implicate the subject matter of this litigation.").  Like the prosecution bar in Ameranth, Inc. v. Pizza Hut, Inc., it provides more specificity than a vague reference to the relevant patents.  See 2012 WL 528248, at *2.  On the other hand, like the prosecution bar in Kelora Sys., LLC v. Target Corp., it is broad enough to ensure that opposing parties do not misuse confidential information.  See 2011 WL 6000759, at *7 (allowing prosecution bar covering "patents or patent applications relating to search engines, web search, or database or server search technology").

III.   **MR. SHORE AND MR. CHAN DO NOT QUALIFY FOR EXEMPTIONS BECAUSE THEIR ROLES INVOLVE COMPETITIVE DECISIONMAKING AND THE HARM TO FRONT ROW DOES NOT OUTWEIGH THE POTENTIAL HARM TO DEFENDANTS.**

In the final step, Front Row must demonstrate on a counsel-by-counsel basis: (i) that Mr. Shore and Mr. Chan's roles will not likely implicate competitive decisionmaking; and (ii) that its potential injury from its inability to use its preferred counsel outweighs the Defendants' potential injury from its inadvertent use of their confidential information.   The Court concludes that Front Row's counsel, Mr. Shore and Mr. Chan, are both competitive decisionmakers.   It further concludes that the burden imposed on Front Row does not outweigh the potential harm to the Defendants.

A.   **BOTH MR. SHORE AND MR. CHAN ARE COMPETITIVE DECISIONMAKERS.**

Front Row first contends that Mr. Shore and Mr. Chan do not participate in prosecution activity for Front Row.   See PowerPoint at 17.   That Front Row and Micro-Gaming Ventures LLC might be "*completely separate*" entities, however, does not end the analysis.   Response at 4-5 (emphasis in original).   As in Telebuyer, LLC v. Amazon.com, Inc., the threat that the possession of confidential information by Front Row's counsel poses is "identical whether confidential information is inadvertently used on behalf of [Front Row] or another client."   2014 WL 5804334, at *4.   There is no sound reason the Court should distinguish Mr. Shore and Mr. Chan's service to Front Row from their service to other clients.   See Kelora Sys., LLC v. Target Corp., 2011 WL 6000759, at *7; Gen-Probe Inc. v. Becton, Dickinson & Co., 267 F.R.D. at 684 (noting that other courts have extended prosecution bars beyond the parties to the relevant litigation).

Second, the patents in this case and the patents that Micro-Gaming Ventures LLC seeks to secure overlap to a substantial degree.  Front Row argues that the two entities' patents "do not encompass similar subject matter."  Response at 4-5.  It concedes that Micro-Gaming Ventures LLC's "reference video streaming," but argues that their "focus is on placing wagers or gambling (*i.e.* micro wagers)."  PowerPoint at 4 (emphasis in original).  It adds that there "is no evidence that the Micro-Gaming patents could be asserted against Defendants."  PowerPoint at 6.  The Defendants poke holes in this theory.  As noted above, Micro-Gaming Ventures LLC filed a patent with U.S. Application No. 14/262,175 on April 25, 2014.  See Final Letter at 2.  The patent included:

> A computer-implemented method for location-based wagering, said method performed by a computer system having one or more processors and memory storing one or more programs for execution by said one or more processors, said method comprising: invoking an online wagering service via a mobile device; determining a location of said mobile device and a jurisdiction associated with said location; and authorizing said mobile device access to said online wagering service based on said location of said mobile device.

U.S. Patent Application No. 14/262,175, Attorney Docket No. 1000-3255.  The Defendants' applications "utilize[] rules for blacking out a game . . . if that game [is] being televised locally."  Motion at 6-7.  Front Row's counsel could thus use the confidential information in these applications to reinforce existing patents and future patents that authorize gambling based on the user's location.

Third, although Front Row does not produce its own applications, it nonetheless competes with and threatens the Defendants' business.  Front Row, unlike the plaintiff in NeXedge, LLC v. Freescale Semiconductor, Inc., is "in the business of developing or patenting new products."  820 F. Supp. 2d at 1044.  Indeed, Front Row and its principals "continue to prosecute new patent applications" and assert new patents against the Defendants.  Motion at 3.

The Defendants have thus provided a "tangible reason or good cause other than the general threat of inadvertent misuse of discovered materials" that the court condemned in <u>Iconfind, Inc. v. Google, Inc.</u> 2011 WL 3501348, at *4.  As in <u>buySAFE, Inc. v. Google, Inc.</u>, the risk to the Defendants is high, "especially in light of Plaintiff's alleged predisposition to file serial lawsuits against Defendant on newly-issued patent claims."  2014 WL 2468553, at *3.  <u>See</u> <u>ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC</u>, No. CIV.A. 6:07-CV-346, 2008 WL 5634214, at *5 (E.D. Tex. Mar. 14, 2008)(Love, J.).

The parties also dispute Mr. Shore and Mr. Chan's roles in Micro-Gaming Ventures LLC's patent prosecution.  Front Row contends: (i) that Mr. Shore and Mr. Chan are "not involved in day-to-day prosecution, or claim drafting for Micro-Gaming," PowerPoint at 5; (ii) that their "contribution to the Micro-Gaming patents relates solely to wagering capabilities," PowerPoint at 5; and (iii) that Micro-Gaming's patent applications listed Mr. Shore and Mr. Chan solely "to insure accuracy of ownership," PowerPoint at 9.  The Defendants counter with Micro-Gaming Ventures LLC's patent application declarations, in which "Mr. Shore and Mr. Chan swore under oath that they reviewed, authorized, and contributed as inventors to the subject matter in Micro-Gaming's patent applications."  Final Letter at 2.

The Court concludes that the Defendants have the more compelling argument for two reasons.  First, Mr. Shore and Mr. Chan are not minor figures within Front Row and Micro-Gaming Ventures LLC.  Mr. Shore and Mr. Chan, along with Luis Ortiz and Kermit Lopez, are co-owners of Micro-Gaming Ventures LLC.  <u>See</u> Motion at 7; Response at 1, 3.  Ortiz and Lopez are principals at Front Row, and Mr. Shore and Mr. Chan are Front Row's lead litigation counsel.  <u>See</u> Response at 3, 8; Motion at 5, 7.  They do not fall within the low risk category that <u>In re Deutsche Bank Trust Co. Americas</u> described.  They are not "junior level attorneys."  <u>In re</u>

Deutsche Bank Trust Co. Americas, 605 F.3d at 1379-80.  They do not serve as "liaisons between prosecuting attorneys and clients," as their own businesses essentially are their clients. In re Deutsche Bank Trust Co. Americas, 605 F.3d at 1379-80.  Their roles are not "little more than reporting office actions or filing ancillary paperwork."  In re Deutsche Bank Trust Co. Americas,  605 F.3d at 1379-80.  Neither is merely "involved in high-altitude oversight of patent prosecution, such as staffing projects or coordinating client meetings."  In re Deutsche Bank Trust Co. Americas, 605 F.3d at 1379-80.

Second, Mr. Shore and Mr. Chan are actively filing patent applications that overlap with the patents in dispute.  Regardless whether they are involved in day-to-day prosecution, by filing new patent applications, they "control the content of patent applications and the direction and scope of protection sought in those applications."  In re Deutsche Bank Trust Co. Americas, 605 F.3d at 1380.  The Federal Circuit has defined "writing, reviewing, or approving new applications" as activity that would make attorneys subject to a prosecution bar.  In re Deutsche Bank Trust Co. Americas, 605 F.3d 1373.  See Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc., 2011 WL 197811, at *5 (stating that even "an expert witness who prepares or applies for patents themselves is undoubtedly a competitive decisionmaker").  The Defendants have met the requirement that they "rely on specific evidence -- not an inflexible rule -- that supports a finding of competitive decisionmaking."  AmTab Mfg. Corp. v. SICO, Inc., 2012 WL 195027, at *4.

## B.     THE POTENTIAL INJURY TO THE DEFENDANTS OUTWEIGHS THE POTENTIAL INJURY TO FRONT ROW.

The Court's conclusion that both Mr. Shore and Mr. Chan are competitive decisionmakers does not mean that both are disqualified for exemptions.  The Court must still "balance th[e] risk [of disclosure] against the potential harm to the opposing party from

restrictions imposed on that party's right to have the benefit of counsel of its choice." In re Deutsche Bank Trust Co. Americas, 605 F.3d at 1380.

The extent and duration of Mr. Shore and Mr. Chan's past history in representing Front Row before the PTO weigh in favor of a prosecution bar. See In re Deutsche Bank Trust Co. Americas, 605 F.3d at 1380. Front Row states that Mr. Chan and Mr. Shore "have no ongoing day-to-day involvement with prosecution of patents for Micro-Gaming or Front Row." PowerPoint at 19. Mr. Shore is "not a registered patent attorney and does not represent clients before the USPTO." PowerPoint at 17. Their status as competitive decisionmakers is largely premised on their history as inventors rather than attorneys. Front Row does not describe its "reliance and dependence on that past history." In re Deutsche Bank Trust Co. Americas, 605 F.3d at 1381.

Front Row would face significant difficulty if it were forced to rely on other counsel for the pending litigation. The pending litigation concerns a "highly specialized area" with a very steep learning curve. NeXedge, LLC v. Freescale Semiconductor, Inc., 820 F. Supp. 2d at 1044. Mr. Shore and Mr. Chan have served as Front Row's counsel since at least May 5, 2010. See PowerPoint at 19. They are "intimately familiar" with the facts of this case. Powerpoint at 19. As in Endo Pharm. Inc. v. Actavis Inc., they have "developed extensive knowledge and expertise regarding" specific patent litigation. 2014 WL 3950900, at *3. Requiring Front Row to replace these counsel would "create[] a much greater burden than requiring a party to hire different experts." Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc., 2011 WL 197811, at *5.

The Court's decision to allow a patent prosecution bar, however, would not force Mr. Shore and Mr. Chan to abandon this litigation. In re Deutsche Bank Trust Co. Americas requires

courts to consider "the potential difficulty the client might face if forced to rely on other counsel for the pending litigation <u>or</u> engage other counsel to represent it before the PTO." 605 F.3d at 1381 (emphasis added). A prosecution bar would force Mr. Shore and Mr. Chan to "make a choice: either prosecute patents in this family of patents, or litigate the patents at issue, but not both." <u>Ameranth, Inc. v. Pizza Hut, Inc.</u>, 2012 WL 528248, at *7.

Given the risk to the Defendants, the Court will require Mr. Shore and Mr. Chan to make this choice. Unlike the defendants in <u>Helferich Patent Licensing, LLC v. Suns Legacy Partners, LLC</u>, the Defendants in this case managed to "identify [] specific confidential information that could be misused, apart from broad allegations of potential harms." 2012 WL 6049746, at *3. The Defendants can point to recent patent applications that could either benefit directly from the Defendants' confidential information or serve as the foundation of future litigation. This harm is not "highly speculative." 2012 WL 6049746, at *3.

**IT IS ORDERED** that the requests in Defendants' Memorandum of Law in Support of their Motion for Entry of a Prosecution Bar Provision in the Protective Order, filed February 20, 2014 (Doc. 204) are granted in part and denied in part. The following Prosecution Bar shall be incorporated into the Protective Orders (Protective Order Governing Discovery of Confidential and Proprietary Information, filed December 10, 2013 (Doc. 192); and Protective Order Governing Discovery of Confidential and Proprietary Information, filed December 10, 2013 (Doc. 44)(entered in separate docket for member case <u>Front Row Techs. v. Time Warner Inc. et al</u>, No. CIV 13-0636 JB/SCY)):

 9. Prosecution Bar

(a) Notwithstanding any other provisions of this Protective Order, under no circumstances shall any person employed by, related to, or representing the parties, who has received Protected Materials specifically designated as "HIGHLY CONFIDENTIAL -- ATTORNEY'S EYES ONLY --

PROSECUTION BAR" or "HIGHLY CONFIDENTIAL -- SOURCE CODE" engage in any Prosecution Activity (as defined below) with respect to the capture of data, including video, related to a sports or entertainment event and the transmission of the data to a hand-held device."   Furthermore, any person receiving information designated as "HIGHLY CONFIDENTIAL -- ATTORNEY'S EYES ONLY" or "HIGHLY CONFIDENTIAL -- SOURCE CODE" shall not engage in any Prosecution Activity involving any application related to any of the patents-in-suit. The provisions of this paragraph do not apply where a party discloses its own Protected Materials to an individual not designated under this Order to receive such materials. These restrictions shall apply from the time of receipt of Protected Materials designated "HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY," "HIGHLY CONFIDENTIAL -- ATTORNEY'S EYES ONLY -- PROSECUTION BAR," or "HIGHLY CONFIDENTIAL -- SOURCE CODE" through and including two (2) years following the entry of a final, non-appealable judgment or order or the complete settlement of all claims against all Parties in this action.

(b) Prosecution Activity shall mean: (1) preparing and/or prosecuting any patent application, or portion thereof, whether design or utility, either in the United States or abroad; (2) preparing patent claim(s) for any application or patent; or (3) providing advice, counsel, or suggestions regarding, or in any other way influencing, claim scope and/or language, embodiment(s) for claim coverage, claim(s) for prosecution, or products or processes for coverage by claim(s). For the avoidance of doubt, the proscribed activities described herein are intended to include formulation of broadening claims relating to the Protected Material designated as "HIGHLY CONFIDENTIAL -- ATTORNEY'S EYES ONLY -- PROSECUTION BAR" or "HIGHLY CONFIDENTIAL -- SOURCE CODE," but are not intended to preclude participation in post-grant proceedings, including reexaminations, reissues, or *inter partes* review, to the extent of (1) defending a claim of any patent of that person's client, including a patent-in-suit, against any assertion of invalidity or unpatentability, and/or (2) filing or requesting such a proceeding and participating in said proceeding thereafter.  In addition, nothing in this paragraph shall prevent any attorney from sending Prior Art to an attorney involved in patent prosecution. Prior Art shall mean (i) publications, including patents and published patent applications; and (ii) materials or information regarding third party system or product that was publicly known, on sale, or in public use as of the relevant priority date, unless such materials are designated as Protected Materials by that third party or are subject to confidentiality obligations owed to that third party.

UNITED STATES DISTRICT JUDGE

- 56 -

*Counsel:*

Bryan J. Davis
William Garth Gilchrist
Davis, Gilchrist & Lee, P.C.
Albuquerque, New Mexico

-- and --

Alfonso Garcia Mr. Chan
Christopher L. Evans
Mr. Shore Mr. Chan DePumpo LLP
Dallas, Texas

*Attorneys for Plaintiff Front Row Technologies, LLC*

Alan E. Littmann
Brian Patrick O'Donoghue
Douglas J. Winnard
Goldman Ismail Tomaselli Brennan & Baum, LLP
Chicago, Illinois

Emil Kiehne
Modrall Sperling Roehl Harris & Sisk PA
Albuquerque, New Mexico

Cynthia J. Rigsby
Foley & Lardner, LLP
Milwaukee, Wisconsin

*Attorneys for Defendant MLB Advanced Media, L.P.*